William S. Bennett, Esq. (SBN 315537)
wbennett@sdvlaw.com
Kyle A. Rudolph (SBN323308)
krudolph@sdvlaw.com
**SAXE DOERNBERGER & VITA, P.C.**
One BetterWorld Circle, Suite 300
Temecula, CA 92590
Tel: (951) 365-3145
Fax: (203) 287-8847

Bryan R. Freeman, Esq. (*Pro Hac Vice*)
bryan.freeman@maslon.com
Judah A. Druck, Esq. (*Pro Hac Vice*)
judah.druck@maslon.com
**MASLON LLP**
225 South 6th Street, Suite 2900
Minneapolis, MN 55402
Tel: (612) 672-8200
Fax: (612) 642-8397

Attorneys for Plaintiff,
CAMBRIA COMPANY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMBRIA COMPANY LLC<br><br>Plaintiff,<br><br>vs.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Defendant. | Case No:  2:24-cv-01913<br>Assigned to:<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:**<br><br>**1.) BREACH OF CONTRACT (DUTY TO DEFEND)**<br><br>**2.) DECLARATORY JUDGMENT (DUTY TO DEFEND)**<br><br>**3.) BREACH OF CONTRACT (DUTY TO INDEMNIFY)**<br><br>**4.) DECLARATORY JUDGMENT (DUTY TO INDEMNIFY)**<br><br>**5.) BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING – BAD FAITH**<br><br>**[DEMAND FOR JURY TRIAL]** |

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CAMBRIA COMPANY LLC ("Cambria"), by and through its attorneys, alleges the following in support of its Complaint against Defendant, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("Philadelphia").

## NATURE OF THE ACTION

1. This is an insurance coverage action arising out of a multitude of underlying lawsuits filed against Cambria by third parties alleging bodily injury from the fabrication and installation of quartz slabs manufactured and sold by Cambria for use in homes and businesses (the "Bodily Injury Lawsuits").

2. Cambria did not perform any of the fabrication or installation in question. Cambria did not employ any of the underlying plaintiffs. Cambria sold solid quartz slabs.

3. The underlying plaintiffs allege bodily injuries caused by exposure to dust in their workplaces generated during the fabricating, drilling, polishing, grinding, and installing of quartz surface products and other silica-containing products over years of working with such products. All of the Bodily Injury Lawsuits at issue in this case are pending in California state courts in the counties of Los Angeles, San Francisco, and Orange.

4. Cambria timely noticed and tendered these lawsuits to Philadelphia pursuant to the commercial liability insurance policies issued by Philadelphia, which provide liability coverage for "bodily injury" caused by an "occurrence."

5. Philadelphia has improperly denied coverage to Cambria under its primary and excess insurance policies, and has refused to defend Cambria in the Bodily Injury Lawsuits.

6. Specifically, Philadelphia has erroneously denied coverage by relying on the policies' Total Pollution Exclusion, which does not apply under controlling California law.

7. By refusing to defend Cambria and failing to fulfill the promises in its insurance policies, Philadelphia has breached its insurance contracts and damaged Cambria.

8. In this action, Cambria seeks an award of damages for Philadelphia's breach of contract and bad-faith denial of benefits, a corresponding declaration of coverage, Cambria's coverage-action attorneys' fees, and all relief allowed by law, including but not limited to 10% prejudgment interest under Cal. Civ. Code § 3289.

## THE PARTIES

9.      Plaintiff Cambria is a Minnesota limited liability company with its principal place of business in Minnesota. The LLC members of Cambria are Minnesota citizens.

10.      Upon information and belief, Defendant Philadelphia is a Pennsylvania corporation with its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

11.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this lawsuit occurred within this judicial district.

