Linda Bondi Morrison, Esq. (SBN 210264)
lmorrison@tresslerllp.com
Samantha K. Shafer, Esq. (SBN 328321)
sshafer@tresslerllp.com
TRESSLER LLP
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone: (949) 336-1200
Facsimile: (949) 752-0645

Attorneys for Defendant,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CAMBRIA COMPANY LLC, | Case No.: 2:24-cv-01913-MEMF-MRW |
| Plaintiff, | Assigned to:<br>Hon. Maame Ewusi-Mensah Frimpong |
| v. | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY | **PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |
| Defendant. | **Date:　September 11, 2025**<br>**Time:　10:00 a.m.**<br>**Dept:　8B** |
| | [Filed Concurrently with Declaration of Ann Conroy; Joint Statement of Uncontroverted Facts in Support of Motion for Summary Judgment; Request for Judicial Notice; and [Proposed] Order]] |

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Please take notice that on September 11, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8B of the above-entitled Court, located at 350 West First Street, 8th Floor, Los Angeles, California 90012, Defendant Philadelphia Indemnity Insurance Company ("PIIC"), pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56, will and hereby does respectfully move for summary judgment, or alternatively for partial summary judgment, in its favor and against Plaintiff Cambria Company LLC ("Cambria").

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 20, 2025. This Motion is further made pursuant to Rule 56 of the FRCP and Local Rule 56 of the Local Rules of the United States District Court for the Central District of California. This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto; the Joint Statement of Uncontroverted Facts and Conclusions of Law; the Declaration of Ann Conroy; the Request for Judicial Notice; the pleadings on file in this action; and upon such further evidence as the Court permits.

Respectfully submitted,

Dated:  June 12, 2025

**TRESSLER LLP**

By: */s/ Linda Bondi Morrison*
Linda Bondi Morrison
Samantha K. Shafer
*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

2

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................1

II.   FACTUAL BACKGROUND ........................................................2

    A.    The PIIC Policies ...........................................................2

    B.    The Silica Lawsuits ........................................................4

III.  LEGAL STANDARDS...................................................................5

    A.    Summary Judgment Standard ................................................5

    B.    Pertinent Principles of Contract Interpretation ..................................6

    C.    Duty to Defend and Indemnify Standards ...........................................6

IV.  ARGUMENT ...............................................................................7

    A.    The Pollution Exclusion Bars Coverage Under Potentially Applicable Law.........................................................................7

        1.    Under California Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits ...........................8

        2.    Under Minnesota Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits ........................12

    B.    If this Court Finds a Conflict Between the Laws of California and Minnesota Concerning Interpretation of the Pollution Exclusion, Minnesota Law Governs ...................................................14

V.    CONCLUSION ..........................................................................18

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**CASES**

*ABF Capital Corp. v. Grove Properties Co.*,
126 Cal. App. 4th 204 (2005) ................................................................................16

*Adir Int'l, LLC v. Starr Indem. & Liab. Co.*,
2019 WL 4462613 (C.D. Cal. Sep. 10, 2019)..........................................................7

*AIU Ins. Co. v. Superior Ct. (FMC Corp.)*,
51 Cal. 3d 807 (1990)..............................................................................................6

*American Zurich Ins. Co. v. James N. Gray Co.*,
2014 WL 11430928 (C.D. Cal. July 25, 2014)................................................10, 11

*Ameron Int'l Corp. v. American Home Assurance Co.*,
No. CV 11-1601 CAS (AGRx), 2011 WL 2261195 (C.D. Cal. June 6, 2011) ....16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................5

*Auto-Owners Ins. Co. v. Hanson*,
588 N.W.2d 777 (Minn. App. 1999)................................................................12, 13

*Axis Reinsurance Co. v. Telekenex, Inc.*,
913 F. Supp. 2d 793 (N.D. Cal. 2012) ....................................................................7

*Board of Regents of the Univ. of Minnesota v. Royal Ins. Co. of America*,
517 N.W.2d 888 (Minn. 1994).................................................................................12

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010)..................................................................................14

*Brouse v. Nationwide Agribusiness Ins. Co.*,
No. A-14-1729, 2015 WL 4507996 (Minn. App. July 27, 2015)........................13

*Buss v. Superior Ct.*,
16 Cal. 4th 35 (1997) ...............................................................................................7

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).................................................................................................5

*Certain Underwriters at Lloyd's of London v. Superior Ct.*,
16 P.3d 94 (Cal. 2001) .............................................................................................7

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
68 Cal. App. 4th 445 (1998) ...................................................................................6

ii

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Columbia Cas. Co. v. Gordon Trucking, Inc.*,
758 F. Supp. 2d 909 (N.D. Cal. 2010) ....................................................... 18

*Continental Cas. Co. v. Advance Terrazzo & Tile Co.*,
462 F.3d 1002 (8th Cir. 2006)..................................................................... 13