13.      This action for declaratory relief is brought pursuant to 28 U.S.C. § 2201(a).

## STATEMENT OF FACTS

### *The Policies*

14.      Philadelphia sold Cambria two primary Liability Policies for the periods 11/20/2000 to 11/01/2001 (Policy No. PHPG124578) and 11/01/2001 to 11/01/2002 (Policy No. PHPK014656), including Commercial Liability Coverage (collectively, the "Primary Policies").

15.      The Primary Policies contain a general aggregate and per-occurrence limit of $1,000,000.

16.      There are no retentions in the Primary Policies, and defense costs are outside of, and do not erode, the Primary Policies' limits.

17.      Additionally, Philadelphia sold Cambria Commercial Excess policies for the periods 11/20/2000 to 11/01/2001 (Policy No. PHUM106750) and 11/01/2001 to 11/01/2002 (Policy No. PHUB006108) (collectively, the "Excess Policies").

18.      Each Excess Policy contains a general aggregate and per-occurrence limit of $5,000,000.

19.      The Primary Policies and Excess Policies are collectively referred to herein as the "Philadelphia Policies."

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

20.    Under Coverage A of the Philadelphia Policies' Commercial General Liability Coverage Part, Philadelphia promises to "pay those sums that [Cambria] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

21.    Philadelphia also has the "duty to defend [Cambria] against any 'suit' seeking those damages."

22.    The Philadelphia Policies state that the "insurance applies" if (1) the "'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory,'" and (2) the "'bodily injury' or 'property damage' occurs during the policy period."

23.    Under the Philadelphia Policies, "Bodily injury" is defined to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

24.    Under the Philadelphia Policies, the term "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25.    The Philadelphia Policies additionally contain a Total Pollution Exclusion with a Hostile Fire Exception (the "Total Pollution Exclusion"), which states in relevant part:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, releases or escape of "pollutants" at any time.

26.    Under the Philadelphia Policies, "Pollutants" is defined to mean "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

27.    The Supreme Court of California has limited application of the Total Pollution Exclusion to "traditional environmental pollution rather than all injuries from toxic substances," meaning "irritants and contaminants commonly thought of as pollution." *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635, 644 & 652-53 (2003).

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

28.     As a result, federal courts in this district have deemed the Total Pollution Exclusion inapplicable where plaintiffs alleged bodily injuries caused by exposure to "toxins, including dust and silica" through their demolition and instruction work because "[a] reasonable layperson or policyholder wouldn't necessarily think of the release of 'toxins, including silica and dust' in the demolition business as traditional pollution." *American Zurich Ins. Co. v. James N. Gray Co.*, No. SACV131966AGJPRX, 2014 WL 11430928, at *4-5 (C.D. Cal. July 25, 2014).

### *The Bodily Injury Lawsuits*

29.     Beginning in January of 2020, Cambria was named in lawsuits brought by persons alleging bodily injuries in connection with Cambria's sale of quartz surface slabs.

30.     The Bodily Injury lawsuits name Cambria as a defendant and a multitude of other parties, including but not limited to other manufacturers of quartz surface products.

31.     A list of the Bodily Injury Lawsuits currently at issue in this case is attached hereto as **Exhibit A** to this Amended Complaint. This amendment is without prejudice to Cambria's right to seek insurance coverage (defense or indemnity) with respect to underlying lawsuits which Cambria has not included based on the underlying complaints' alleged dates of exposure and bodily injury which post-date Philadelphia's policy periods ending on November 1, 2002.

32.     The dates listed in Exhibit A are the dates the underlying Bodily Injury Lawsuits were filed.

33.     All of the Bodily Injury Lawsuits in Exhibit A are pending in California state courts in the counties of Los Angeles, San Francisco, and Orange.

34.     Each of the Bodily Injury Lawsuits listed in Exhibit A alleges exposure to Cambria's products and bodily injuries within the Philadelphia Policies' periods (*i.e.*, November 20, 2000 to November 1, 2022), as identified in Exhibit A.