*Financial Indem. Co. v. Messick*,
606 F. Supp. 3d 996 (E.D. Cal. 2022)................................................... 16, 17

*Frontier Oil Corp. v. RLI Ins. Co.*,
153 Cal. App. 4th 1436 (2007) ............................................................14, 15, 17

*Garamendi v. Golden Eagle Ins. Co.*,
127 Cal. App. 4th 480 (2005) .........................................................8, 9, 10, 11

*Garvis v. Employers Mut. Cas. Co.*,
497 N.W.2d 254 (Minn. 1993)....................................................................... 6

*Gitano Grp., Inc. v. Kemper Grp.*,
26 Cal. App. 4th 49 (1994) ............................................................................ 7

*Grant & Eisenhofer, P.A. v. Brown*,
No. CV175968PSGPJWX, 2018 WL 3817859 (C.D. Cal. Mar. 27, 2018) ......... 15

*Gray v. Zurich Ins. Co.*,
419 P.2d 168 (Cal. 1966) ............................................................................... 6

*Hanover Am. Ins. Co. v. Francini, Inc.*,
No. 2:23-CV-10047-MRA-MAA, 2025 WL 1090925 (C.D. Cal. Mar. 27, 2025) 11

*Jones v. St. Paul Travelers*,
496 F. Supp. 2d 1079 (N.D. Cal. 2007) ...................................................... 18

*Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.*,
441 F. Supp. 3d 1016 (S.D. Cal. 2020)....................................................... 10

*MacKinnon v. Truck Ins. Exch.*,
31 Cal. 4th 635 (2003)............................................................................... 9, 10

*Midwest Family Mut. Ins. Co. v. Wolters*,
831 N.W.2d 628 (Minn. 2013)................................................................. 12, 13

*Minkler v. Safeco Ins. Co. of America*,
49 Cal. 4th 315 (2010) .................................................................................. 6

*Montrose Chem. Corp. v. Superior Ct.*,
6 Cal. 4th 287 (1993) ................................................................................. 6, 7

*Paulsen v. CNF Inc.*,
559 F.3d 1061 (9th Cir. 2009)........................................................................ 7

iii

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*SDC/Pullman Partners v. Tolo Inc.*,
   60 Cal. App. 4th 37 (1997) ............................................................................6

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
   12 Cal. App. 4th 715 (1993) ..........................................................................6

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
   14 Cal. App. 4th 637 (1993) ....................................................................17, 18

*Store Kraft Mfg. v. Wausau Bus. Ins. Co.*,
   No. SACV 13-00545-JVS (JPRx), 2014 WL 12561603 (C.D. Cal. Mar. 24, 2014)
   ................................................................................................................16, 18

*Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*,
   480 N.W.2d 368 (Minn. Ct. App. 1992) ........................................................13

*Travelers Prop. Cas. Co. v. Klick,*
   867 F.3d 989 (8th Cir. 2017).........................................................................13

*Villa Los Alamos Homeowners Ass'n. v. State Farm*,
   198 Cal. App. 4th 522 (2011) .......................................................................10

*Waller v. Truck Ins. Exch., Inc.*,
   11 Cal. 4th 1 (1995) .......................................................................................6

**STATUTES**

Cal. Civ. Code § 1641.........................................................................................6

Cal. Civ. Code § 1646.......................................................................................14

**RULES**

Fed. R. Civ. P. Rule 56 ......................................................................................5

iv

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

This insurance coverage dispute between Cambria Company LLC ("Cambria") and Philadelphia Indemnity Insurance Company ("PIIC") arises out of sixty-nine lawsuits ("Silica Lawsuits") filed by underlying plaintiffs alleging they sustained injuries, primarily silicosis, resulting from their exposure to silica dust and other toxins as an occupational exposure during their work fabricating industrial stone quartz surface slabs manufactured or supplied by Cambria and other defendants.  The underlying plaintiffs allegedly worked cutting, sawing, grinding, drilling, edging, polishing, and installing the stone countertops, and were, over an extended period of time, exposed to dust containing silica and other toxins that was generated during the fabrication of the industrial stone and was dispersed from the slabs, contaminating the surrounding area and causing them injury.

PIIC issued two primary general liability policies and two excess liability policies to Cambria, effective November 20, 2000 to November 1, 2002.  Each of the primary policies contains a broad Total Pollution Exclusion which applies to "bodily injury" "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  Silica and the other toxins to which the underlying plaintiffs allege exposure are "pollutants."  The excess policies similarly contain broad pollution exclusions.  These exclusions by their plain meaning bar any duty to defend and indemnify Cambria for the Silica Lawsuits.