35.     The cases included in the above list of Bodily Injury Lawsuits may increase as additional suits are brought. Cambria reserves the right to seek relief with respect to any additional suits, including through amendment of the Complaint if necessary.

36.     None of the underlying plaintiffs in the Bodily Injury Lawsuits are former Cambria employees.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

37.     The allegations in the Bodily Injury Lawsuits are based on the alleged manufacture and distribution of Cambria quartz surface slabs.

38.     The underlying plaintiffs in the Bodily Injury Lawsuits allegedly worked at third-party fabrication/installation companies which fabricated and installed quartz slabs, through cutting, grinding, and polishing slabs for use in homes and businesses.

39.     The Bodily Injury Lawsuits generally allege that the underlying plaintiffs were exposed to harmful dust and particles, including respirable crystalline silica dust, in their workplaces caused by unsafe fabrication, drilling, polishing, and installation of quartz surface products.

40.     For example, in the *Victor Gonzalez* lawsuit, plaintiffs allege that from 1988 to 2019 Victor Gonzalez was injured as a result of "inhaling dust from cutting, grinding, installing and finishing Defendants' products mostly in homes in Los Angeles County . . . ." (V. Gonzalez Compl. ¶ 51.)

41.     As another example, in the *Rodolfo Garcia-Rosas* lawsuit, plaintiffs allege that "[f]rom about 2000 to 2002, Plaintiff Rodolfo Garcia-Rosas worked in Southern California, cutting, fabricating and installing artificial stone and natural stone countertops mostly in home kitchens and bathrooms" and that "the injuries from which he suffers and which are the subject of this action, were sustained in the course of his work in Southern California." (*R. Garcia-Rosas Compl*. ¶ 35.)

42.     The Bodily Injury Lawsuits brought against Cambria expressly allege exposure to harmful dust and bodily injury during the Philadelphia Policies' policy periods (11/20/00 to 11/01/02).

43.     The Bodily Injury Lawsuits allege conspiracy, negligence, and that Cambria's products were defectively designed and "unreasonably dangerous." The Lawsuits include claims of negligence, strict liability (warning and design defect), fraudulent concealment, breach of warranty, and loss of consortium.

44.     The Bodily Injury Lawsuits are active and ongoing.

45.     Cambria has defended the Bodily Injury Lawsuits and incurred past, unpaid defense fees and costs which Philadelphia was obligated to pay pursuant to its duty to defend.

46.     Defense of the Bodily Injury Lawsuits will also continue going forward.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

***Philadelphia's Wrongful and Unreasonable Denial of Coverage***

47.    Cambria timely noticed and tendered the Bodily Injury Lawsuits to Philadelphia under the Philadelphia Policies, over time as the Lawsuits were commenced.

48.    On March 10, 2020, December 18, 2023, February 15, 2024, March 19, 2024, July 9, 2024, September 12, 2024, October 1, 2024, November 20, 2024, November 21, 2024, December 24, 2024, February 4, 2025, and at other times, Philadelphia responded and denied coverage to Cambria, refusing to protect Cambria and defend the Bodily Injury Lawsuits.

49.    In denying coverage, Philadelphia relied on the Total Pollution Exclusion in the Philadelphia Policies. Specifically, Philadelphia has taken the position that the Total Pollution Exclusion "applies to bar coverage" because the "bodily injury" alleged in the Bodily Injury Lawsuits "would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time," and that silica "qualifies as a 'pollutant' under the Policies."

50.    Philadelphia's position is erroneous and contrary to California law, which limits application of the Total Pollution Exclusion to "traditional environmental pollution" and "events commonly thought of as pollution." *MacKinnon*, 31 Cal. 4th at 644 & 652-53.

51.    Indeed, California courts have rejected similar attempts at applying the Total Pollution Exclusion to claims of bodily injury caused by exposure to silica through construction work—the scenario at issue in the Bodily Injury Lawsuits. *See James N. Gray Co.*, 2014 WL 11430928, at *4-5.