The PIIC policies were issued to Cambria in Minnesota at least ten years before Cambria started doing business in California.  Minnesota law should therefore apply to interpretation and application of the pollution exclusions in PIIC's policies.  However, as both California and Minnesota law would clearly apply the pollution exclusions to bar any duty to defend and indemnify, it is unnecessary for this Court to undertake a choice-of-law analysis.  However, in the event this Court were to

1

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

determine that the laws of the states of California and Minnesota conflict on application of the pollution exclusions, then based upon California's choice-of-law principles, this Court should apply the law of Minnesota to determine application of the pollution exclusions to the Silica Lawsuits.

## II.   FACTUAL BACKGROUND

### A.   The PIIC Policies

PIIC issued two primary consecutive commercial general liability policies to Cambria:  policy nos. PHPG124578, effective November 20, 2000 to November 1, 2001, and PHPK014656, effective November 1, 2001 to November 1, 2002 (the "CGL Policies").  (Joint Statement of Uncontroverted Facts ("JSUF") No. 1.)  PIIC also issued two consecutive commercial excess policies to Cambria:  policy nos. PHUM106750, effective November 20, 2000 to November 1, 2001, and PHUB006108, effective November 1, 2001, to November 1, 2002 (the "Excess Policies" and, collectively with the CGL Policies, the "PIIC Policies").  (JSUF No. 2.)

Subject to their terms, each of the CGL Policies states that PIIC will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that PIIC has a "duty to defend [Cambria] against any 'suit' seeking those damages.  However, [PIIC] will have no duty to defend [Cambria] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."  (JSUF No. 3.)  The CGL Policies limit coverage to "bodily injury" that "occurs during the policy period."  (JSUF No. 3.)  Each of the CGL Policies also contains a Total Pollution Exclusion which bars coverage for "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  (JSUF No. 4.)  "Pollutants" means "any solid, liquid, gaseous or

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled." (JSUF No. 5.)

Each of the Excess Policies similarly limits coverage to "bodily injury" that "[o]ccurs, or is committed during the policy period." (JSUF No. 6.) They each also contain a pollution exclusion which applies to "bodily injury" "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants." (JSUF No. 7.) The pollution exclusion in the Excess Policies states that PIIC has no obligation:

"(1) To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the 'pollution hazard'; or, (2) To pay any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law or relating to such injury or damage." (JSUF No. 7.)

The Excess Policies define "Pollution Hazard" to mean "an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal pollutants, contaminants, irritants or toxic substances, including smoke, vapors, soot, fumes, acids or alkalis, and waste materials consisting of or containing any of the foregoing." (JSUF No. 7.)

At all relevant times, including at the time the PIIC Policies were issued, Cambria was and remains a Minnesota limited liability company with its corporate headquarters in Minnesota. (JSUF No. 8.) Cambria registered to do business in California in 2011. (JSUF No. 9.) The PIIC Policies' Declarations pages each identify Cambria's mailing address as 620 North Main Street, Le Sueur, Minnesota 56058. (JSUF No. 1.) Each of the CGL Policies contains a Locations Schedule

3

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

listing three premises, all in Minnesota.  (JSUF No.1.)  Each of the CGL Policies also contains many endorsements with the language "Minnesota Changes" in the title or otherwise referencing Minnesota.  (JSUF No. 1.)  The Business Auto Schedule in the CGL Policies identifies three automobiles garaged in Minnesota.  (JSUF No. 1.)

## B.     The Silica Lawsuits

Cambria's First Amended Complaint ("FAC") in this action identifies sixty-nine Silica Lawsuits.  (JSUF No. 10.)[1]  The Silica Lawsuits generally allege that Cambria and the other defendants are the "manufacturers, suppliers, distributors, importers, brokers, and/or contractors of industrial stone products."  (JSUF No. 11.)  The Silica Lawsuits generally allege "[c]utting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."  (JSUF No. 12.)  The underlying plaintiffs allege that they worked fabricating Cambria's and the other defendants' industrial stone products, were exposed to or inhaled silica dust, and were subsequently diagnosed with silicosis. (JSUF No. 13.)  The Silica Lawsuits allege that fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders.  (JSUF No. 14.)  The Silica Lawsuits further contend that fabricating artificial stone products also produces volatile organic compounds (VOCs), the

---

[1] Cambria recently amended its complaint to name only those Silica Lawsuits that allege exposure to and injury from Cambria's products during the periods of the PIIC Policies.  The FAC does not involve Silica Lawsuits that allege exposure and injury that occurred after expiration of the PIIC Policies.  Moreover, the FAC does not name any Silica Lawsuits that have been filed against Cambria outside of California, and Cambria has withdrawn its tender of all Silica Lawsuits not filed in California as of the date of the filing of the FAC.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

predominant species being styrene, but also including phthalic anhydride, benzene, ethyl benzene, and toluene. (JSUF No. 15.)  Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis. (JSUF No. 15.)  Workers fabricating artificial stone products often develop progressive massive fibrosis due to high concentrations of crystalline silica and other toxic constituents of artificial stone. (JSUF No. 15.)  As alleged in a number of the Silica Lawsuits, a countertop fabricator typically fabricates about 40 stone slabs per week -- about 2,000 stone slabs per year -- every year that the underlying plaintiffs worked as a stone countertop fabricator. (JSUF No. 16.)