52.    Philadelphia's denial of coverage is also contrary to black-letter law on the duty to defend.

53.    Under California law, the coverage provisions of the insurance policy are liberally construed in favor of the insured and the exclusions from coverage are narrowly construed against the insurer.

54.    The duty to defend applies whenever there is a potential for insurance coverage, with the insurer needing to conclusively establish the absence of any such potential to avoid its duty to defend. Any doubts about whether the facts give rise to a duty to defend are resolved in the insured's favor.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

55.    Here, Philadelphia has breached its duty to defend Cambria in the Bodily Injury Lawsuits, and its refusal to provide coverage has damaged Cambria and will continue to damage Cambria.

56.    Philadelphia's denial of its duty to defend is unreasonable, wrongful, in bad faith, and in breach of the covenant of good faith and fair dealing.

**COUNT I**
**(BREACH OF CONTRACT—DUTY TO DEFEND)**
**(PRIMARY POLICIES)**

57.    Cambria restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

58.    The Primary Policies are contracts between Philadelphia and Cambria.

59.    The Bodily Injury Lawsuits are covered claims under the Primary Policies, triggering Philadelphia's duty to defend.

60.    All conditions of the Primary Policies are satisfied.

61.    The Total Pollution Exclusion in the Primary Policies does not apply to the claims and allegations in the Bodily Injury Lawsuits and does not eliminate Philadelphia's duty to defend.

62.    Philadelphia has breached the insurance-contracts and its duty to provide coverage to the Insureds, including Philadelphia's duty to defend, by refusing to defend Cambria in the Bodily Injury Lawsuits.

63.    As a direct result of Philadelphia's breach of contract and breach of its duty to defend, Cambria has been damaged and will be damaged in an amount to be determined at trial.

**COUNT II**
**(DECLARATORY JUDGMENT—DUTY TO DEFEND)**
**(PRIMARY POLICIES)**

64.    Cambria restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

65.    Pursuant to 28 U.S.C. § 2201(a), the Court has the authority to declare the rights, status, and other legal relations of the Parties.

66.    A justiciable controversy exists between Cambria and Philadelphia regarding Philadelphia's duty to defend Cambria with respect to the Bodily Injury Lawsuits.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

67.     Cambria is entitled to a judicial declaration that Philadelphia has a duty to defend the Bodily Injury Lawsuits.

68.     Cambria is entitled to a declaration that Philadelphia is obligated to reimburse Cambria for all prior defense fees, costs and expenses.

## COUNT III
### (BREACH OF CONTRACT—DUTY TO INDEMNIFY)
### (ALL PHILADELPHIA POLICIES)

69.     Cambria restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

70.     The Philadelphia Policies are contracts between Philadelphia and Cambria.

71.     The Bodily Injury Lawsuits are covered claims under the Philadelphia Policies, triggering Philadelphia's duty to indemnify Cambria for any damages Cambria may be obligated to pay with respect to the Bodily Injury Lawsuits.

72.     The Total Pollution Exclusion in the Philadelphia Policies does not apply to the claims and allegations in the Bodily Injury Lawsuits.

73.     Philadelphia has breached the Philadelphia Policies by denying and repudiating its responsibility to indemnify Cambria with respect to the Bodily Injury Lawsuits.

74.     As a direct result of Philadelphia's breach of contract, Cambria has been damaged and will be damaged in an amount to be determined at trial.

## COUNT IV
### (DECLARATORY JUDGMENT—DUTY TO INDEMNIFY)
### (ALL PHILADELPHIA POLICIES)

75.     Cambria restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

76.     Pursuant to 28 U.S.C. § 2201(a), the Court has the authority to declare the rights, status, and other legal relations of the Parties.