The Silica Lawsuits generally allege causes of action for Negligence, Failure to Warn, Products Liability and Fraudulent Concealment, among other things. (JSUF No. 17.)  Many, if not most, of the Silica Lawsuits allege Cambria is a Minnesota limited liability company and that it manufactured products in Minnesota.  (JSUF No. 18.)  They further contend that Cambria was founded in 2000 in Le Sueur, Minnesota and allegedly began operating in California on January 12, 2011. (JSUF No. 19.)

## III.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Pursuant to FRCP Rule 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FRCP Rule 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-78 (1986) (emphasis added).

/ / /

/ / /

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

### B.    Pertinent Principles of Contract Interpretation

Interpretation of an insurance policy is a question of law for the court based on settled rules of contract interpretation. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995).  Pursuant to California's rules of contract interpretation, insurance contracts, like other contracts, are to be governed according to the mutual intention of the parties at the time of contracting. *AIU Ins. Co. v. Superior Court (FMC Corp.),* 51 Cal. 3d 807, 821 (1990).  Where possible, such intent is inferred "solely from the written provisions of the contract," according to the "clear and explicit" meaning of the policy language, interpreted in its "ordinary and popular sense." *Id.* at 822.  Where the language of an insurance policy is clear and explicit, it governs. *Minkler v. Safeco Ins. Co. of America,* 49 Cal. 4th 315, 321 (2010).  A contract must be construed as a whole and interpreted in context so as to give effect to each provision, rather than interpreting contractual language in isolation. *SDC/Pullman Partners v. Tolo Inc.,* 60 Cal. App. 4th 37, 46 (1997) (citing Civil Code § 1641); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473-474 (1998); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993).

### C.    Duty to Defend and Indemnify Standards

Under California law, the determination of whether a duty to defend is owed by an insurer "is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (quoting *Gray v. Zurich Ins. Co*., 65 Cal. 2d 263 (1966)).  Where the complaint potentially seeks damages covered by the policy, the insurer owes a duty to defend. *Gray*, 65 Cal. 2d at 275.[2]  Facts extrinsic to the complaint

---

[2] The Supreme Court of Minnesota has held that the determination of the duty to defend is limited to the allegations in the complaint, unless the insurer is aware of facts indicating there may be a covered claim. *Garvis v. Employers Mut. Cas. Co.* 497 N.W.2d 254, 258 (Minn. 1993).

6

also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. *Montrose*, 6 Cal. 4th at 295. In addition, an insurer may deny coverage based on extrinsic evidence where "such evidence presents undisputed facts which conclusively eliminate a potential for liability." *Id.*

"The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. It arises only after liability is established." *Adir Int'l, LLC v. Starr Indem. & Liability Co.,* 2019 WL 4462613. *4 (C.D. Cal. Sep. 10, 2019) (quoting *Buss v. Superior Ct.*, 16 Cal. 4th 35, 46 (1997). "It is ... well settled that because the duty to defend is broader than the duty to indemnify,' a determination that 'there is no duty to defend automatically means there is no duty to indemnify.'" *Id.* (citing and quoting *Certain Underwriters at Lloyd's of London v. Superior Ct.,* 24 Cal. 4th 945 (2001).

## IV. <u>ARGUMENT</u>

### A. The Pollution Exclusion Bars Coverage Under Potentially Applicable Law

The clear and unambiguous language of the pollution exclusions in the PIIC Policies bars coverage for the Silica Lawsuits under both California and Minnesota law. As there is no conflict between the substantive laws of California and Minnesota on this issue, this Court, as the forum court, should apply the law of the state in which this Court sits—that is, California. In the event this Court were to find that the laws of the states of California and Minnesota conflict on the interpretation of the pollution exclusion, this Court should apply the law of the state of Minnesota based on California's conflict of laws principles. *Axis Reinsurance Co. v. Telekenex, Inc.*, 913 F. Supp. 2d 793, 800 (N.D. Cal. 2012) (citations omitted); *see also Paulsen v. CNF Inc.*, 559 F. 3d 1061, 1080–81 (9th Cir. 2009); *Gitano Grp., Inc. v. Kemper Grp.*, 26 Cal. App. 4th 49, 56–57, (1994), *as modified* (July 21, 1994).