77.     A justiciable controversy exists between Cambria and Philadelphia regarding Philadelphia's duty to indemnify Cambria with respect to the Bodily Injury Lawsuits under the Philadelphia Policies.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

78.     Cambria is entitled to a judicial declaration that Philadelphia has a duty to indemnify Cambria with respect to any damages Cambria may be obligated to pay with respect to the Bodily Injury Lawsuits.

## COUNT V
## (BREACH OF THE COVENANT OF
## GOOD FAITH AND FAIR DEALING – BAD FAITH)

79.     Cambria restates and realleges each of the foregoing paragraphs as though fully set forth herein and further states and alleges as follows.

80.      The covenant of good faith and fair dealing is implied by law into Philadelphia's Policies. The covenant requires Philadelphia to exercise its rights responsibly and in a manner so as to avoid injury to Cambria.

81.     The covenant of good faith and fair dealing requires that Philadelphia refrain from unreasonable acts that deny Cambria the benefits of the Policies it purchased, or fail to treat the interests of Cambria on par with Philadelphia's own interests, or otherwise frustrate the purpose of the insurance that Philadelphia sold.

82.     By wrongfully and unreasonably refusing to defend Cambria for the Bodily Injury Lawsuits, Philadelphia has unreasonably failed to pay and denied insurance benefits due to Cambria.

83.     Upon information and belief, Philadelphia further breached its implied covenant of good faith and fair dealing in additional ways, including, but not limited to: (i) unreasonably delaying payment of benefits owed to Cambria, (ii) failing and refusing to conduct a fair, thorough, prompt, and objective investigation of the claims; and (iii) by engaging in the conduct described in the paragraphs incorporated by reference to this cause of action or otherwise contained herein.

84.     Cambria is informed and believes, and thereon alleges, that Philadelphia breached its duty of good faith and fair dealing by other acts or omissions of which Cambria is presently unaware, but which it will show according to proof at trial.

85.     As a result of Philadelphia's breach of the covenant of good faith and fair dealing, Cambria has been harmed and suffered damages, including but not limited to incurring attorneys' fees and costs.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

86.     Philadelphia's failure to defend and unreasonable denial of insurance benefits due was a substantial factor in causing Cambria's harm and damages.

## PRAYER FOR RELIEF

WHEREFORE, Cambria prays for the following relief:

A.      An award of all damages allowed by law, including all consequential damages flowing from Philadelphia's breach of its insurance contracts with Cambria and including all past unreimbursed defense fees and costs;

B.      An award of all damages allowed by law, including all consequential damages flowing from Philadelphia's breach of the covenant of good faith and fair dealing;

C.      A declaration that Philadelphia has breached its duty to defend and that Philadelphia must provide Cambria with a full defense for the Bodily Injury Lawsuits;

D.      A declaration that Philadelphia is obligated to indemnify Cambria in connection with the Bodily Injury Lawsuits under the Philadelphia Policies;

E.      An award of Cambria's attorneys' fees incurred in bringing this action, based on Philadelphia's breach of the duty to defend and breach of the implied covenant of good faith and fair dealing;

F.      An award of all prejudgment and/or post-judgment interest allowed by law, including but not limited to ten percent prejudgment interest under Cal. Civ. Code § 3289;

G.      A phased case schedule, to be determined, which will first provide for adjudication of the duty to defend in this case;

H.      A stay of resolution of indemnity issues in this case, until such time as determination of Philadelphia's duty to indemnify is ripe and appropriate;

I.      An award of all other relief that this Court deems just, appropriate, necessary, and proper;

J.      Such other legal and equitable relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Cambria hereby demands a trial by jury on all matters and issues so triable.

PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Dated:  May 14, 2025

Respectfully submitted,

Saxe Doernberger & Vita, P.C.

By: */s/ William S. Bennett*
William S. Bennett, Esq.
 Kyle A. Rudolph, Esq.

Maslon LLP
Bryan R. Freeman, Esq.
Judah A. Druck, Esq.

**Attorneys for Plaintiff Cambria Company LLC**