/ / /

/ / /

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

### 1. *Under California Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits*

The pollution exclusions in the PIIC Policies clearly apply under California law to bar a duty to defend and indemnify Cambria for the Silica Lawsuits. In fact, a California Court of Appeal applied a Total Pollution Exclusion identical to that at issue in the CGL Policies to bar a duty to defend and indemnify under facts strikingly similar to those at issue in the present action. In *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480 (2005), multiple plaintiffs alleged that they "worked in, or were otherwise exposed to, silica at and through their employment" over the course of many years and that they suffered serious and permanent bodily injuries as a result of their exposure to silica and silica dust. *Id.* at 483. The plaintiffs in *Garamendi* alleged that they engaged in sandblasting that created silica-containing dust that was released from the operations into the surrounding area. *Id.* The complaints named as defendants, among others, those who were alleged to have designed, tested, evaluated, and manufactured protective gear and sandblasting-related products. *Id.* The complaints also alleged that the sellers of silica-containing products failed to warn of foreseeable health risks. *Id.* at 483. In *Garamendi*, the court observed that the exposure to silica was "an incidental by-product" of the sandblasting operations, and rejected the policyholder's contention that claims based on product defects or failure to warn could not fall within the pollution exclusion. *Id.* at 486.

PIIC anticipates that Cambria will contend that the fact that the PIIC Policies do not contain exclusions that specifically bar coverage for silica-related injuries, like some policies issued later in time do, means the pollution exclusions do not apply to injuries resulting from exposure to silica dust. Cambria is misguided. In fact, the court in *Garamendi* rejected this argument, holding that the Total Pollution Exclusion applied irrespective of whether the policy at issue contained an exclusion that specifically identified injuries resulting from exposure to silica dust. *Id.* at 487.

8

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

It therefore concluded that the Total Pollution Exclusion barred both a duty to defend and indemnify.

In reaching this conclusion, it distinguished the holding in *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003), in which the Supreme Court of California declined to apply a pollution exclusion to bar coverage when a tenant died after her apartment was sprayed with pesticides to eradicate yellowjackets.[3]  The *MacKinnon* court concluded that the normal, though negligent, residential application of pesticides would not be something commonly thought of as pollution.  *Id.* at 654.  In so doing, it found that the pollution exclusion before it did not plainly and clearly exclude ordinary acts of negligence involving toxic chemicals such as pesticides.  *Id.* at 639.  The *Garamendi* court distinguished *MacKinnon* by stating that, unlike the residential use of a pesticides for the purposes of killing insects, the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations was "most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi,* 127 Cal. App. 4th at 486.  The *Garamendi* court even distinguished the pollution exclusion at issue in *MacKinnon* from the Total Pollution Exclusion such as the one at issue before it and here, recognizing that the language of the Total Pollution Exclusion with its "but for" test is far broader and shifts the focus from actions taken to injuries that would not have occurred "but for" the discharge of pollutants.[4]  *Id.* at 488; *see also, Kingsley Mgmt. Corp. v.*

---

[3] The pollution exclusion at issue in *MacKinnon* provided that the insurance did not apply to bodily injury arising out of the actual, alleged or threatened discharge or dispersal of pollutants "at or from any premises, site or location" owned, occupied by, rented or loaned to the insured, or used by or for the insured or others for handling or storage of waste, or on which the insured or any contractor on his behalf performed certain operations with pollutants.  *Garamendi,* 127 Cal. App. 4th at 487.
[4] The pollution exclusions contained in the Excess Policies, though not identical to the Total Pollution Exclusions, similarly contain "but for" language that has been interpreted to be even broader than the language of the pollution exclusion at issue in *MacKinnon.*

9

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Occidental Fire & Cas. Co.,* 441 F. Supp. 3d 1016 (S.D. Cal. 2020) (distinguishing between the Total Pollution Exclusion and one similar to that at issue in *MacKinnon* on the grounds that the "but for" language in the Total Pollution Exclusion should be read more broadly).

Like *Garamendi* and unlike *MacKinnon,* here the Silica Lawsuits allege long-term workplace exposures to silica dust and other toxins affecting numerous persons that clearly qualify as "pollutants" under the PIIC Policies. The Silica Lawsuits allege that the plaintiffs were exposed to and inhaled large amounts of respirable crystalline silica dust as a regular part of their duties "[c]utting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products," typically fabricating 40 stones a week, or 2000 stones per year. The plaintiffs in the Silica Lawsuits were not exposed to silica and other toxins as a result of an ordinary act of negligence, such as the spraying of pesticides, but were allegedly exposed as part of their routine workplace responsibilities over a lengthy period of time. *See Villa Los Alamos Homeowners Ass'n. v. State Farm*, 198 Cal. App. 4th 522, 539 (2011) (applying pollution exclusion to release of asbestos fibers from popcorn ceilings being scraped at a condo complex and finding that a contractor's work scraping ceilings was not an ordinary act of negligence).

Cambria has pled that it believes *American Zurich Ins. Co. v. James N. Gray Co.*, 2014 WL 11430928 (C.D. Cal. July 25, 2014), an unpublished district court case, supports its position that the pollution exclusions in the PIIC Policies do not apply to bar coverage. Cambria's reliance upon *James N. Gray* is misplaced. *James N. Gray* is a contribution case between two insurers in which the court denied summary judgment after finding that a pollution exclusion did not unequivocally bar a duty to defend. In that case, a contractor worked on a demolition and construction project at a Boeing facility. *Id.* at *1. The underlying plaintiffs, two Boeing employees and their families, alleged that the contractor was negligent and breached a duty of care by doing its demolition work negligently and causing toxins and silica

10

dust to enter the air at the site where the plaintiffs worked. *Id.* at *1. The court concluded that a reasonable insured "wouldn't necessarily think of the 'release of toxins, including silica and dust' in the demolition business as traditional pollution." *Id.* at *4. However, the court recognized that, in some contexts, it is possible that the release of such toxins and dust in the demolition business could be considered traditional pollution, and cited to *Garamendi* as such a case. *Id.* It recognized that *Garamendi* involved the "widespread dissemination of silica dust" as an incidental by-product of sandblasting operations that "subject[ed] many workers in the area [47 in total] to an unreasonable risk of harm" and that such widespread dissemination and effect was commonly thought of as pollution. *Id.* at *5. The same reasoning applies here to the Silica Lawsuits. The fabrication of the stone countertops, like sandblasting, involves as an incidental by-product the widespread dissemination of silica dust affecting the sixty-nine plaintiffs who have sued Cambria and whose suits against Cambria are at issue in this action. *James N. Gray* is therefore clearly distinguishable.

Most recently, Judge Monica Ramirez Almadani in *Hanover Am. Ins. Co. v. Francini, Inc.*, No. 2:23-CV-10047-MRA-MAA, 2025 WL 1090925, at *4 (C.D. Cal. Mar. 27, 2025) addressed the application of silica exclusions to some of the very same underlying Silica Lawsuits as are at issue here.[5] In granting Hanover's motion for judgment on the pleadings, Judge Almadani distinguished *James N. Gray* and concluded that the primary injuries in the Silica Lawsuits in the cases at issue before her are silicosis (caused by silica inhalation) and resulting complications from that lung disease, and that silica was the main chemical contributing to the underlying plaintiffs' injuries. *Id.* at *4. She found that the silica lawsuits are focused on the

---

[5] Hanover also alleged that the Total Pollution Exclusion barred a defense and indemnity of the Silica Lawsuits. In light of the judge's broad ruling applying the silica exclusions, she found it unnecessary to address the application of the Total Pollution Exclusion.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

dangers of exposure to crystalline silica that working with artificial stone presents; they include long histories on these silica-specific risks. *Id.* That is exactly the case here, where in some of the very same Silica Lawsuits against Cambria, the underlying plaintiffs have long histories of exposure to silica dust and other toxins inherent in the trade of fabricating stone slabs, and not simply general construction or demolition work that resulted in claims by two employees alleging general negligence against a contractor.

Under the clear authority of *Garamendi*, California law dictates that the pollution exclusions in the PIIC Policies precludes defense and indemnity for the Silica Lawsuits.

>  **2.    *Under Minnesota Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits***

Minnesota courts have taken a "non-technical, plain meaning approach" to interpreting pollution exclusions, rejecting the position that the exclusion should be limited to "situations involving traditional environmental pollution." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 637 (Minn. 2013) (finding that carbon monoxide released from a negligently installed boiler was a "pollutant" subject to the CGL policy's absolute pollution exclusion; policy defined "pollutant" to include "any gaseous pollutant, irritant, or contaminant," and the federal and state governments regulated carbon monoxide as a pollutant). *See also, Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779 (Minn. App. 1999) (finding that lead paint in a home is a "pollutant" within a CGL policy's absolute pollution exclusion; policy defined "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste"); *Board of Regents of the Univ. of Minnesota v. Royal Ins. Co. of America*, 517 N.W.2d 888 (Minn. 1994) (asbestos fibers qualify as an "irritant" where policy barred coverage for damages caused by the "discharge, dispersal, release or escape

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

of … irritants."; asbestos fibers are a health hazard because of their irritant effects on the human body).

Since *Wolters*, Minnesota courts have applied this rule consistently in circumstances where the release of a harmful chemical causes bodily injury to a plaintiff. *See Travelers Prop. Cas. Co. v. Klick,* 867 F.3d 989 (8th Cir. 2017) (applying *Wolters* to bar coverage for injuries suffered as a result of release of carbon monoxide into the engine compartment where claimant was located and injured); *see also Brouse v. Nationwide Agribusiness Ins. Co.,* No. A-14-1729, 2015 WL 4507996 (Minn. App. July 27, 2015) (applying the *Wolters* rule to find that injuries caused by hydrogen-sulfide emissions, particulate matter, flies and other insects emanating from a dairy operation were "pollutants" within scope of pollution exclusion). Significantly, Minnesota courts have expressly applied pollution exclusions to toxic workplace exposures. *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.,* 480 N.W.2d 368, 374 (Minn. Ct. App. 1992) (no coverage where pollution involved repeated exposure to conditions caused by workplace operations); *see also Continental Cas. Co. v. Advance Terrazzo & Tile Co.,* 462 F.3d 1002 (8th Cir. 2006) (applying Minnesota law to hold that the pollution exclusion barred coverage for a workplace exposure to carbon monoxide caused by emissions from terrazzo floor grinders).

The plaintiffs in the Silica Lawsuits allege they inhaled silica dust that was released and dispersed into the surrounding environment in the course of plaintiffs' work fabricating industrial stone slabs. There can be no question that silica dust and other alleged toxins are "irritants" or "contaminants" because, like carbon monoxide and asbestos, they present "a health hazard because of [] irritant effects on the human body." *Wolters*, 831 N.W.2d at 637 (*quoting Hanson*, 517 N.W.2d at 892). Consequently, the pollution exclusions in the PIIC Policies would clearly apply to bar a duty to defend and indemnify under Minnesota law.

/ / /

13

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**B.**    **If this Court Finds a Conflict Between the Laws of California and Minnesota Concerning Interpretation of the Pollution Exclusion, Minnesota Law Governs**

Because coverage under the PIIC Policies is clearly barred by the pollution exclusions under both California and Minnesota law, there is no conflict of laws that would require this Court to conduct a choice-of-law analysis. However, in the event this Court were to conclude that there is a conflict and that the pollution exclusions do not bar coverage under California law, this Court should apply the law of Minnesota to application of the pollution exclusions under the PIIC Policies. "A federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Under California law, choice of law evaluations for contractual disputes are governed by California Civ. Code section 1646, which provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1448-49 (2007) ("Civil Code section 1646, by its express terms, prescribes a choice-of-law rule concerning the interpretation of contracts"). In applying section 1646, the first step is to determine whether the contract indicated a place of performance. *Id.* at 1449. "The parties' intention as to the place of performance sometimes can be gleaned from the nature of the contract and the surrounding circumstances, even if the contract does not expressly specify a place of performance." *Id.* at 1450.

The PIIC Policies do not expressly state a "place of performance." However, such a designation can be gleaned from the language of the policy provisions themselves. *Id.* at 1443. The PIIC Policies: 1) were issued to Cambria at Cambria's headquarters at its Minnesota address; 2) identify only three locations in the premises schedule (all in Minnesota); 3) contain numerous endorsements with titles

14

including the words "Minnesota Changes;" and 4) contain auto insurance identifying automobiles garaged in Minnesota and providing coverage tailored to Minnesota state law.  In contrast, there is no reference to California in the PIIC Policies and for good reason: Cambria did not do business in California until many years after the PIIC Policies expired.  There is no indication that the parties to the PIIC Policies even contemplated the possibility (much less intended) that the PIIC Policies would be governed by California law.

In *Frontier*, the court applied California law to a case pending in California, concluding the policies indicated the place of performance of the contract was California.  However, there are two critical distinctions between this case and *Frontier*.  First, the court in *Frontier* noted that the policy contained direct references to California and illustrated that the parties contemplated risks in California, including that the policies provided coverage for claims arising from oil and gas operations at a California drill site identified on the policy, identified the City of Los Angeles as an additional insured, and the City of Beverly Hills in another endorsement. *Id.* at 1444.  The court's conclusion that the parties intended the contract to be performed in California flowed directly from these facts.  *Id.* at 1461-62 ("These three endorsements clearly demonstrate that the parties intended the policy to provide coverage for the insureds' oil and gas operations in Beverly Hills.  Accordingly, we conclude that the parties anticipated that a suit arising from those operations in Beverly Hills could be prosecuted in California and that RLI would be obligated to provide a defense in California if the claims were potentially covered under the policy.").

In contrast, the PIIC Policies contain no such provisions indicating the parties anticipated the contracts would be performed in California, and courts have routinely distinguished *Frontier* for this reason.  *Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGPJWX, 2018 WL 3817859, at *4–6 (C.D. Cal. Mar. 27, 2018) ("That G&E can assert where the contract *could* have been and even *was* performed is

15

irrelevant, as courts in this District have specifically rejected this approach and determined that contracts, like this one, that do not contain clear geographical references do not therefore demonstrate the intended place of performance") (citing *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV 13-00545-JVS (JPRx), 2014 WL 12561603, at *5 (C.D. Cal. Mar. 24, 2014) ("[T]he Court is persuaded that holding that a contract is to be performed anywhere it *could* be performed would eliminate the second prong of the section 1646 test, insofar as virtually every contract would thus indicate a place of performance.") (emphasis in original); *Ameron Int'l Corp. v. American Home Assurance Co.*, No. CV 11-1601 CAS (AGRx), 2011 WL 2261195, at *4–5 (C.D. Cal. June 6, 2011) ("[D]efendant's argument that the parties indicated as the place of performance any location where there is evidence it could conceivably be performed goes too far.  Not only is defendant's position contrary to the plain language of the statute ... it would mean that there would be almost no situation in which a contract does not indicate a place of performance.").

Second, even if there was no indicated place of performance, the PIIC Policies would be governed by the place the contracts were "made" under Section 1646, which would also be Minnesota.  "Under California law, a contract is made in the place of acceptance." *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV1300545JVSJPRX, 2014 WL 12561603, at *4–6 (C.D. Cal. Mar. 24, 2014) (citing *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 222 (2005)).  The PIIC Policies should be found to have been made in Minnesota because they were issued and delivered to Cambria at its Minnesota address.  *See Financial Indem. Co. v. Messick*, 606 F. Supp. 3d 996, 1000 (E.D. Cal. 2022) ("the FIC Policy lists the insurance broker and the named insureds with addresses in Marysville, California . . . The court therefore finds the FIC Policy was made in California, and California law applies") (citations omitted).

/ / /

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Some California courts have applied a "governmental interest" approach (instead of the section 1646 approach) to choice of law disputes involving contracts, including to certain insurance coverage disputes. *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637 (1993) (in assessing whether policy coverage should extend to punitive damages, governmental interest test applied). However, the court in *Frontier* noted that the "governmental interest" approach, which looks to the interests of the litigants and the involved states, "does not supplant the legislative command of section 1646." *Id.*; *see also Messick*, 606 F. Supp. 3d at 999. Moreover, the court in *Frontier* specifically distinguished *Stonewall* because the choice of law issue there "concerned the existence of a right of indemnity for punitive damages and did not involve an issue of contract interpretation." *Frontier*, 153 Cal. App. 4th at 1460 ("Civil Code section 1646 is the choice-of-law rule that determines the law governing the *interpretation* of a contract.") (emphasis in original). Because what is at issue here is the interpretation of a contract, section 1646 controls.

Regardless, even under a governmental interest approach, Minnesota law should still apply. In *Stonewall*, the court observed that there are numerous relevant contacts in determining which state's law applies to a coverage dispute under the governmental interest approach, including the place of contracting, negotiation of the contract, and performance, the location of the subject matter of the contract, and the domicile, residence, nationality, and place of incorporation and place of business of the parties. 14 Cal. App. 4th at 646. The court found that where the parties contemplated that the policy would insure risks located in several states and the loss arose out of a product the insured manufactured in California and which was sold in California too, the policy should be viewed as "separate policies which insure separate risks located in any number of states where the corporation does business." *Id*. at 646-47.

///

17

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Here, when the PIIC Policies were issued (and throughout their terms), Cambria had not even begun to do business in California.  In *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV1300545JVSJPRX, 2014 WL 12561603, at *4–6 (C.D. Cal. Mar. 24, 2014), the court distinguished *Stonewall* for this reason, noting that the policies had no endorsements for different states and the insured had no manufacturing facilities in California.  Therefore, the court found that Nebraska law governed an insurance dispute under a pollution exclusion under a Nebraska insurance policy applied to a loss in California.  *Id.*; *see also Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp. 2d 909, 920–22 (N.D. Cal. 2010) (applying Washington law to California auto accident in part because the policy at issue contained Washington coverage forms and policy conditions) (citations omitted); *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079 (N.D. Cal. 2007) ("the record does not show that the parties anticipated that Georgia law would apply to risks insured in Georgia, nor does it reflect any underwriting analysis comparable to that evaluated in *Stonewall*").

In sum, if the Court finds that California and Minnesota law differ on the pollution exclusion's scope and irrespective of the choice-of-law test applied, Minnesota law should govern the interpretation of the PIIC policies.

## V.    CONCLUSION

For the above reasons, PIIC has no duty to defend or indemnify Cambria for the claims at issue in the Silica Lawsuits under the PIIC Policies.  PIIC therefore respectfully requests that this Court grant its Motion for Summary Judgment in its entirety.  In the alternative, PIIC requests that this Court grant it partial summary judgment on any one or more of the issues addressed in this Motion.

/ / /

/ / /

/ / /

18

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

Dated:  June 12, 2025                    **TRESSLER LLP**

By:  */s/ Linda Bondi Morrison*
Linda Bondi Morrison
Samantha K. Shafer
*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

19

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF
MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT