Linda Bondi Morrison, Esq. (SBN 210264)
lmorrison@tresslerllp.com
Samantha K. Shafer, Esq. (SBN 328321)
sshafer@tresslerllp.com
TRESSLER LLP
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone: (949) 336-1200
Facsimile: (949) 752-0645

Attorneys for Defendant,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>       Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY<br>INSURANCE COMPANY<br><br>       Defendant. | Case No.: 2:24-cv-01913-MEMF-MRW<br><br>Assigned to:<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**Date:**     **September 11, 2025**<br>**Time:**    **10:00 a.m.**<br>**Dept:**     **8B**<br><br>[Filed Concurrently with Declaration of Ann Conroy; Joint Statement of Uncontroverted Facts in Support of Motion for Summary Judgment; Request for Judicial Notice; and [Proposed] Order] |

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Please take notice that on September 11, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 8B of the above-entitled Court, located at 350 West First Street, 8th Floor, Los Angeles, California 90012, Defendant Philadelphia Indemnity Insurance Company ("PIIC"), pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56, will and hereby does respectfully move for summary judgment, or alternatively for partial summary judgment, in its favor and against Plaintiff Cambria Company LLC ("Cambria").

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 20, 2025.  This Motion is further made pursuant to Rule 56 of the FRCP and Local Rule 56 of the Local Rules of the United States District Court for the Central District of California.  This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities attached hereto; the Joint Statement of Uncontroverted Facts and Conclusions of Law; the Declaration of Ann Conroy; the Request for Judicial Notice; the pleadings on file in this action; and upon such further evidence as the Court permits.

Respectfully submitted,

Dated:  June 12, 2025                    **TRESSLER LLP**

By:*/s/ Linda Bondi Morrison*
      Linda Bondi Morrison
      Samantha K. Shafer
      *Attorneys for Defendant*
      *Philadelphia Indemnity Insurance Company*

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.     PIIC'S INTRODUCTION AND SUMMARY OF ARGUMENT ...............................1

II.    CAMBRIA'S INTRODUCTION AND SUMMARY OF ARGUMENT .....................1

III.   PIIC'S OPPOSITION/REPLY INTRODUCTION.............................................3

IV.   CAMBRIA'S SUR-REPLY – INTRODUCTION ................................................4

V.    FACTUAL BACKGROUND – PIIC'S STATEMENT.......................................4

     A.     The PIIC Policies ..................................................................4

     B.     The Silica Lawsuits ...............................................................6

VI.   FACTUAL BACKGROUND – CAMBRIA'S STATEMENT ...................................7

     A.     Cambria's Business. .............................................................7

     B.     PIIC's Insurance. ................................................................7

     C.     The Bodily-Injury Lawsuits.....................................................9

     D.     PIIC's Denials of Coverage. ...................................................10

VII.   LEGAL STANDARDS...............................................................10

     A.     Summary Judgment Standard ..................................................10

     B.     Pertinent Principles of Contract Interpretation – PIIC's Statement......................10

     C.     Duty to Defend and Indemnify Standards – PIIC's Statement.............................11

     D.     Duty to Defend Standards – Cambria's Statement .................................11

VIII.   PIIC'S ARGUMENT.................................................................12

     A.     The Pollution Exclusion Bars Coverage Under Potentially Applicable Law........12

         1.     Under California Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits..............................................12

         2.     Under Minnesota Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits..............................................15

     B.     If this Court Finds a Conflict Between the Laws of California and Minnesota Concerning Interpretation of the Pollution Exclusion, Minnesota Law Governs .16

IX.    CAMBRIA'S ARGUMENT ...........................................................20

     A.     The Bodily-Injury Lawsuits Are Covered Under PIIC's Insuring Agreement......20

     B.     California Law Applies to the Pollution Exclusion.............................................20

i

1.    *Pep Boys* Is the Most Recent, On-Point Authority From the California Appellate Courts. ...................................................................20

2.    Under the Governmental-Interest Test, California Law Applies...............21

3.    Even if § 1646 Applied, PIIC's Place of Performance Is California.........24

C.    PIIC's Pollution Exclusion Does Not Eliminate Its Duty to Defend....................25

1.    *MacKinnon* Controls.................................................................25

2.    The Underlying Plaintiffs Do Not Allege Injury From Traditional Environmental Pollution. .............................................................26

3.    The Plaintiffs Allege Confined Exposure to Silica, Metals and VOCs.....27

D.    PIIC Has Breached Its Duty to Defend...................................................30

X.    **PIIC'S OPPOSITION/REPLY ARGUMENT**.................................................30

1.    Cambria's Opposition Misstates Choice-of-Law Principles ....................30

2.    Cambria's Opposition Misapplies California's Choice-of-Law Test........31

1.    Silica, Metals, and VOCs are "Pollutants" Within the Scope of the TPE.34

2.    The Silica Lawsuits Allege that Bodily Injuries Resulted from Traditional Pollution.....................................................................35

3.    Cambria's Contention That "Products/Completed Operations" Coverage Applies to Any and All Claims is Wrong...............................................37

4.    Widespread Dissemination of Silica Dust is not Required.......................38

XI.   **CAMBRIA'S SUR-REPLY – ARGUMENT**................................................40

A.    The Bodily Injury Lawsuits Satisfy PIIC's Insuring Agreement. .........................40

B.    California Law Applies to the Pollution Exclusion.............................................40

1.    Choice of Law Precedes the Merits. .......................................................40

2.    *Pep Boys* Guides The Court's Approach. ...............................................41

3.    California Law Applies Under Either Test...............................................41

C.    PIIC's Pollution Exclusion Does Not Eliminate Its Duty to Defend....................43

1.    *MacKinnnon* Applies to PIIC's Total Pollution Exclusion. ......................43

ii

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

2.    The Mechanism of Harm At Issue In the Underlying Bodily Injury Lawsuits Is Not Traditional Environmental Pollution. ..............................................43

3.    PIIC Cannot Establish Widespread Dispersion, and the Confined Exposures to Silica, Metals and/or VOCs Are Not Traditional Environmental Pollution. ...................................................................................................44

4.    Silica Is Not a Pollutant Under Environmental Law. ...............................46

5.    PIIC's Caselaw Does Not Establish that Silica, Metals, and VOCs Are Environmental Pollutants..........................................................................46

6.    Cambria's Purchase of Products-Completed Operations Coverage Is Relevant to Cambria's Reasonable Expectations. ....................................48

7.    PIIC's Argument About Other Insurance Is Baseless. .............................48

XII.    PIIC'S CONCLUSION ...................................................................................49

XIII.    CAMBRIA'S CONCLUSION .........................................................................49

XIV.    PIIC'S OPPOSITION/REPLY CONCLUSION ..............................................49

XV.    CAMBRIA'S SUR-REPLY - CONCLUSION.................................................49

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABF Capital Corp. v. Grove Properties Co.*,
126 Cal. App. 4th 204 (2005) ...................................................................................18

*Adir Int'l, LLC v. Starr Indem. & Liability Co.*,
2019 WL 4462613 (C.D. Cal. Sep. 10, 2019) ...........................................................11

*AIG Specialty Ins. Co. v. Stoller Ent., Inc.*,
No. 4:16-cv-26, 2017 WL 541533 (S.D. Tex. Feb. 7, 2017)......................................38

*AIU Ins. Co. v. Superior Court, (FMC Corp.),*
251 Cal. 3d 807 (1990) .............................................................................................10

*Alco Iron & Metal Co. v. American Int'l Spec. Lines Ins. Co.*,
911 F. Supp. 2d 844 (N.D. Cal. 2012)......................................................................38

*American Cas. Co. of Reading, PA v. Miller*,
159 Cal. App. 4th 501 (2008) ........................................................................38, 44, 45

*American Coatings Assn., Inc. v. South Coast Air Quality District*,
54 Cal. 4th 446 (2012)...........................................................................................35, 48

*American Zurich Ins. Co. v. James N. Gray Co.,*
No. SACV131966AGJPRX, 2014 WL 11430928 (C.D. Cal. July 25, 2014).......................passim

*Ameron Int'l Corp. v. American Home Assurance Co.*,
No. CV 11-1601 CAS (AGRx), 2011 WL 2261195 (C.D. Cal. June 6, 2011) .............................18

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................10

*Auto-Owners Ins. Co. v. Hanson*,
588 N.W.2d 777 (Minn. App. 1999) ..........................................................................15

*Axis Reinsurance Co. v. Telekenex, Inc.*,
913 F. Supp. 2d 793 (N.D. Cal. 2012).......................................................................12

*Board of Regents of the Univ. of Minnesota v. Royal Ins. Co. of America*,
517 N.W.2d 888 (Minn. 1994) ........................................................................15, 16, 21

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
622 F.3d 996 (9th Cir. 2010) ..........................................................................16, 20, 41

*Broome County v. Travelers Indem. Co.*,
125 A.D. 3d 1241 (N.Y. App. Div. 2015) ...................................................................35

iv

*Brouse v. Nationwide Agribusiness Ins. Co.,*
No. A-14-1729, 2015 WL 4507996 (Minn. App. July 27, 2015)...........................................16, 40

*Buss v. Superior Ct.,*
16 Cal. 4th 35 (1997) .....................................................................................................11, 22, 37

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...............................................................................................................10

*Certain Underwriters at Lloyd's of London v. Superior Ct.,*
24 Cal. 4th 945 (2001) ...........................................................................................................11

*Chen v. L.A. Truck Ctrs.,*
444 P.3d 727 (Cal. 2019)................................................................................................21, 22, 41

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
68 Cal. App. 4th 445 (1998) ...................................................................................................11

*Clarendon America Ins. Co. v. Bay Inc.,*
10 F. Supp. 2d 736 (S.D. Tex. 1998).......................................................................................35

*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.,*
156 Cal. App. 4th 1469 (2007) ........................................................................................29, 36, 44

*Columbia Cas. Co. v. Gordon Trucking, Inc.,*
758 F. Supp. 2d 909 (N.D. Cal. 2010)......................................................................................19

*Continental Cas. Co. v. Advance Terrazzo & Tile Co.,*
462 F.3d 1002 (8th Cir. 2006) ...........................................................................................16, 40

*Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.,*
No. CIV. 03-5446MJDJSM, 2005 WL 1923661 (D. Minn. Aug. 11, 2005)..............................21

*Countryside Coop. v. Harry A. Koch Co.,*
280 Neb. 795 (2010) ..............................................................................................................38

*Dua v. Stillwater Ins.,*
91 Cal. App. 5th 127 (2023) ...................................................................................................11

*EFK Invs., LLC v. Peerless Ins.,*
No. 13-CV-5910 YGR, 2014 WL 4802920 (N.D. Cal. Sept. 26, 2014) ...........................25, 39, 43

*Emps. Reins. Co. v. Superior Court,*
No. 13-CV-5910 YGR, 2014 WL 4802920 (N.D. Cal. Sept. 26, 2014) .....................................43

*Financial Indem. Co. v. Messick,*
606 F. Supp. 3d 996 (E.D. Cal. 2022) ................................................................................18, 19

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

*Frontier Oil Corp. v. RLI Ins. Co.*,
  153 Cal. App. 4th 1436 (2007) ........................................................................................passim

*Garamendi v. Golden Eagle Insurance Co.*,
  127 Cal. App. 4th 480 (2005) ..........................................................................................passim

*Garvis v. Employers Mut. Cas. Co.*,
  497 N.W.2d 254 (Minn. 1993) .................................................................................................11

*Gitano Grp., Inc. v. Kemper Grp.*,
  26 Cal. App. 4th 49, (1994) ....................................................................................................12

*Gonzales v. Free Speech Coal.*,
  408 F.3d 613 (9th Cir. 2005) ...................................................................................................29

*Grant & Eisenhofer, P.A. v. Brown*,
  No. CV175968PSGPJWX, 2018 WL 3817859 (C.D. Cal. Mar. 27, 2018) ...................................18

*Gravquick A/S v. Trimble Navigation Intern.*,
  323 F.3d 1219 (9th Cir. 2003) .................................................................................................41

*Gray v. Zurich Ins. Co.*,
  65 Cal. 2d 263 (1966) ..............................................................................................................11

*Great Am. Assurance Co. v. MS Indus. Sheet Metal*,
  No. SACV11754JSTMLGX, 2012 WL 13018550 (C.D. Cal. Jan. 31, 2012) ............25, 27, 39, 43

*Griffin Dewatering Corp. v. Northern Ins. Co. of New York*,
  176 Cal. App. 4th 172 (2009) ..................................................................................................34

*Hanover Am. Ins. Co. v. Francini, Inc.*,
  No. 2:23-CV-10047-MRA-MAA, 2025 WL 1090925 (C.D. Cal. Mar. 27, 2025) .......................15

*Health Net, Inc. v. RLI Ins. Co.*,
  206 Cal. App. 4th 232 (2012) .............................................................................................30, 48

*Horace Mann Ins. v. Barbara B.*,
  846 P.2d 792 (Cal. 1993)....................................................................................................30, 46

*Intergulf Dev. LLC v. Superior Ct.*,
  183 Cal. App. 4th 16 (2010) ....................................................................................................30

*Itzhaki v. U.S. Liab. Ins.*,
  536 F. Supp. 3d 651 (C.D. Cal. 2021) .................................................................................12, 46

*James River Ins. v. Medolac Labs.*,
  290 F. Supp. 3d 956 (C.D. Cal. 2018) .................................................................................24, 42

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

*Jones v. St. Paul Travelers*,
    496 F. Supp. 2d 1079 (N.D. Cal. 2007)........................................................................19, 23, 24, 41

*Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.*,
    441 F. Supp. 3d 1016 (S.D. Cal. 2020)...................................................................................13, 34

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941)........................................................................................................................31

*MacKinnon v. Truck Insurance Exchange*,
    31 Cal. 4th 635 (2003) ............................................................................................................passim

*McCann v. Foster Wheeler LLC*,
    48 Cal. 4th 68 (2010) .....................................................................................................................22

*Medina v. Harco Nat'l Ins.*,
    No. CV 15-05595-BRO (MRWx), 2016 WL 7647680 (C.D. Cal. July 29, 2016)............22, 23, 24

*Meridian Mut. Ins. Co. v. Kellman*,
    197 F.3d 1178 (6th Cir. 1999) .......................................................................................................44

*Midwest Family Mut. Ins. Co. v. Wolters*,
    831 N.W.2d 628 (Minn. 2013) ...........................................................................................15, 16, 40

*Minkler v. Safeco Ins. Co. of America*,
    49 Cal. 4th 315 (2010) ...................................................................................................................10

*Monarch Greenback, LLC v. Monticello Ins. Co.*,
    118 F. Supp. 2d 1068 (D. Idaho 1999) .....................................................................................35, 47

*Montrose Chem. Corp. v. Superior Ct.*,
    6 Cal. 4th 287 (1993) ................................................................................................................11, 29

*National Foam, Inc. v. Zurich American Insurance Company*,
    768 F. Supp. 1009 (N.D. Cal. 2025)......................................................................................passim

*Nat'l Fire Ins. Co. of Hartford v. Martinelli*,
    No. 07-CV-01056-AWI-GSA, 2008 WL 2725070 (E.D. Cal. July 11, 2008) .............................29

*Ortega Rock Quarry v. Golden Eagle Ins. Corp.*,
    141 Cal. App. 4th 969 (2006) ..............................................................................................35, 47, 48

*Paulsen v. CNF Inc.*,
    559 F. 3d 1061 (9th Cir. 2009) ......................................................................................................12

*Pension Trust Fund v. Fed. Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) .........................................................................................................48

vii

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Pep Boys Manny Moe & Jack v. Old Republic Ins. Co.*,
    98 Cal. App. 5th 329 (2023) ..................................................................................passim

*Pulte Home Co., LLC v. HDI Glob. Specialty SE*,
    No. CV 24-2191-JFW(PDX), 2025 WL 2074556 (C.D. Cal. July 1, 2025) ................................45

*Reese v. Travelers Ins. Co.*,
    129 F.3d 1056 (9th Cir. 1997) .......................................................................................11

*RLI Ins. Co. v. Gonzalez*,
    411 F. App'x 696 (5th Cir. 2011) ...................................................................................35

*Santaluz, LLC v. Am. Home Assurance Co.*,
    No. 09CV2033 JAH(POR), 2010 WL 11509307 (S.D. Cal. Aug. 6, 2010)...........................27, 39

*SDC/Pullman Partners v. Tolo Inc.*,
    60 Cal. App. 4th 37 (1997) ...........................................................................................10

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,
    12 Cal. App. 4th 715 (1993) ..........................................................................................11

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*,
    14 Cal. App. 4th 637 (1993) .......................................................................... 18, 19, 22, 41

*Store Kraft Mfg. v. Wausau Bus. Ins. Co.*,
    No. SACV 13-00545-JVS (JPRx), 2014 WL 12561603 (C.D. Cal. Mar. 24, 2014)..............18, 19

*Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*,
    480 N.W.2d 368 (Minn. Ct. App. 1992)...........................................................................16

*Travelers Ins. Co. v. Workmen's Comp. Appeals Bd.*,
    434 P.2d 992 (Cal. 1967).............................................................................................23

*Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*,
    207 Cal. App. 4th 969 (2012) .......................................................................................45

*Travelers Prop. Cas. Co. of Am. v. City of Los Angeles Harbor Dept.*,
    15-7799-GW(AJWX)), 2016 WL 11520822 (C.D. Cal. 2016).................................................36

*Travelers Prop. Cas. Co. v. Klick,*
    867 F.3d 989 (8th Cir. 2017) ........................................................................................16

*UMG Recordings, Inc. v. Am. Home Ass. Co.*,
    No. CV 04-04756 DDP (RNBx), 2004 WL 7340621 (C.D. Cal. Nov. 5, 2004)...............20, 30, 40

*Vestar Dev. II, LLC v. Gen. Dynamics*,
    249 F.3d 958 (9th Cir. 2001) ........................................................................................41

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Villa Los Alamos Homeowners Ass'n. v. State Farm,*
   198 Cal. App. 4th 522 (2011) ................................................................................passim

*Waller v. Truck Ins. Exch., Inc.,*
   11 Cal. 4th 1 (1995) ...................................................................................................10

*Wash. Mut. Bank, FA v. Superior Court,*
   15 P.3d 1071 (Cal. 2000)............................................................................................24

*Zamani v. Carnes,*
   491 F.3d 990 (9th Cir. 2007) .....................................................................................49

*Zinser v. Accufix Rsch. Ins., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ...................................................................................22

**Statutes**

33 U.S.C. § 1317..............................................................................................................26

42 U.S.C. § 7412(b) .........................................................................................................26

California Civ. Code section 1646.............................................................................passim

Civil Code § 1641 ............................................................................................................10

**Rules**

Federal Rules of Civil Procedure ("FRCP") Rule 56 ................................................2, 10

**Regulations**

29 C.F.R. 1910.1000.................................................................................................26, 36

29 CFR § 1910.141(a)(5).................................................................................................46

29 CFR § 1910.141(b)(1) ................................................................................................46

29 CFR § 1910.141(d)(2) ................................................................................................46

29 CFR § 1926.501..........................................................................................................46

40 C.F.R. § 401.15 (2011) ...............................................................................................26

CCR § 1530.1 ..................................................................................................................36

CCR § 5155 .....................................................................................................................36

Title 8, § 5204, of the California Code of Regulations ...................................................36

**Other Authorities**

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

California Insurance Law Handbook § 45:41.................................................................................29

x

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PIIC's INTRODUCTION AND SUMMARY OF ARGUMENT

This insurance coverage dispute between Cambria Company LLC ("Cambria") and Philadelphia Indemnity Insurance Company ("PIIC") arises out of sixty-nine lawsuits ("Silica Lawsuits") filed by underlying plaintiffs alleging they sustained injuries, primarily silicosis, resulting from their exposure to silica dust and other toxins as an occupational exposure during their work fabricating industrial stone quartz surface slabs manufactured or supplied by Cambria and other defendants.  The underlying plaintiffs allegedly worked cutting, sawing, grinding, drilling, edging, polishing, and installing the stone countertops, and were, over an extended period of time, exposed to dust containing silica and other toxins that was generated during the fabrication of the industrial stone and was dispersed from the slabs, contaminating the surrounding area and causing them injury.

PIIC issued two primary general liability policies and two excess liability policies to Cambria, effective November 20, 2000 to November 1, 2002.  Each of the primary policies contains a broad Total Pollution Exclusion which applies to "bodily injury" "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  Silica and the other toxins to which the underlying plaintiffs allege exposure are "pollutants."  The excess policies similarly contain broad pollution exclusions.  These exclusions by their plain meaning bar any duty to defend and indemnify Cambria for the Silica Lawsuits.

The PIIC policies were issued to Cambria in Minnesota at least ten years before Cambria started doing business in California.  Minnesota law should therefore apply to interpretation and application of the pollution exclusions in PIIC's policies.  However, as both California and Minnesota law would clearly apply the pollution exclusions to bar any duty to defend and indemnify, it is unnecessary for this Court to undertake a choice-of-law analysis.  However, in the event this Court were to determine that the laws of the states of California and Minnesota conflict on application of the pollution exclusions, then based upon California's choice-of-law principles, this Court should apply the law of Minnesota to determine application of the pollution exclusions to the Silica Lawsuits.

### II.    CAMBRIA'S INTRODUCTION AND SUMMARY OF ARGUMENT

Philadelphia Indemnity Insurance Company ("PIIC") sold commercial general liability insurance to Cambria Company LLC ("Cambria"), promising to protect Cambria from bodily-injury claims arising out of the sale of its quartz countertop products. Core to this insurance, PIIC

1

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

undertook the "duty to defend." PIIC also promised $12 million in "Products/Completed Operations" indemnification limits, which expressly covers claims for alleged failure to warn.

Cambria now faces the very risks PIIC promised to insure. Cambria has been named in a multitude of California bodily injury suits, brought by (non-Cambria) workers allegedly injured as a result of fabricating and installing Cambria's quartz products. But PIIC has denied all coverage to Cambria. PIIC has done so for one reason, the "Total Pollution Exclusion."

This motion raises two issues: (1) whether California or Minnesota law applies to the Parties' dispute; and (2) whether the Total Pollution Exclusion eliminates PIIC's duty to defend. PIIC cannot satisfy its burden on either issue, and Cambria, not PIIC, is entitled to summary judgment.

First, California law applies under *The Pep Boys Manny Moe & Jack of California v. Old Republic Insurance Company*—the most recent California Court of Appeals decision on the issue. 98 Cal. App. 5th 329, 346 (2023), *review denied* (Mar. 12, 2024). *Pep Boys* held that California's governmental-interest test applies to determine choice of law, and that the law applicable in an insurance-coverage dispute like this one is based on the location of the insured risk. *Id.* at 348. Here, the location of the risk is California, where the 69 underlying Bodily Injury Lawsuits have been brought by California plaintiffs, allegedly injured in California workplaces.

Second, on the merits, PIIC cannot meet its heavy burden to eliminate any potential coverage and its duty to defend. Policy exclusions must be clear and are narrowly applied. The California Supreme Court's binding decision in *MacKinnon v. Truck Insurance Exchange*, controls. 31 Cal. 4th 635 (2003). *MacKinnon*'s core holding was that the pollution exclusion only applies to what a layperson would consider "traditional environmental pollution," rather than any claims arising out of the "negligent use or handling of toxic substances…in the normal course of business." *Id.* at 642, 651-52.

Under *MacKinnon*, PIIC cannot establish that the alleged workplace-exposures to silica, metals, or volatile organic compounds (VOCs) in "small shops" and confined indoor workplaces is "traditional environmental pollution." No layperson or policyholder, particularly a product manufacturer like Cambria, would consider silica a traditional environmental pollutant, in the products-liability context of the underlying lawsuits. Silica is not a pollutant under traditional environmental laws, and the mechanism of harm alleged is not exposure to silica, metals, or VOCs through general environmental pollution. The mechanism of harm is direct exposure through the underlying plaintiffs' fabrication of Cambria's quartz products in the ordinary course. This is not pollution. *National Foam, Inc. v. Zurich American Insurance Company*, 768 F. Supp. 1009, 1017-

2

1019 (N.D. Cal. 2025) ("[T]he Allen plaintiffs allege direct exposure to National Foam's products during their ordinary use, which is not pollution."). Cambria's own twenty-five-year experience fabricating its quartz product – with no reported cases of silicosis – demonstrates Cambria is being sued, in substantial part, for alleged harm caused by the negligent fabrication of its quartz products.

PIIC also cannot establish the widespread contamination which *MacKinnon* held to be characteristic of "traditional environmental pollution." In this way, this case is not like PIIC's main case, *Garamendi v. Golden Eagle Insurance Co.*, 127 Cal. App. 4th 480 (2005). *Garamendi* involved "widespread" outdoor releases of silica-containing dust from an industrial sandblasting operation which impacted air quality and "travel[ed] over a large distance," harming "many workers" in a "very large area surrounding the sandblasting operation." *Id.* at 483. This case is far more analogous to *American Zurich Ins. Co. v. James N. Gray Co.*, where the court held the insurer had to defend claims of bodily injuries from "confined releases of dust" in "demolition and construction work" at a Boeing facility, as policyholders would not consider this exposure to be traditional environmental pollution. No. SACV131966AGJPRX, 2014 WL 11430928, *4-6 (C.D. Cal. July 25, 2014).

The underlying Bodily Injury Lawsuits are precisely why product manufacturers like Cambria buy liability insurance and products/completed operations coverage. PIIC's position would eviscerate coverage in a way irreconcilable with the nature of the insurance Cambria bought for its business. PIIC cannot meet its burden to eliminate potential coverage, and Cambria is owed a defense.

### III. PIIC'S OPPOSITION/REPLY INTRODUCTION

Summary judgment should be granted in PIIC's favor in its entirety, as PIIC has met its burden to show that there are no disputed issues of material fact that would preclude summary judgment, and Cambria has failed to offer any evidence to the contrary in opposition.

PIIC has shown that, based on the facts at issue in the Silica Lawsuits, the applicable law of both California and Minnesota would apply the clear and unambiguous language of the Total Pollution Exclusions ("TPEs") in the PIIC Policies to bar coverage. In fact, Cambria's Opposition to PIIC's Motion for Summary Judgment (the "Opposition"), in attempting to distinguish California and Minnesota law, all but concedes that in the event Minnesota law were to apply, the TPE would unequivocally bar coverage for the Silica Lawsuits. In doing so, it fails to cite to a *single* Minnesota case to support its position that the TPE does not apply.

However, this Court need not undertake a choice-of-law analysis, as California and Minnesota law are in accord that the TPEs in the PIIC Policies apply to bar a defense and

3

indemnity obligation to Cambria for the claims at issue in the Silica Lawsuits. Moreover, even in the event this Court were to find that the laws of these states conflict as to application of the TPE, California's choice-of-law test clearly dictates that Minnesota law applies to interpretation and application of the TPE, as the place the PIIC Policies were made and were to have been performed.

## IV.    CAMBRIA'S SUR-REPLY – INTRODUCTION

PIIC collected valuable premiums from Cambria in exchange for PIIC's promise to defend and insure Cambria for its products-liability risks in connection with "STONE CUTTING/POLISHING" and the sale and distribution of its core product: quartz slabs. But now that the very risks PIIC insured have eventuated, PIIC seeks to deprive Cambria of the insurance it bought, through an expansive interpretation of its pollution-exclusion contrary to *MacKinnon*, its traditional-environmental-pollution standard, and the California cases that have applied it. For a product manufacturer like Cambria, PIIC's broad and overreaching interpretation of its pollution exclusion would effectively eviscerate Cambria's products-completed operations coverage and unreasonably limit the scope of PIIC's promised insurance protection (*e.g.*, to the risks of slabs falling and injuring people). In this context, in which Cambria sold solid quartz slabs which were then later fabricated and installed by third-party businesses for their intended end use as countertops, the mechanism of harm at issue "did not arise from 'pollution' in any recognizable sense." *National Foam*, 768 F. Supp. 3d at 1017. The Court should deny PIIC's motion and hold that PIIC has breached its duty to defend Cambria.

## V.    FACTUAL BACKGROUND – PIIC's STATEMENT

### A.    The PIIC Policies

PIIC issued two primary consecutive commercial general liability policies to Cambria: policy nos. PHPG124578, effective November 20, 2000 to November 1, 2001, and PHPK014656, effective November 1, 2001 to November 1, 2002 (the "CGL Policies"). (Joint Statement of Uncontroverted Facts ("JSUF") No. 1.) PIIC also issued two consecutive commercial excess policies to Cambria: policy nos. PHUM106750, effective November 20, 2000 to November 1, 2001, and PHUB006108, effective November 1, 2001, to November 1, 2002 (the "Excess Policies" and, collectively with the CGL Policies, the "PIIC Policies"). (JSUF No. 2.)

Subject to their terms, each of the CGL Policies states that PIIC will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and that PIIC has a "duty to defend [Cambria] against any 'suit' seeking those damages. However, [PIIC] will have no duty to defend [Cambria] against

4

any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (JSUF No. 3.) The CGL Policies limit coverage to "bodily injury" that "occurs during the policy period." (JSUF No. 3.) Each of the CGL Policies also contains a Total Pollution Exclusion which bars coverage for "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (JSUF No. 4.) "Pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled." (JSUF No. 5.)

Each of the Excess Policies similarly limits coverage to "bodily injury" that "[o]ccurs, or is committed during the policy period." (JSUF No. 6.) They each also contain a pollution exclusion which applies to "bodily injury" "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste material or other irritants, contaminants or pollutants." (JSUF No. 7.) The pollution exclusion in the Excess Policies states that PIIC has no obligation:

"(1) To investigate, settle or defend any claim or suit against any insured alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the 'pollution hazard'; or, (2) To pay any damages, judgments, settlements, loss, costs or expenses that may be awarded or incurred by reason of any such claim or suit or any such injury or damage, or in complying with any action authorized by law or relating to such injury or damage." (JSUF No. 7.)

The Excess Policies define "Pollution Hazard" to mean "an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal pollutants, contaminants, irritants or toxic substances, including smoke, vapors, soot, fumes, acids or alkalis, and waste materials consisting of or containing any of the foregoing." (JSUF No. 7.)

At all relevant times, including at the time the PIIC Policies were issued, Cambria was and remains a Minnesota limited liability company with its corporate headquarters in Minnesota. (JSUF No. 8.) Cambria registered to do business in California in 2011. (JSUF No. 9.) The PIIC Policies' Declarations pages each identify Cambria's mailing address as 620 North Main Street, Le Sueur, Minnesota 56058. (JSUF No. 1.) Each of the CGL Policies contains a Locations Schedule listing three premises, all in Minnesota. (JSUF No.1.) Each of the CGL Policies also contains many endorsements with the language "Minnesota Changes" in the title or otherwise referencing

5

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Minnesota. (JSUF No. 1.) The Business Auto Schedule in the CGL Policies identifies three automobiles garaged in Minnesota. (JSUF No. 1.)

### B. The Silica Lawsuits

Cambria's First Amended Complaint ("FAC") in this action identifies sixty-nine Silica Lawsuits. (JSUF No. 10.)[1] The Silica Lawsuits generally allege that Cambria and the other defendants are the "manufacturers, suppliers, distributors, importers, brokers, and/or contractors of industrial stone products." (JSUF No. 11.) The Silica Lawsuits generally allege "[c]utting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases." (JSUF No. 12.) The underlying plaintiffs allege that they worked fabricating Cambria's and the other defendants' industrial stone products, were exposed to or inhaled silica dust, and were subsequently diagnosed with silicosis. (JSUF No. 13.) The Silica Lawsuits allege that fabrication workers who cut, grind, drill, chip, edge, and/or polish artificial stone products are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders. (JSUF No. 14.) The Silica Lawsuits further contend that fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethyl benzene, and toluene. (JSUF No. 15.) Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis. (JSUF No. 15.) Workers fabricating artificial stone products often develop progressive massive fibrosis due to high concentrations of crystalline silica and other toxic constituents of artificial stone. (JSUF No. 15.) As alleged in a number of the Silica Lawsuits, a countertop fabricator typically fabricates about 40 to 50 stone slabs per week -- about 2,000 to 2,500 stone slabs per year -- every year that the underlying plaintiffs worked as a stone countertop fabricator. (JSUF No. 16.)

The Silica Lawsuits generally allege causes of action for Negligence, Failure to Warn, Products Liability and Fraudulent Concealment, among other things. (JSUF No. 17.) Many, if not most, of the Silica Lawsuits allege Cambria is a Minnesota limited liability company and that it

---

[1] Cambria recently amended its complaint to name only those Silica Lawsuits that allege exposure to and injury from Cambria's products during the periods of the PIIC Policies. The FAC does not involve Silica Lawsuits that allege exposure and injury that occurred after expiration of the PIIC Policies. Moreover, the FAC does not name any Silica Lawsuits that have been filed against Cambria outside of California, and Cambria has withdrawn its tender of all Silica Lawsuits not filed in California as of the date of the filing of the FAC.

PHILADELLPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

manufactured products in Minnesota.  (JSUF No. 18.)  They further contend that Cambria was founded in 2000 in Le Sueur, Minnesota and allegedly began operating in California on January 12, 2011. (JSUF No. 19.)

## VI.   FACTUAL BACKGROUND – CAMBRIA'S STATEMENT

### A.   Cambria's Business.

Cambria is a private family-owned business. (Additional Statement of Uncontroverted Facts ("ASUF") ¶ 1.) Cambria manufactures quartz slabs, primarily sized 10 feet by 5 feet, and common end uses for Cambria's finished products include countertops, backsplashes, and tile in kitchens, bathrooms, and other residential spaces. (ASUF ¶ 2.)

After the raw, quartz stone slab is manufactured by Cambria, it is shipped to distributors and fabricators around the country. (ASUF ¶ 3.) In parts of the United States, Cambria fabricates (*i.e.*, cuts) the quartz slabs at a Cambria-owned fabrication facility. (ASUF ¶ 4.) But at all relevant times for this case, Cambria sold solid, un-cut slabs, to be fabricated by others for their end use as a countertop. (ASUF ¶ 5.) All of the plaintiffs in the underlying lawsuits worked for third-party fabrication shops. (ASUF  ¶ 6.) None worked for Cambria. (ASUF ¶ 7.)

### B.   PIIC's Insurance.

PIIC sold Cambria two primary liability insurance policies for the periods of 11/20/00 to 11/1/01 and 11/01/01 to 11/01/02 (the "Primary Policies"). (ASUF ¶ 9.) Each Primary Policy included a "Products/Completed Operations Aggregate Limit" of $1,000,000 and a "General Aggregate Limit (Other Than Products – Completed operations)" of $1,000,000. (ASUF ¶ 10.) The Primary Policies' "Commercial General Liability Coverage Part Supplemental Schedule," identifies "STONE CUTTING/POLISHING," indicating that the risks associated with stone cutting were used by PIIC to calculate the cost of Cambria's insurance, including for "Prem./Ops." (Premises/Operations) and, separately, "Prod. / Comp. Ops." (Products/Completed Operations):

| | | | Rates | | Advance Premiums | |
| | | | Prem./ Ops. | Prod./ Comp. Ops. | Prem./ Ops. | Prod./ Comp. Ops. |
| Classifications | Code No. | Premium Basis | | | | |
| MN   Prems. No. 001 STONE CUTTING/POLISHING | 59482 | 10000000 GROSS SALES | ▮ | ▮ | ▮ | ▮ |

(ASUF ¶ 11.)

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Under PIIC's "COVERAGE A BODILY INJURY," PIIC promised:

> We [PIIC] will pay those sums that the insured [Cambria] becomes legally obligated to pay as damages because of "bodily injury"…to which this insurance applies.

(ASUF ¶ 12.) PIIC also undertook a "duty to defend [Cambria] against any 'suit' seeking those damages." (ASUF ¶ 13.) "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (ASUF ¶ 14.)

The Primary Policies further state that PIIC's insurance applies to bodily injury "only if: (1) The 'bodily injury'…is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) The 'bodily injury'…occurs during the policy period." (ASUF ¶ 15.) "[O]ccurrence" "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (ASUF ¶ 16.) And the "coverage territory" under PIIC's Policies "means…The United States of America." (ASUF ¶ 17.)

PIIC's inclusion of a $1,000,000 "Products/Completed Operations" limit[2] makes clear that PIIC agreed to insure Cambria for its products-liability risks. The Primary Policies state that "[t]he Products-Completed Operations Aggregate Limit is the most [PIIC] will pay under Coverage A for damages because of 'bodily injury'…included in the 'products-completed operations hazard." (ASUF ¶ 18.) "Products-complete operations hazard" means "*all 'bodily injury'…occurring away from premises you own* or rent and *arising of 'your product.'*" (ASUF ¶ 19.) And "your product" "means: a. *Any goods or products…manufactured, sold*, handled, *distributed*…by: (1) *You…*," including "[t]he *providing of or failure to provide warnings or instructions*." (ASUF ¶ 20.)

The Total Pollution Exclusion in PIIC's Primary Policies states that PIIC's insurance "does not apply to…'Bodily injury'…which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." (Joint Statement of Uncontroverted Facts (hereinafter "JSUF") ¶ 21.) "Pollutants" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (JSUF ¶ 22.) The Policies do not include a silica exclusion.

---

[2] PIIC also sold Cambria excess insurance, including $10 million in "Products Completed Operations Aggregate" limits. (ASUF ¶¶ 23-24.) Cambria focuses on the Primary Policies because PIIC owes Cambria a duty to defend under those Policies in the first instance. The same pollution-exclusion arguments apply to PIIC's Excess Policies.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

### C.    The Bodily-Injury Lawsuits.

Beginning in January 2020, Cambria was sued by non-Cambria workers alleging bodily injuries from the fabrication and installation of Cambria's quartz products. (ASUF ¶ 26.) When this case was filed in March 2024, there were 32 underlying lawsuits. (ASUF ¶ 27) Now there are more than 210 California suits. (ASUF ¶ 28.) Sixty-nine cases are at issue here, all of which are pending in the counties of Los Angeles, Orange, and San Francisco (the "Bodily Injury Lawsuits"). (ASUF ¶¶ 29-30.) Each lawsuit names 50 or more stone manufactures, suppliers, and distributors. (ASUF ¶ 31.) All of the cases include claims for Negligence, Products Liability – Failure to Warn, Products Liability – Design Defect, and Breach of Implied Warranties. (ASUF ¶ 44.)

The Bodily Injury Lawsuits are not identical and have evolved over time. (ASUF ¶ 32.) For purposes of this motion, however, all of the underlying Bodily Injury Lawsuits have core, common allegations that trigger PIIC's duty to defend.

The *first* common allegation is that the underlying plaintiffs "fabricated and/or installed Defendants' artificial stone and natural stone products to become countertops in kitchens and bathrooms." (ASUF ¶¶ 33-34.)

The *second* common allegation is that bodily injuries were suffered during PIIC's policy periods, when the plaintiff was exposed to silica, metals, or VOCs[3] in working directly with Cambria's products. (ASUF ¶¶ 35, 38.)

The *third* common allegation is that the "bodily injuries" suffered by the plaintiffs resulted from an accident, consistent with the definition of "occurrence." (ASUF ¶¶ 40-41.) The Bodily Injury Lawsuits allege that the defendants negligently produced and distributed their stone products, to which the plaintiffs were exposed in working as fabricators and installers. (*Id.*)

The *fourth* common allegation is that the underlying plaintiffs performed their fabrication work in isolated and confined indoor spaces, such as in "small shops," and their installation work mostly in residential bathrooms and kitchens. (ASUF ¶¶ 42-43.) None of the underlying Bodily Injury Lawsuits allege widespread dissemination of silica, metals, or VOCs. (AUSF ¶ 46.)

*Finally*, the underlying failure-to-warn claims include allegations that Cambria's products were defective, because they "contained warnings that were inadequate to apprise Plaintiff of their

---

[3] The complaints in the Bodily Injury Lawsuits have evolved to include allegations of exposure to volatile organic compounds (VOCs) in working with Cambria's products. (ASUF ¶¶ 36-37, 39.) For example, the *Aguilera Zurita* lawsuit alleges that "[f]abricating artificial stone products also produces volatile organic compounds (VOCs)," which "cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis." (*Id.*)

9

toxic hazards and their serious effects upon the human body," with specific reliance on alleged deficiencies in Cambria's January 5, 2001 Material Safety Data Sheet and its section on "Precautions for Safe Handling." (ASUF ¶ 45.)

### D.     PIIC's Denials of Coverage.

PIIC has denied coverage for all of the Bodily Injury Lawsuits based on the Total Pollution Exclusion. (ASUF ¶¶ 47-48.) On December 8, 2023, Cambria's counsel challenged PIIC's reliance on the "Total Pollution Exclusion" as contrary to California law, arguing that the California Supreme Court's decision in *MacKinnon* governs and highlighting *MacKinnon*'s core holding that the exclusion only applies to what a layperson would consider "traditional environmental pollution." (ASUF ¶ 50.) Cambria discussed other supportive California cases, and a few out-of-jurisdiction cases holding that the Total Pollution Exclusion does not apply to indoor exposures. *(Id.)* PIIC's California counsel contested Cambria's position based on California law and argued that cases from outside of California were "irrelevant to the application of the well-established [California] authority cited herein." (ASUF ¶ 51.)

## VII.     LEGAL STANDARDS

### A.     Summary Judgment Standard

Pursuant to FRCP Rule 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP Rule 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-78 (1986) (emphasis added).

### B.     Pertinent Principles of Contract Interpretation – PIIC's Statement

Interpretation of an insurance policy is a question of law for the court based on settled rules of contract interpretation. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995). Pursuant to California's rules of contract interpretation, insurance contracts, like other contracts, are to be governed according to the mutual intention of the parties at the time of contracting. *AIU Ins. Co. v. Superior Court (FMC Corp.),* 51 Cal. 3d 807, 821 (1990). Where possible, such intent is inferred "solely from the written provisions of the contract," according to the "clear and explicit" meaning of the policy language, interpreted in its "ordinary and popular sense." *Id*. at 822. Where the language of an insurance policy is clear and explicit, it governs. *Minkler v. Safeco Ins. Co. of America,* 49 Cal. 4th 315, 321 (2010). A contract must be construed as a whole and interpreted in context so as to give effect to each provision, rather than interpreting contractual language in

10

isolation. *SDC/Pullman Partners v. Tolo Inc.,* 60 Cal. App. 4th 37, 46 (1997) (citing Civil Code § 1641); *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473-474 (1998); *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 753 (1993).

### C.    Duty to Defend and Indemnify Standards – PIIC's Statement

Under California law, the determination of whether a duty to defend is owed by an insurer "is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (quoting *Gray v. Zurich Ins. Co*., 65 Cal. 2d 263 (1966)).  Where the complaint potentially seeks damages covered by the policy, the insurer owes a duty to defend. *Gray*, 65 Cal. 2d at 275.[4]  Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.  *Montrose*, 6 Cal. 4th at 295.  In addition, an insurer may deny coverage based on extrinsic evidence where "such evidence presents undisputed facts which conclusively eliminate a potential for liability." *Id.*

"The insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved.  It arises only after liability is established." *Adir Int'l, LLC v. Starr Indem. & Liability Co.,* 2019 WL 4462613. *4 (C.D. Cal. Sep. 10, 2019) (quoting *Buss v. Superior Ct.*, 16 Cal. 4th 35, 46 (1997). "It is ... well settled that because the duty to defend is broader than the duty to indemnify,' a determination that 'there is no duty to defend automatically means there is no duty to indemnify.'" *Id*. (citing and quoting *Certain Underwriters at Lloyd's of London v. Superior Ct.,* 24 Cal. 4th 945 (2001).

### D.    Duty to Defend Standards – Cambria's Statement

Cambria generally agrees with PIIC regarding the standards governing the duty to defend. PIIC's statement, however, fails to acknowledge its heavy burden to eliminate that duty.

Once the insured makes a *prima facie* case showing that its claim is "potentially" or even "possibly" covered, "an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered." *Reese v. Travelers Ins. Co*., 129 F.3d 1056, 1060 (9th Cir. 1997). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. v. Superior Ct.*, 861 P.2d 1153, 1160 (Cal. 1993). When an insurer relies on a policy exclusion avoid its duty to defend, the exclusion is construed narrowly, *Dua v. Stillwater Ins*. 91 Cal. App. 5th 127, 136 (2023), and it is

---

[4] The Supreme Court of Minnesota has held that the determination of the duty to defend is limited to the allegations in the complaint, unless the insurer is aware of facts indicating there may be a covered claim. *Garvis v. Employers Mut. Cas. Co.* 497 N.W.2d 254, 258 (Minn. 1993).

11

the insurer's burden to produce "conclusive evidence proving that the exclusion applies *in all possible worlds*." *Itzhaki v. U.S. Liab. Ins.*, 536 F. Supp. 3d 651, 655 (C.D. Cal. 2021) (emphasis original).

## VIII.  PIIC'S ARGUMENT

### A.    The Pollution Exclusion Bars Coverage Under Potentially Applicable Law

The clear and unambiguous language of the pollution exclusions in the PIIC Policies bars coverage for the Silica Lawsuits under both California and Minnesota law.  As there is no conflict between the substantive laws of California and Minnesota on this issue, this Court, as the forum court, should apply the law of the state in which this Court sits—that is, California.  In the event this Court were to find that the laws of the states of California and Minnesota conflict on the interpretation of the pollution exclusion, this Court should apply the law of the state of Minnesota based on California's conflict of laws principles.  *Axis Reinsurance Co. v. Telekenex, Inc.*, 913 F. Supp. 2d 793, 800 (N.D. Cal. 2012) (citations omitted); *see also Paulsen v. CNF Inc.*, 559 F. 3d 1061, 1080–81 (9th Cir. 2009); *Gitano Grp., Inc. v. Kemper Grp.*, 26 Cal. App. 4th 49, 56–57, (1994), *as modified* (July 21, 1994).

#### 1.    *Under California Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits*

The pollution exclusions in the PIIC Policies clearly apply under California law to bar a duty to defend and indemnify Cambria for the Silica Lawsuits.  In fact, a California Court of Appeal applied a Total Pollution Exclusion identical to that at issue in the CGL Policies to bar a duty to defend and indemnify under facts strikingly similar to those at issue in the present action. In *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480 (2005), multiple plaintiffs alleged that they "worked in, or were otherwise exposed to, silica at and through their employment" over the course of many years and that they suffered serious and permanent bodily injuries as a result of their exposure to silica and silica dust.  *Id.* at 483.  The plaintiffs in *Garamendi* alleged that they engaged in sandblasting that created silica-containing dust that was released from the operations into the surrounding area.  *Id.*  The complaints named as defendants, among others, those who were alleged to have designed, tested, evaluated, and manufactured protective gear and sandblasting-related products.  *Id.*  The complaints also alleged that the sellers of silica-containing products failed to warn of foreseeable health risks.  *Id.* at 483.  In *Garamendi*, the court observed that the exposure to silica was "an incidental by-product" of the sandblasting operations, and rejected the policyholder's contention that claims based on product defects or failure to warn could not fall within the pollution exclusion.  *Id.* at 486.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

PIIC anticipates that Cambria will contend that the fact that the PIIC Policies do not contain exclusions that specifically bar coverage for silica-related injuries, like some policies issued later in time do, means the pollution exclusions do not apply to injuries resulting from exposure to silica dust. Cambria is misguided. In fact, the court in *Garamendi* rejected this argument, holding that the Total Pollution Exclusion applied irrespective of whether the policy at issue contained an exclusion that specifically identified injuries resulting from exposure to silica dust. *Id.* at 487. It therefore concluded that the Total Pollution Exclusion barred both a duty to defend and indemnify.

In reaching this conclusion, it distinguished the holding in *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635 (2003), in which the Supreme Court of California declined to apply a pollution exclusion to bar coverage when a tenant died after her apartment was sprayed with pesticides to eradicate yellowjackets.[5] The *MacKinnon* court concluded that the normal, though negligent, residential application of pesticides would not be something commonly thought of as pollution. *Id.* at 654. In so doing, it found that the pollution exclusion before it did not plainly and clearly exclude ordinary acts of negligence involving toxic chemicals such as pesticides. *Id.* at 639. The *Garamendi* court distinguished *MacKinnon* by stating that, unlike the residential use of a pesticides for the purposes of killing insects, the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations was "most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi,* 127 Cal. App. 4th at 486. The *Garamendi* court even distinguished the pollution exclusion at issue in *MacKinnon* from the Total Pollution Exclusion such as the one at issue before it and here, recognizing that the language of the Total Pollution Exclusion with its "but for" test is far broader and shifts the focus from actions taken to injuries that would not have occurred "but for" the discharge of pollutants.[6] *Id.* at 488; *see also, Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.,* 441 F. Supp. 3d 1016 (S.D. Cal. 2020) (distinguishing between the Total Pollution Exclusion and one similar to that at issue in *MacKinnon* on the grounds that the "but for" language in the Total Pollution Exclusion should be read more broadly).

---

[5] The pollution exclusion at issue in *MacKinnon* provided that the insurance did not apply to bodily injury arising out of the actual, alleged or threatened discharge or dispersal of pollutants "at or from any premises, site or location" owned, occupied by, rented or loaned to the insured, or used by or for the insured or others for handling or storage of waste, or on which the insured or any contractor on his behalf performed certain operations with pollutants. *Garamendi,* 127 Cal. App. 4th at 487.

[6] The pollution exclusions contained in the Excess Policies, though not identical to the Total Pollution Exclusions, similarly contain "but for" language that has been interpreted to be even broader than the language of the pollution exclusion at issue in *MacKinnon.*

13

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Like *Garamendi* and unlike *MacKinnon,* here the Silica Lawsuits allege long-term workplace exposures to silica dust and other toxins affecting numerous persons that clearly qualify as "pollutants" under the PIIC Policies.  The Silica Lawsuits allege that the plaintiffs were exposed to and inhaled large amounts of respirable crystalline silica dust as a regular part of their duties "[c]utting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products," typically fabricating 40 stones a week, or 2000 stones per year.  The plaintiffs in the Silica Lawsuits were not exposed to silica and other toxins as a result of an ordinary act of negligence, such as the spraying of pesticides, but were allegedly exposed as part of their routine workplace responsibilities over a lengthy period of time.  *See Villa Los Alamos Homeowners Ass'n. v. State Farm*, 198 Cal. App. 4th 522, 539 (2011) (applying pollution exclusion to release of asbestos fibers from popcorn ceilings being scraped at a condo complex and finding that a contractor's work scraping ceilings was not an ordinary act of negligence).

Cambria has pled that it believes *American Zurich Ins. Co. v. James N. Gray Co.*, 2014 WL 11430928 (C.D. Cal. July 25, 2014), an unpublished district court case, supports its position that the pollution exclusions in the PIIC Policies do not apply to bar coverage.  Cambria's reliance upon *James N. Gray* is misplaced.  *James N. Gray* is a contribution case between two insurers in which the court denied summary judgment after finding that a pollution exclusion did not unequivocally bar a duty to defend.  In that case, a contractor worked on a demolition and construction project at a Boeing facility.  *Id.* at *1.  The underlying plaintiffs, two Boeing employees and their families, alleged that the contractor was negligent and breached a duty of care by doing its demolition work negligently and causing toxins and silica dust to enter the air at the site where the plaintiffs worked.  *Id.* at *1.  The court concluded that a reasonable insured "wouldn't necessarily think of the 'release of toxins, including silica and dust' in the demolition business as traditional pollution."  *Id.* at *4.  However, the court recognized that, in some contexts, it is possible that the release of such toxins and dust in the demolition business could be considered traditional pollution, and cited to *Garamendi* as such a case.  *Id.*  It recognized that *Garamendi* involved the "widespread dissemination of silica dust" as an incidental by-product of sandblasting operations that "subject[ed] many workers in the area [47 in total] to an unreasonable risk of harm" and that such widespread dissemination and effect was commonly thought of as pollution.  *Id.* at *5.  The same reasoning applies here to the Silica Lawsuits.  The fabrication of the stone countertops, like sandblasting, involves as an incidental by-product the widespread dissemination of silica dust affecting the sixty-nine plaintiffs who have sued Cambria and whose suits against Cambria are at issue in this action.  *James N. Gray* is therefore clearly distinguishable.

14

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Most recently, Judge Monica Ramirez Almadani in *Hanover Am. Ins. Co. v. Francini, Inc.*, No. 2:23-CV-10047-MRA-MAA, 2025 WL 1090925, at \*4 (C.D. Cal. Mar. 27, 2025) addressed the application of silica exclusions to some of the very same underlying Silica Lawsuits as are at issue here.[7]    In granting Hanover's motion for judgment on the pleadings, Judge Almadani distinguished *James N. Gray* and concluded that the primary injuries in the Silica Lawsuits in the cases at issue before her are silicosis (caused by silica inhalation) and resulting complications from that lung disease, and that silica was the main chemical contributing to the underlying plaintiffs' injuries.  *Id.* at \*4.  She found that the silica lawsuits are focused on the dangers of exposure to crystalline silica that working with artificial stone presents; they include long histories on these silica-specific risks.  *Id.*   That is exactly the case here, where in some of the very same Silica Lawsuits against Cambria, the underlying plaintiffs have long histories of exposure to silica dust and other toxins inherent in the trade of fabricating stone slabs, and not simply general construction or demolition work that resulted in claims by two employees alleging general negligence against a contractor.

Under the clear authority of *Garamendi*, California law dictates that the pollution exclusions in the PIIC Policies precludes defense and indemnity for the Silica Lawsuits.

### 2.    Under Minnesota Law, the Pollution Exclusions in the PIIC Policies Bar Coverage for the Silica Lawsuits

Minnesota courts have taken a "non-technical, plain meaning approach" to interpreting pollution exclusions, rejecting the position that the exclusion should be limited to "situations involving traditional environmental pollution."  *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 637 (Minn. 2013) (finding that carbon monoxide released from a negligently installed boiler was a "pollutant" subject to the CGL policy's absolute pollution exclusion; policy defined "pollutant" to include "any gaseous pollutant, irritant, or contaminant," and the federal and state governments regulated carbon monoxide as a pollutant).  *See also, Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779 (Minn. App. 1999) (finding that lead paint in a home is a "pollutant" within a CGL policy's absolute pollution exclusion; policy defined "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste"); *Board of Regents of the Univ. of Minnesota v. Royal Ins. Co. of America*, 517 N.W.2d 888 (Minn. 1994) (asbestos fibers qualify as an "irritant" where policy barred coverage for damages caused by  the "discharge, dispersal, release or escape

---

[7] Hanover also alleged that the Total Pollution Exclusion barred a defense and indemnity of the Silica Lawsuits.  In light of the judge's broad ruling applying the silica exclusions, she found it unnecessary to address the application of the Total Pollution Exclusion.

15

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

of … irritants."; asbestos fibers are a health hazard because of their irritant effects on the human body).

Since *Wolters*, Minnesota courts have applied this rule consistently in circumstances where the release of a harmful chemical causes bodily injury to a plaintiff.  *See Travelers Prop. Cas. Co. v. Klick,* 867 F.3d 989 (8th Cir. 2017) (applying *Wolters* to bar coverage for injuries suffered as a result of release of carbon monoxide into the engine compartment where claimant was located and injured); *see also Brouse v. Nationwide Agribusiness Ins. Co.,* No. A-14-1729, 2015 WL 4507996 (Minn. App. July 27, 2015) (applying the *Wolters* rule to find that injuries caused by hydrogen-sulfide emissions, particulate matter, flies and other insects emanating from a dairy operation were "pollutants" within scope of pollution exclusion).  Significantly, Minnesota courts have expressly applied pollution exclusions to toxic workplace exposures. *Sylvester Bros. Dev. Co. v. Great Cent. Ins. Co.*, 480 N.W.2d 368, 374 (Minn. Ct. App. 1992) (no coverage where pollution involved repeated exposure to conditions caused by workplace operations); *see also Continental Cas. Co. v. Advance Terrazzo & Tile Co.*, 462 F.3d 1002 (8th Cir. 2006) (applying Minnesota law to hold that the pollution exclusion barred coverage for a workplace exposure to carbon monoxide caused by emissions from terrazzo floor grinders).

The plaintiffs in the Silica Lawsuits allege they inhaled silica dust that was released and dispersed into the surrounding environment in the course of plaintiffs' work fabricating industrial stone slabs.  There can be no question that silica dust and other alleged toxins are "irritants" or "contaminants" because, like carbon monoxide and asbestos, they present "a health hazard because of [] irritant effects on the human body."  *Wolters*, 831 N.W.2d at 637 (*quoting Hanson*, 517 N.W.2d at 892).  Consequently, the pollution exclusions in the PIIC Policies would clearly apply to bar a duty to defend and indemnify under Minnesota law.

B.      **If this Court Finds a Conflict Between the Laws of California and Minnesota Concerning Interpretation of the Pollution Exclusion, Minnesota Law Governs**

Because coverage under the PIIC Policies is clearly barred by the pollution exclusions under both California and Minnesota law, there is no conflict of laws that would require this Court to conduct a choice-of-law analysis.  However, in the event this Court were to conclude that there is a conflict and that the pollution exclusions do not bar coverage under California law, this Court should apply the law of Minnesota to application of the pollution exclusions under the PIIC Policies.  "A federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).  Under California law, choice of law evaluations for contractual disputes are governed by California Civ.

16

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Code section 1646, which provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1448-49 (2007) ("Civil Code section 1646, by its express terms, prescribes a choice-of-law rule concerning the interpretation of contracts"). In applying section 1646, the first step is to determine whether the contract indicated a place of performance. *Id.* at 1449. "The parties' intention as to the place of performance sometimes can be gleaned from the nature of the contract and the surrounding circumstances, even if the contract does not expressly specify a place of performance." *Id.* at 1450.

The PIIC Policies do not expressly state a "place of performance." However, such a designation can be gleaned from the language of the policy provisions themselves. *Id.* at 1443. The PIIC Policies: 1) were issued to Cambria at Cambria's headquarters at its Minnesota address; 2) identify only three locations in the premises schedule (all in Minnesota); 3) contain numerous endorsements with titles including the words "Minnesota Changes;" and 4) contain auto insurance identifying automobiles garaged in Minnesota and providing coverage tailored to Minnesota state law. In contrast, there is no reference to California in the PIIC Policies and for good reason: Cambria did not do business in California until many years after the PIIC Policies expired. There is no indication that the parties to the PIIC Policies even contemplated the possibility (much less intended) that the PIIC Policies would be governed by California law.

In *Frontier*, the court applied California law to a case pending in California, concluding the policies indicated the place of performance of the contract was California. However, there are two critical distinctions between this case and *Frontier*. First, the court in *Frontier* noted that the policy contained direct references to California and illustrated that the parties contemplated risks in California, including that the policies provided coverage for claims arising from oil and gas operations at a California drill site identified on the policy, identified the City of Los Angeles as an additional insured, and the City of Beverly Hills in another endorsement. *Id.* at 1444. The court's conclusion that the parties intended the contract to be performed in California flowed directly from these facts. *Id.* at 1461-62 ("These three endorsements clearly demonstrate that the parties intended the policy to provide coverage for the insureds' oil and gas operations in Beverly Hills. Accordingly, we conclude that the parties anticipated that a suit arising from those operations in Beverly Hills could be prosecuted in California and that RLI would be obligated to provide a defense in California if the claims were potentially covered under the policy.").

17

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

In contrast, the PIIC Policies contain no such provisions indicating the parties anticipated the contracts would be performed in California, and courts have routinely distinguished *Frontier* for this reason. *Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGPJWX, 2018 WL 3817859, at \*4–6 (C.D. Cal. Mar. 27, 2018) ("That G&E can assert where the contract *could* have been and even *was* performed is irrelevant, as courts in this District have specifically rejected this approach and determined that contracts, like this one, that do not contain clear geographical references do not therefore demonstrate the intended place of performance") (citing *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV 13-00545-JVS (JPRx), 2014 WL 12561603, at \*5 (C.D. Cal. Mar. 24, 2014) ("[T]he Court is persuaded that holding that a contract is to be performed anywhere it *could* be performed would eliminate the second prong of the section 1646 test, insofar as virtually every contract would thus indicate a place of performance.") (emphasis in original); *Ameron Int'l Corp. v. American Home Assurance Co.*, No. CV 11-1601 CAS (AGRx), 2011 WL 2261195, at \*4–5 (C.D. Cal. June 6, 2011) ("[D]efendant's argument that the parties indicated as the place of performance any location where there is evidence it could conceivably be performed goes too far. Not only is defendant's position contrary to the plain language of the statute ... it would mean that there would be almost no situation in which a contract does not indicate a place of performance.").

Second, even if there was no indicated place of performance, the PIIC Policies would be governed by the place the contracts were "made" under Section 1646, which would also be Minnesota. "Under California law, a contract is made in the place of acceptance." *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV1300545JVSJPRX, 2014 WL 12561603, at \*4–6 (C.D. Cal. Mar. 24, 2014) (citing *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 222 (2005)). The PIIC Policies should be found to have been made in Minnesota because they were issued and delivered to Cambria at its Minnesota address. *See Financial Indem. Co. v. Messick*, 606 F. Supp. 3d 996, 1000 (E.D. Cal. 2022) ("the FIC Policy lists the insurance broker and the named insureds with addresses in Marysville, California . . . The court therefore finds the FIC Policy was made in California, and California law applies") (citations omitted).

Some California courts have applied a "governmental interest" approach (instead of the section 1646 approach) to choice of law disputes involving contracts, including to certain insurance coverage disputes. *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637 (1993) (in assessing whether policy coverage should extend to punitive damages, governmental interest test applied). However, the court in *Frontier* noted that the "governmental interest" approach, which looks to the interests of the litigants and the involved states, "does not

18

supplant the legislative command of section 1646." *Id.*; *see also Messick*, 606 F. Supp. 3d at 999. Moreover, the court in *Frontier* specifically distinguished *Stonewall* because the choice of law issue there "concerned the existence of a right of indemnity for punitive damages and did not involve an issue of contract interpretation." *Frontier*, 153 Cal. App. 4th at 1460 ("Civil Code section 1646 is the choice-of-law rule that determines the law governing the *interpretation* of a contract.") (emphasis in original). Because what is at issue here is the interpretation of a contract, section 1646 controls.

Regardless, even under a governmental interest approach, Minnesota law should still apply. In *Stonewall*, the court observed that there are numerous relevant contacts in determining which state's law applies to a coverage dispute under the governmental interest approach, including the place of contracting, negotiation of the contract, and performance, the location of the subject matter of the contract, and the domicile, residence, nationality, and place of incorporation and place of business of the parties. 14 Cal. App. 4th at 646. The court found that where the parties contemplated that the policy would insure risks located in several states and the loss arose out of a product the insured manufactured in California and which was sold in California too, the policy should be viewed as "separate policies which insure separate risks located in any number of states where the corporation does business." *Id*. at 646-47.

Here, when the PIIC Policies were issued (and throughout their terms), Cambria had not even begun to do business in California. In *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, No. SACV1300545JVSJPRX, 2014 WL 12561603, at *4–6 (C.D. Cal. Mar. 24, 2014), the court distinguished *Stonewall* for this reason, noting that the policies had no endorsements for different states and the insured had no manufacturing facilities in California. Therefore, the court found that Nebraska law governed an insurance dispute under a pollution exclusion under a Nebraska insurance policy applied to a loss in California. *Id.*; *see also Columbia Cas. Co. v. Gordon Trucking, Inc.*, 758 F. Supp. 2d 909, 920–22 (N.D. Cal. 2010) (applying Washington law to California auto accident in part because the policy at issue contained Washington coverage forms and policy conditions) (citations omitted); *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079 (N.D. Cal. 2007) ("the record does not show that the parties anticipated that Georgia law would apply to risks insured in Georgia, nor does it reflect any underwriting analysis comparable to that evaluated in *Stonewall*").

In sum, if the Court finds that California and Minnesota law differ on the pollution exclusion's scope and irrespective of the choice-of-law test applied, Minnesota law should govern the interpretation of the PIIC policies.

IX.    **CAMBRIA'S ARGUMENT**

A.    **The Bodily-Injury Lawsuits Are Covered Under PIIC's Insuring Agreement.**

There is no dispute that the Bodily Injury Lawsuits allege "bodily injury" caused by an "occurrence" taking place during the Primary Policies' periods.

*First*, it is undisputed that the plaintiffs allege bodily injuries caused by exposure to silica, metals, and/or VOCs in their workplaces generated while fabricating and installing Cambria's products. (PIIC's JSUF ¶ 13; ASUF ¶¶ 35-36.)

*Second*, there is no dispute that these alleged injuries were the result of an "occurrence," which is defined as an "accident" in the Policies. (JSUF ¶ 17; ASUF ¶¶ 40-41.) *National Foam*, 768 F. Supp. 3d at 1018 ("[T]he carriers' argument fails because the Allen plaintiffs also allege an accident. The plaintiffs explicitly bring a claim for negligence.").

Third, it is undisputed that the Bodily Injury Lawsuits allege bodily injuries within PIIC's policy periods. (ASUF ¶ 35; Stipulation, ECF 57 at 2.) Accordingly, PIIC's Insuring Agreements are satisfied.

B.    **California Law Applies to the Pollution Exclusion.**

Contrary to PIIC's inverted approach, addressing the merits of the Total Pollution Exclusion and then choice of law, the Court must first conduct a choice-of-law analysis. *UMG Recordings, Inc. v. Am. Home Ass. Co.*, No. CV 04-04756 DDP (RNBx), 2004 WL 7340621, *2 (C.D. Cal. Nov. 5, 2004) ("Before the Court addresses the merits…it must determine which state's law governs the policies.").

1.    ***Pep Boys Is the Most Recent, On-Point Authority From the California Appellate Courts.***

Sitting in diversity, the Court applies California's state's choice-of-law rules. *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). But the threshold question is which California choice-of-law test applies. While PIIC asks the Court to apply California Civil Code § 1646, the Court should instead apply California's governmental-interest test, consistent with the Court of Appeals' decision in *Pep Boys*, 98 Cal. App. 5th at 346.

This is not the first time the Court has been asked to address the applicable law. While the Court made clear in denying PIIC's transfer motion that it was not deciding the state law applicable to PIIC's pollution-exclusion, the Court concluded that its familiarity with California law favored retaining the case, referring to *Pep Boys*. (Order, ECF 33 at 12-13.)

In *Pep Boys*, the insured sold automative products around the country, and more than 500 Californians filed claims alleging harm from asbestos exposure. 98 Cal. App. 5th at 332. The Court

20

recognized "uncertainty regarding the proper choice-of-law analysis for interpreting contracts like insurance policies." *Id.* at 345. While the California Supreme Court recognized in 2019 that "[i]n California, general choice-of-law rules have been formulated by courts through judicial decisions rendered under the common law, rather than by the legislature through statutory enactments," *Chen v. L.A. Truck Ctrs.*, 444 P.3d 727, 730 (Cal. 2019), the insurer argued for application of California Civil Code § 1646, a statute enacted in 1872.

Considering the argument, *Pep Boys* recognized that the California Supreme Court "ha[d] not cited [§ 1646] after it adopted the governmental-interest approach summarized in *Chen*." 98 Cal. App. 5th at 346. *Pep Boys* also addressed the very decision relied on by PIIC—*Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 (2007)—and concluded that *Frontier Oil*'s entire discussion "may well be dicta," because *Frontier Oil* never examined the other state's law that potentially applied, meaning the court never had to decide whether the two tests would have led to different outcomes. *Id.* at 347. *Pep Boys* further emphasized that the "last California Supreme Court case to cite § 1646" was from 1956. *Id.* at 346. *Pep Boys* concluded that "[t]he analysis that section 1646 calls for would likely prove unworkable in practice since Pep Boys operated stores nationwide" and, thus, "[i]t seems likely, then that finding a practical solution to the choice of law question would likely require us to apply the governmental interest test after all." *Id.* at 348.

*Pep Boys* is the most recent and relevant appellate decision addressing the applicable choice-of-law test in this context. The Court should follow *Pep Boys* and apply the governmental-interest test.

### 2. *Under the Governmental-Interest Test, California Law Applies.*

California's governmental-interest test has three parts. "*First*, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different." *Chen*, 444 P.3d at 730.

California law on the Total Pollution Exclusion differs from Minnesota law. In California, the pollution exclusion is construed based on the insurance industry's recognition that the exclusion was intended to "exclude traditional environmental pollution rather than all injuries from toxic substances." *MacKinnon*, 73 P.3d at 1210. Thus, California courts "[l]imit[] the scope of the pollution exclusion to injuries arising from events commonly thought of as pollution, *i.e.*, environmental pollution." *Id.* at 1216.

Minnesota law does not follow *MacKinnon*. *Cont'l Cas. Co. v. Advance Terrazzo & Tile Co.*, No. CIV. 03-5446MJDJSM, 2005 WL 1923661, *5 (D. Minn. Aug. 11, 2005) ("[T]he Minnesota Supreme Court's decision in [*Bd. of Regents v. Royal Ins. Co.*, 517 N.W.2d 888 (Minn.

21

1994)] and the multiple published Minnesota Court of Appeals' opinions clearly indicate that Minnesota follows the minority view…").[8]

The *second* part of the governmental-interest test involves "examin[ation] [of] each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists." *Chen*, 444 P.3d at 730-31. Here, California has a strong interest, if not "the predominant interest," *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 98 (2010), in regulating conduct within its borders. That interest applies to the key question of whether PIIC has a duty to defend Cambria *in the California courts in which Cambria has been sued*. The duty to defend is one of the most important protections promised by liability insurers. *Buss v. Superior Ct.*, 939 P.2d 766, 773 (Cal. 1997) ("[S]o far as the insured is concerned, the duty to defend may be as important as the duty to indemnify."). And though Minnesota has at least some interest in applying its laws to Cambria, a resident of Minnesota, *Zinser v. Accufix Rsch. Ins., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001), as discussed below, that interest is minimal here.

Finally, where there is a true conflict in laws, the *third* step in the analysis is to "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law 'to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state.'" *Chen*, 444 P.3d at 731.

Here, the interests of California are overriding and would be more impaired if its laws were subordinated to Minnesota law. In the liability-insurance context, "particular importance is placed on the location of the subject matter of the contract, *i.e.*, the location of the insured risk." *Stonewall Surplus Lines Ins. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 646 (Cal. Ct. App. 1993). Generally, "[w]here a multiple risk policy insures against risks located in several states, it is likely that the courts will view the transaction as if it involved separate policies, each insuring an individual risk, and apply the law of the state of principle location of the particular risk involved." *Id.* at 646; *Medina v. Harco Nat'l Ins.,* No. CV 15-05595-BRO (MRWx), 2016 WL 7647680, *8 (C.D. Cal. July 29, 2016) ("California is where the 'particular risk involved' occurred, giving it a greater interest than Kansas."). "[I]t is accepted in insurance law that a single policy can be interpreted and applied differently in different states." *Pep Boys*, 98 Cal. App. 5th at 348.

PIIC suggests that products-liability risks to Cambria in California were not foreseen by PIIC when it issued its Policies. But even if that were relevant (it is not), there is no evidence from PIIC to support this proposition, and it is contradicted by PIIC's Policies' express definition of the

---

[8] Even if Minnesota law applied (it does not), PIIC's Pollution Exclusion does not apply to the direct, indoor workplace exposures alleged in the Bodily Injury Lawsuits.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

"coverage territory" as "[t]he United States of America," not Minnesota or any other state. (ASUF ¶ 17.) PIIC's Policies expressly promised *products/completed operations coverage* for the risks Cambria's product would result in bodily injuries *anywhere in the United States*, after the completed products left Cambria's possession. (ASUF ¶ 19.) The location of the particular risk insured by PIIC and at issue here is California, where Cambria has been sued based on alleged exposure to its products and its allegedly deficient warnings dating back to January 2001. (ASUF ¶¶ 30, 45.)

The magnitude of the ever-growing underlying litigation and the massive resources being consumed in California weighs heavily in favor of California law. There are now more than 210 underlying California cases, with more being filed each week. (ASUF ¶ 28.) The most recent *Solano-Claustro* trial took approximately 25 days of trial, meaning that if each of the 69 California cases at issue here were tried over the same amount of time, 1,725 days of trial in California courtrooms would be consumed on these cases alone. (ASUF ¶ 41.) Insurance is a critical piece of this massive litigation puzzle, as reflected by the many ongoing California insurance-coverage actions directly related to these underlying lawsuits. (ASUF ¶ 53.) What's more, PIIC's coverage counsel recognized the applicability of California law in communicating with Cambria pre-suit regarding the Total Pollution Exclusion, calling supportive cases outside of California "irrelevant." (ASUF ¶ 51.)

As for Minnesota, PIIC argues that its Policies were accepted there. (PIIC's Br. at 16.) But even if that was relevant, PIIC does not provide any supporting evidence. PIIC does not explain how or where it delivered the policies. The only signature that some of its policy forms bear is that of a PIIC representative, who presumably signed the documents in "Bala Cynwyd, Pennsylvania." (ASUF ¶ 25.) There is no record evidence that PIIC did anything in Minnesota relative to formation of the Policies. PIIC has not produced its underwriting files, and PIIC has not introduced testimony from any underwriting witness. (ASUF ¶ 55.) Ultimately, PIIC is not a Minnesota insurance company and is not harmed by the application of California law. *Medina*, 2016 WL 7647680, *9 ("[Defendant] is not a Kansas insurance company, so it is not harmed by the application of California law."); *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079, 1084 (N.D. Cal. 2007) ("Nor are any Georgia insurance companies impaired by the application of California law in this case, as the defendant insurance companies are not Georgia companies.").

California law presumptively applies. *Travelers Ins. Co. v. Workmen's Comp. Appeals Bd.*, 434 P.2d 992, 994 (Cal. 1967) (California "adopt[s] foreign law only when it is appropriate in light of the significant interests in the particular case."). And PIIC bears the burden of showing that

23

Minnesota law applies. *Wash. Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1081 (Cal. 2000). PIIC has not carried its burden.

### 3.      *Even if § 1646 Applied, PIIC's Place of Performance Is California.*

Section 1646 states:

> A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

Contrary to PIIC's arguments, California law still applies under § 1646 because: (1) California is the place where PIIC's insurance contract is to be performed; and (2) even if it were not, PIIC has not shown that its contracts were made in Minnesota.

Under § 1646, the place of performance of PIIC's duty to defend is California. *Frontier Oil*, 153 Cal. App. 4th at 1461 ("An insurer performs its defense obligation by providing defense services through an attorney…in the jurisdiction where the suit is prosecuted."); *James River Ins. v. Medolac Labs.*, 290 F. Supp. 3d 956, 964-66 (C.D. Cal. 2018) (same proposition).

PIIC argues to the contrary because some of its policy forms refer to Minnesota. (PIIC's Br. at 14-15.) But this is not surprising given that PIIC's policies are "Commercial Lines" policies with different kinds of coverage. (ASUF ¶ 9.) Further, courts have rejected PIIC's argument that endorsements are controlling. *Medina*, 2016 WL 7647680, at *8 n.9 ("[A]mendatory endorsements that explicitly extend coverage to additional states are not a dispositive prerequisite to applying the law of the state in which the accident occurred.").

On the second issue under § 1646—"the place where [the contract] is made"—PIIC assumes its policies were "made" in Minnesota. (PIIC's Br. at 16.) That claim is unsubstantiated. PIIC's policies are classic contracts of adhesion. If they were "made" anywhere, it was Pennsylvania, where PIIC conducted its insurance business. PIIC has not provided any underwriting evidence regarding how the policies were made and delivered (ASUF ¶ 55). *Jones*, 496 F. Supp. 2d at 1084 n.4 (addressing insurer's evidence regarding policy issuance).

Because the only evidence regarding where the insurance contracts were "made" would support Pennsylvania law, and PIIC does not even argue for Pennsylvania law, California law applies. *Pep Boys*, 98 Cal. App. 5th at 348-49 (applying "default choice of law principle that a California court will apply California law" because insurer "failed to demonstrate that any foreign states' laws should apply").

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT

**C.   PIIC's Pollution Exclusion Does Not Eliminate Its Duty to Defend.**

PIIC's reliance on the pollution exclusion fails because: (1) the California Supreme Court's decision in *MacKinnon* provides the controlling standard—whether the plaintiffs' alleged injuries arise from events commonly thought of as traditional environmental pollution; (2) exposure to silica in the context at issue, where the Bodily Injury Lawsuits allege harm from direct exposure to Cambria's products, is not traditional environmental pollution; and (3) the underlying complaints do not allege, and PIIC otherwise cannot prove, widespread contamination characteristic of environmental pollution under *MacKinnon*.

### 1.   *MacKinnon Controls.*

Application of the pollution-exclusion begins with *MacKinnon*.[9] There are four building blocks to *MacKinnon*'s analysis:

- *First*, *MacKinnon* emphasized that the pollution exclusion's historical purpose was to preclude coverage for traditional environmental pollution, explaining that the exclusion was a response to "anti-pollution laws enacted between 1966 and 1980" (*e.g.*, the Clean Air Act, CERCLA). 31 Cal. 4th at 643, 645, 653.

- *Second*, the court explained that the terms used in the exclusion, like "disperse," when used in reference to a pollutant, should be interpreted to mean the wide spread of pollution, rather than confined exposures. *Id.* at 651 ("To 'disperse' is defined, variously as 'to cause to become spread *widely*'…. The notion of 'dispersal' as a *substantial* dissemination is reinforced by its use with the term 'pollutant.'") (emphasis original).

- *Third*, the court recognized that a reasonable policyholder would not understand its CGL policy and a pollution exclusion "to exclude coverage for *anything* that irritates," it being "far more reasonable that a policyholder would understand it as being limited to irritants and contaminants commonly thought of as pollution." *Id.* at 653.

- *Finally*, the court ruled that "limiting the exclusion to environmental pollution appears reasonable in light of the purpose of CGL policies—which is to provide the insured with the broadest spectrum of protection against liability for unintentional and unexpected personal injury" arising out of the insured's business. *Id.* at 654.

*MacKinnon*, thus, held that the pollution exclusion applies only to traditional environmental pollution and *not* to all injuries involving the negligent use or handling of toxic substances in the normal course of business. *Id.* at 642, 645, 655-56. On the facts, *MacKinnon* concluded that the

---

[9] *MacKinnon* applies to the Total Pollution Exclusion. *Great Am. Assurance Co. v. MS Indus. Sheet Metal,* No. SACV11754JSTMLGX, 2012 WL 13018550, *3 (C.D. Cal. Jan. 31, 2012) (pollution exclusion interpreted in *MacKinnon* was "materially identical" to the Total Pollution Exclusion, stating "*MacKinnon* and its progeny controls"); *EFK Invs., LLC v. Peerless Ins.*, No. 13-CV-5910 YGR, 2014 WL 4802920, *5 (N.D. Cal. Sept. 26, 2014) (same conclusion).

mechanism of harm – the "normal, though negligent, residential application of pesticides" – was not pollution. *Id.* at 654.

### 2.    The Underlying Plaintiffs Do Not Allege Injury From Traditional Environmental Pollution.

Silica is not what a layperson would consider a traditional environmental pollutant. In evaluating the meaning of the pollution exclusion, *MacKinnon* identified environmental, anti-pollution legislation as a relevant consideration. (*Supra* pgs. 33-34.) As relevant here, silica is not a "toxic pollutant" under the Clean Water Act. 33 U.S.C. § 1317, 40 C.F.R. § 401.15 (2011). Nor is it a "hazardous air pollutant[]" under the federal Clean Air Act. 42 U.S.C. § 7412(b).[10] Nor does PIIC make any affirmative showing that silica (or metals or VOCs, which also allegedly caused bodily injury) are pollutants under environmental laws. PIIC must demonstrate that all three are environmental pollutants to avoid its duty to defend.

Silica, metals, and VOCs are not the same as asbestos, and this case is unlike *Villa Los Alamos Homeowners Association v. State Farm General Insurance Company*, which PIIC cites. 198 Cal. App. 4th 522 (2011). In *Villa Los Almos*, the court found asbestos to be a pollutant where it was widely disbursed throughout the air within a three-story apartment complex and outside of the building into adjoining outdoor spaces and streets. *Id.* at 540. Recognizing "it is proper to consider state and federal environmental laws when determining whether a particular substance is a 'pollutant,'" *Villa Los Alomos* relied on the categorization of asbestos as a pollutant under the Clean Water Act and Clean Air Act to conclude the widespread dissemination of asbestos constituted an environmental pollution event. *Id.* at 536. The same is simply not true of silica, metals, or VOCs.

Furthermore, "courts recognize that 'pollution' is not just a class of substances…, but also a mechanism of harm." *National Foam*, 768 F. Supp. 3d at 1017. When plaintiffs are allegedly harmed by direct exposure to the insured's product, the pollution exclusion does not apply. *Id.* at 1017 ("[T]he harms did not arise from 'pollution' in any recognizable sense. The Allen plaintiffs

---

[10] Federal OSHA regulations identify silica as a potential air contaminant. 29 C.F.R. 1910.1000. But workplace safety regulations, which cover a vast array of subjects and materials, are not the same as the traditional environmental laws cited in *MacKinnon*. The examples of traditional environmental pollution discussed by *MacKinnon* included things like remediation of hazardous wastes, environmental catastrophes related to intentional industrial pollution, and pesticide runoff into soil and groundwater. 31 Cal. 4th at 645, 652, 653. Ultimately, as *Garamendi* recognized, "the mere fact that silica, like almost anything else, may be an irritant or contaminant under some circumstances is not dispositive." 127 Cal. App. 4th at 486. Here, the circumstances do not support a ruling that silica exposure to a worker while fabricating or installing the insured's stone-countertop product is traditional environmental pollution.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

allege that they were exposed to PFAS in their ordinary use of National Foam's products, not via general environmental pollution (i.e., a contaminated water supply).").

Cambria's own experience operating fabrication facilities demonstrates that its product is safe. Silica is a naturally occurring mineral that comes from the earth. (ASUF ¶ 56.) It is in the quartz stone that is mined and utilized for the production of quartz slabs. (*Id*.) For more than twenty-five years, in certain markets, Cambria has fabricated its own slabs. (ASUF ¶ 4.) In that time, Cambria has fabricated over 650,000 slabs through over 10 million labor hours, performed by over 1,000 fabrication-shop employees. (*Id.*) In the entire time that Cambria has operated its "fab shops," there have not been any reported cases of silicosis. (ASUF ¶ 8.) Cambria's product is also safe as shipped and installed. (ASUF ¶ 57.)

This experience contradicts PIIC's argument that silica is what would commonly be thought of as an environmental pollutant under *MacKinnon*. It demonstrates that Cambria is being sued, in substantial part, for bodily injuries resulting from negligent workplace-safety practices of third parties directly handling Cambria's products. This is analogous to mechanisms of harm in *MacKinnon* and *National Foam*. And it is exactly why product manufacturers like Cambria buy insurance. *National Foam*, 768 F. Supp. 3d at 1017-18 ("National Foam purchased in insurance policies to cover claims arising from [its] chemical products. Now, the carriers effectively argue that all injuries caused by chemicals fall under the exception, raising the question of what, if anything, would be covered by the policy in the carriers' view.").

### 3. The Plaintiffs Allege Confined Exposure to Silica, Metals and VOCs.

In applying the pollution exclusion, *MacKinnon* and other California courts have considered whether the dissemination of the alleged pollutant is widespread or confined. *Santaluz, LLC v. Am. Home Assurance Co.*, No. 09CV2033 JAH(POR), 2010 WL 11509307, *6 (S.D. Cal. Aug. 6, 2010) (rejecting application of Total Pollution Exclusion to a release of sewer gas into homes because "the dispersal of the sewer gas was not widespread enough"); *MS Indus. Sheet Metal,* 2012 WL 13018550, *4 (rejecting insurer's denial of coverage based on pollution exclusions where the plaintiffs were exposed to toxic chemicals "in a localized area").

Here, the Bodily Injury Lawsuits allege that the underlying plaintiffs handled the defendants' stone products "working in small shops, fabricat[ing] the artificial stone slabs into countertops." (ASUF ¶ 42.) All of the Bodily Injury Lawsuits allege exposures in confined spaces. (*Id*.) None of the Bodily Injury Lawsuits allege widespread dissemination of silica, metals, or VOCs, within the fabrication shops, outside them, or beyond. (ASUF ¶ 46.) In addition, the Bodily Injury Lawsuits allege that the plaintiffs were injured in the course of installing the countertops,

27

"mostly [in] home kitchens and bathrooms." (ASUF ¶¶ 42-43.) Residential bathrooms and kitchens are clearly confined spaces. The allegations of the underlying lawsuits refute PIIC's reliance on the Total Pollution Exclusion.

The court's decision in *American Zurich* illustrates how *MacKinnon* applies. 2014 WL 11430928. In *American Zurich*, the underlying plaintiffs alleged bodily injuries from their "demolition and construction work" at a Boeing facility, which exposed them to "toxins, including dust and silica" that "enter[ed] the air at the Boeing job site." *Id*. at *1. Zurich sought contribution for the claim from Liberty Mutual, which denied coverage under its CGL policy based on the Total Pollution Exclusion. *Id*. at *2.

Applying *MacKinnon*, the court considered "how a layperson would reasonably interpret" the exclusion, and determined that Liberty Mutual "cannot show there is no possibility of coverage, because it cannot conclusively show that the alleged activity is traditionally thought of as pollution under *MacKinnon*'s guiding principles." *Id.* at *4. Specifically, the court held that "[a] reasonable layperson or policyholder wouldn't necessarily think of the release of 'toxins, including silica and dust' in the demolition business as traditional pollution," particularly where plaintiffs were injured via "more confined releases of dust." *Id.* at *4-5. And because the Exclusion "[did] not plainly and clearly exclude the release of 'toxins, including silica and dust' in the demolition business," there was a possibility of coverage precluding summary judgment for the insurer. *Id.* at *4.

This same analysis applies here. No reasonable layperson would consider the fabrication, polishing, and installation of countertops, and the related exposure of plaintiffs to silica, metals, or VOCs in confined indoor spaces, to fit within the traditional environmental terms of art "discharge, dispersal, seepage, migration, release or escape." There are no allegations of "widespread release of silica-containing dust into the air." *American Zurich*, 2014 WL 11430928 at *5. As in *American Zurich*, the Bodily Injury Lawsuits' allegations reflect "confined releases of dust…not…commonly thought of as pollution." *Id.* The Court's analysis here is even more straightforward than in *American Zurich*, which concerned "demolition and construction work" within an entire Boeing facility. *Id.* at *1.

In response, PIIC relies heavily on *Garamendi*, 127 Cal. App. 4th 480. In *Garamendi*, the California Court of Appeals considered the applicability of the Total Pollution Exclusion to complaints brought by plaintiffs alleging exposure to "silica-containing dust" as part of an outdoor "sandblasting operation." *Id.* at 483. After recognizing *MacKinnon*'s "traditional pollution" standard, the court held that the "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations" was "what is 'commonly thought of as pollution'

28

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

and 'environmental pollution.'" *Id.* at 486 (quoting *MacKinnon*). The Court affirmed the insurer's denial of coverage based on the Total Pollution Exclusion.

*Garamendi* does not help PIIC. As an initial matter, *Garamendi*'s procedural setting "cast[s] doubt on the decision's precedential value." California Insurance Law Handbook § 45:41 n.1. Because the insurer was in liquidation proceedings, the court recognized that its review was "circumscribed," with a "limited scope of inquiry into the liquidation trustees' grounds for rejecting claims for compensation by policyholders." 127 Cal. App. 4th at 484. Thus, the court applied an "abuse of discretion" standard of review, as opposed to the typical *de novo* standard applied when interpreting insurance policies. *Id.* at 485; *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) ("Abuse of discretion is a highly deferential standard."). Given this posture and standard, *Garamendi*'s affirmance of California's insurance commissioner proves little. Here, PIIC is owed no deference. To the contrary, controlling duty-to-defend standards require that any doubt as to the existence of the duty to defend be resolved *in Cambria's favor*. *Montrose*, 861 P.2d at 1157.

*Garamendi* is also distinguishable. There, the court based its ruling on allegations regarding the release of dust inhaled by "many workers" in a "very large area surrounding the sandblasting operation" and which "suspended in the air" and "travel[ed] over a large distance." 127 Cal. App. 4th at 483. It was this "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations" that the court deemed "traditional pollution." *Id.* at 486. Likewise, the few cases that have cited *Garamendi* approvingly featured similar allegations of "widespread" dispersal. *See Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469, 1480-81 (2007) ("[T]he widespread dissemination of offensive and injurious odors from a commercial compost facility is 'environmental pollution' under *MacKinnon*"); *Nat'l Fire Ins. Co. of Hartford v. Martinelli*, No. 07-CV-01056-AWI-GSA, 2008 WL 2725070, *11 (E.D. Cal. July 11, 2008) ("[T]he widespread flooding of a substantial amount of saltwater/brine from a commercial process pond onto adjacent agricultural land" was environmental pollution).[11]

None of the plaintiffs in the Bodily Injury Lawsuits here allege any similar "widespread" dispersal of silica, metals, or VOCs. (ASUF ¶ 46.)  Nor does PIIC conclusively make such a showing with undisputed facts. To the contrary, the underlying plaintiffs allege localized exposure through their work "cutting, fabricating and/or installing stone products," typically in "small

---

[11] This case is distinguishable from *Villa Los Alamos*, where the dissemination of asbestos was clearly widespread. 198 Cal. App. 4th at 540 ("[A]sbestos . . . became airborne and spread throughout building 300, including its corridors, stairwells, in residential units, inside the HVAC system, and onto the exterior grounds…and in parking lots and a private street.").

29

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

[fabrication] shops" or "home kitchens and bathrooms." (ASUF ¶ 42.) This limited, confined exposure is further confirmed by the fact that each Bodily Injury Lawsuit is brought by an individual plaintiff, as opposed to the "many workers" (47 in total) allegedly exposed to the same silica-containing dust in *Garamendi*. (ASUF ¶ 26.) The *American Zurich* court distinguished *Garamendi* for this reason, explaining that while *Garamendi* reached its conclusion after finding that the subject dust "travel[ed] over a large distance, subjecting many workers in the area to an unreasonable risk of harm," the court "had no reason to understand the impact of the toxins released as so widespread." 2014 WL 11430928, *5. The same is true here. As in *American Zurich*, no reasonable layperson would consider the fabrication and installation of quartz countertops as traditional environmental pollution. The Court should reject PIIC's reliance on *Garamendi*.

### D. PIIC Has Breached Its Duty to Defend.

It is ultimately PIIC's burden to prove, by reference to undisputed facts, that the Total Pollution Exclusion clearly and completely bars coverage. *Horace Mann Ins. v. Barbara B.*, 846 P.2d 792, 798 (Cal. 1993) (if "factual issues exist precluding summary judgment in the insurer's favor…the duty to defend is then *established*"); *Health Net, Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 263 (2012) (finding duty to defend where insurer could not prove "exclusion completely bar[red] coverage").

PIIC does not carry its burden. PIIC cannot conclusively prove that a reasonable policyholder would consider the fabrication and installation of quartz countertops in confined spaces, and the indoor exposure to silica, metals or VOCs, to constitute traditional environmental pollution under *MacKinnon*. The Bodily Injury Lawsuits allege harm from direct exposure to Cambria's products, which is not pollution.

PIIC has breached its duty to defend, and PIIC is liable for Cambria's defense costs. *Intergulf Dev. LLC v. Superior Ct.*, 183 Cal. App. 4th 16, 20 (2010). The Court should so hold.

### X. PIIC'S OPPOSITION/REPLY ARGUMENT

### A. Choice-of-Law

#### 1. Cambria's Opposition Misstates Choice-of-Law Principles

Cambria's Opposition misstates the choice-of-law principles to be followed by this Court. It contends that instead of first determining whether there is a conflict between the laws of the states whose law may apply here, this Court must first determine which state's law governs before addressing the merits. This is incorrect. *UMG Recordings, Inc. v. American Home Assur. Co.,* No. CV 04-04756 DDP (RNBx), 2004 WL 7340621, *2 (C.D. Cal. Nov. 5, 2024), relied on by Cambria to the contrary, in fact begins its choice-of-law analysis by "first determin[ing] whether

30

the respective states' laws differ" and notes "[e]ven if the states' laws differ, a 'true conflict' does not necessarily arise" necessitating a full choice-of-law analysis.  As set forth in PIIC's Motion, only in the event of a conflict on a substantive issue will a court in a forum state conduct a choice-of-law analysis, applying the choice-of-law rule of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  Here, both California and Minnesota law would apply the TPEs in the PIIC Policies to bar coverage for the Silica Lawsuits.  It is only if this Court concludes that there is a conflict between the laws of the states of California and Minnesota on application of the TPE must it undertake a choice-of-law determination to decide which state's law applies.

### 2. *Cambria's Opposition Misapplies California's Choice-of-Law Test*

Cambria's Opposition focuses on a single case, *Pep Boys Manny Moe & Jack v. Old Republic Ins. Co.,* 98 Cal. App. 5th 329 (2023), to attempt to evade long-standing California authority applying California Civ. Code section 1646 ("section 1646") to determine choice of law in disputes involving contracts.[12]  In doing so, it wrongfully states that *Pep Boys* "held that California's governmental interest test applies to determine choice of law." *Pep Boys* did no such thing.

The correct choice-of-law test to be used here is section 1646, which provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1448-49 (2007).  The court in *Pep Boys* agreed and assumed "*Frontier Oil's* analysis is correct and that we must start with section 1646 to determine which state's law to use to interpret the [] policy." *Pep Boys,* 98 Cal. App. 5th at 347.  It acknowledged that the intended "place of performance" can be gleaned from the nature of the contract and its surrounding circumstances, and that the place of performance of an insurance policy is the place of the insured risk.  *Id.*  The court then concluded that the record before it did not provide it with sufficient information to determine which states' laws should be applied under section 1646.  *Id.* at 348.

The *Pep Boys* court then queried that "finding a practical solution to the choice of law question would likely require us to apply the governmental interest test." *Id.*  It then concluded

---

[12] Cambria's assertion that "the Court concluded that its familiarity with California law favored retaining the case, referring to *Pep Boys*" misconstrues this Court's order, which states: "<u>*Assuming without deciding*</u> that California and Minnesota law were in conflict, <u>*and*</u> that the test advanced in *Pep Boys* [] is correct, as the parties have assumed at this stage, *see* Reply at 8, the law of the state in which the particular risk involved would apply. *Pep Boys*, 98 Cal. App. at 345–49." (ECF No. 33 at 12-13 (emphasis added).)

31

that the record was insufficient to undertake a governmental interest test. *Id.* at 348-349. It did <u>not</u> hold, as Cambria asserts, that the governmental interest test applied to determine choice of law, nor did it conclude, after a proper choice-of-law analysis, that California law applied to the dispute before it. Rather, it stated "we fall back on the default choice of law principle that a California court will apply California law" particularly where, as here, it lacked sufficient information to conduct a choice-of-law analysis under either test. *Id.* at 349.

Here, the place of performance can be clearly gleaned from the plain terms of the PIIC Policies given they were issued to Cambria in Minnesota, identify premises located only in Minnesota, contain numerous endorsements pertaining to "Minnesota Changes", and identify vehicles garaged in Minnesota and generally provide coverage tailored to Minnesota law, which are addressed in detail in PIIC's Motion. Cambria did no business nor did it perform any operations whatsoever in California during the PIIC policy periods and thus California cannot be the place of performance of the PIIC Policies. (*See* JSUF No. 9.) Another key factual distinction between *Pep Boys* and the present matter is that in *Pep Boys,* the insured sold automotive products at its stores nationwide, with over 145 stores in California. *Id.* at 332. The location of these stores was a significant fact in determining place of performance, according to the court in *Pep Boys. Id.* at 348. Here, Cambria has presented no evidence that it had facilities or operations in California at the time the PIIC Policies were issued. That is because no such evidence exists.

Cambria's assertion that PIIC failed to show that the PIIC Policies were accepted or delivered in Minnesota is further unfounded. The Declarations pages of each of the PIIC Policies clearly identifies Cambria's address in Le Sueur, Minnesota. (JSUF No. 1.) Notwithstanding, Cambria attempts to underplay the significance of that fact and the many endorsements in the PIIC Policies addressing Minnesota policy terms and requirements. Cambria accuses PIIC of failing to present *additional* evidence, such as the location of the broker, to support that the PIIC Policies were issued in Minnesota. However, Cambria overlooks the fact that PIIC has already submitted evidence to this Court by way of the Declaration of Ann Conroy in support of PIIC's Motion to Transfer that declares that at the time the PIIC Policies were issued, PIIC's representative working with Cambria's broker in connection with negotiating the policies' terms was located in Minnesota *and* Cambria's insurance broker was also located in Minnesota. (JSUF Nos. 20 and 21; *see also* ECF No. 17-2, ¶¶ 5 and 6.) Cambria did not contest this Declaration in its Opposition to PIIC's Motion to Transfer, as it had no grounds to dispute where the PIIC Policies were in fact issued.

Cambria's Opposition further supports that Minnesota was the intended place of performance of the PIIC Policies. The Declaration of Rebecca Shult submitted in support of

32

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Cambria's Opposition includes trial testimony excerpts of Jon Grzeskowiak, Cambria's Chief Research Officer since approximately 2005, from one of the Silica Lawsuits.  Mr. Grzeskowiak explained: "Cambria is a company in Minnesota that produces []countertop[s]" with its manufacturing facility in Le Sueur, Minnesota and "a few other facilities in southern Minnesota." (JSUF No. 22.)  Mr. Grzeskowiak further testified that Cambria's manufacturing facility has been located in Le Sueur "since the company started" and "all manufacturing operations of Cambria [are] in Minnesota."  (JSUF No. 23.)  Finally, Mr. Grzeskowiak testified that Cambria's three fabrication shops are located in Minnesota and two other states, neither of which is California. (JSUF No. 24.)

Moreover, although Cambria has named only Silica Lawsuits filed in California in its FAC, it has tendered in the past, and continues to tender after filing its FAC, Silica Lawsuits filed in other states, including Washington, Arizona, Illinois, and Florida.  (JSUF No. 25.)  Cambria's strategy in failing to include non-California Silica Lawsuits in its FAC was apparently designed to encourage this Court to apply California law to the claims before the Court based on Cambria's belief that California law addressing the TPE is more favorable to it than Minnesota law. Cambria's position is unwieldy and absurd.  Absent the correct application of Minnesota law, PIIC may be forced to continue to litigate coverage for the Silica Lawsuits in the different jurisdictions in which Cambria is sued.  This would result in a waste of judicial and party resources and potentially inconsistent application of the TPE.

Cambria also seeks to mislead this Court into believing that counsel for PIIC, in an exchange of correspondence with counsel for Cambria, acknowledged that California law should apply to the coverage dispute involving the TPEs. (*See* ASUF Nos. 50, 51.)  In doing so, Cambria references a December 8, 2023, letter to PIIC in which Mr. Freeman disputes PIIC's coverage position and cites to authority in California, New York, Nevada and Connecticut to support Cambria's position that the TPE does not apply to bar coverage for the Silica Lawsuits.  (*See* ASUF No. 50.)  In response, PIIC's counsel issued a February 15, 2024, letter to Mr. Freeman addressing the contentions set forth in Mr. Freeman's letter and informing Mr. Freeman that the New York, Nevada and Connecticut cases were irrelevant to the application of California law. (*See* ASUF No. 51.)  As the laws of California and Minnesota are in accord as to application of the TPE, Cambria's "gotcha" argument is misplaced and misleading.  Ultimately, only in the event of a conflict between the laws of California and Minnesota concerning application of the TPE to the Silica Lawsuits would it be necessary for this Court to undertake a choice-of-law analysis.  Here,

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

however, there is no conflict, as the TPE clearly applies to bar coverage under both California and Minnesota law.

### B. The TPE Conclusively Applies to Bar a Defense and Indemnity Under California Law

Coverage for the Silica Lawsuits is barred by the TPEs in the PIIC Policies. PIIC acknowledges the California Supreme Court's interpretation of the Absolute Pollution Exclusion ("APE") in *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635 (2003). However, *MacKinnon* involved an isolated and ordinary act of negligence from the spraying of a beneficial product (pesticide) that resulted in the death of a single person. It did not involve, like here, widespread commercial operations occurring over the course of many years that allegedly resulted in bodily injuries from the byproduct of fabrication and installation activities. Therefore, it is easily factually distinguished from the present matter. Moreover, the significant body of California authority post-dating *MacKinnon,* addressed in PIIC's Motion and herein, clearly support that the TPE applies to bar coverage under factual scenarios similar to those at issue here.

Additionally, unlike in *MacKinnon*, the PIIC Policies contain TPEs, the strongest possible form of pollution exclusion, and not the more limited APE. *Griffin Dewatering Corp. v. Northern Ins. Co. of New York*, 176 Cal. App. 4th 172, 178 fn. 3 (2009) (explaining "[t]o the degree that there may be a difference between the [TPE] and the more common [APE] it appears that the 'total' one excludes a little more than the 'absolute' one . . . [the TPE] is even broader than the [APE]"); *see also, Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.,* 441 F. Supp. 3d 1016 (S.D. Cal. 2020) (distinguishing between the TPE and one similar to that at issue in *MacKinnon* on the grounds that the "but for" language in the TPE should be read more broadly). The TPE requires a "but for" test, under which coverage is excluded for injuries that would not have occurred "but for" the discharge of pollutants. *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 488. Cambria's Opposition ignores this distinction entirely, and instead tries to analogize cases involving entirely different pollution exclusions.

Finally, it is of no consequence that the PIIC Policies do not contain exclusions that specifically apply to bar coverage for injuries caused by silica dust. In *Garamendi,* 127 Cal. App. 4th at 541, the Court of Appeal applied the TPE to bar coverage for bodily injury claims resulting from exposure to silica-containing dust despite the fact that the policies at issue did not contain a specific silica exclusion.

#### 1. *Silica, Metals, and VOCs are "Pollutants" Within the Scope of the TPE*

34

Contrary to Cambria's contentions as set forth in its Opposition, silica is considered a "pollutant" for purposes of applying a pollution exclusion under California law. *Garamendi*, 127 Cal. App. 4th at 485–486; *Villa Los Alamos Homeowners Association v. State Farm General Insurance Company* ("*Los Alamos*"), 198 Cal. App. 4th 522, 536 (2011). Applying the *MacKinnon* standards, the court in *Garamendi* found the "widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi,* 127 Cal. App. 4th at 485–486. It therefore concluded that denial of a defense based on the pollution exclusion was proper. *Id.* at 482.

Similarly, courts in multiple other jurisdictions have also held that silica, silica-containing dust, and metals are "pollutants" within the commonly understood meaning of the word in a commercial general liability policy. *See*, *e.g.*, *Clarendon America Ins. Co. v. Bay Inc.*, 10 F. Supp. 2d 736, 744 (S.D. Tex. 1998) (finding that "silica is within the ambit of 'pollution'" as used in a pollution exclusion); *RLI Ins. Co. v. Gonzalez*, 411 F. App'x 696, 698 (5th Cir. 2011) ("Silica dust is unambiguously a 'pollutant' under the language of the Pollution Exclusion"); *Broome County v. Travelers Indem. Co.*, 125 A.D. 3d 1241, 1242 (N.Y. App. Div. 2015) (finding "silica dust" to be "within the policy definition of a pollutant" as an "irritant or contaminant"); *Ortega Rock Quarry v. Golden Eagle Ins. Corp.*, 141 Cal. App. 4th 969, 985 (2006) (citing *Monarch Greenback, LLC v. Monticello Ins. Co.* 118 F. Supp. 2d 1068, 1070 fn. 1 & 1079–1080 (D. Idaho 1999) for the proposition that "trace metals were pollutants within the meaning of an insurance policy pollution exclusion"). California courts have similarly recognized VOCs as regulated pollutants. *See generally, American Coatings Assn., Inc. v. South Coast Air Quality District*, 54 Cal. 4th 446 (2012).

### 2. The Silica Lawsuits Allege that Bodily Injuries Resulted from Traditional Pollution

Cambria's Opposition contends that "the mechanism of harm alleged [in the Silica Lawsuits] is not exposure to silica, metals, or VOCs through general environmental pollution." Cambria is misguided. The Silica Lawsuits do in fact allege that the mechanism resulting in the injuries at issue was "pollution" caused by exposure to silica-containing dust. The California Supreme Court requires a court to "attempt to put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language" to determine whether an injury-causing event would commonly be thought of as pollution. *MacKinnon*, 31 Cal. 4th at 653. Since *MacKinnon*, "courts appear to consider the following factors in determining

35

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

whether an injury-causing event would commonly be thought of as pollution from a layman's perspective: (1) whether the harm resulted from the by-product of an industrial operation, (2) whether the contaminant in question is regulated, and (3) whether the alleged polluter was aware of the dangers of the contaminant." *Travelers Prop. Cas. Co. v. City of Los Angeles Harbor Dept.* ("*Travelers*"), No. CV 15-7799-GW(AJWX)) 2016 WL 11520822 (C.D. Cal. 2016) (citing *Los Alamos*, *Garamendi*, and *Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469 (2007)).  As to Cambria, we can answer "yes" to these factors.

First, the harm alleged in the Silica Lawsuits is the direct result of the underlying plaintiffs' work related to the "industrial operation" of cutting, grinding, installing and finishing stone to be installed in kitchens and bathrooms.  (*See* JSUF No. 12.)  Therefore, the harm resulted from the by-product of an industrial operation.

Second, the Federal Government has regulated these operations by imposing workplace exposure limits on silica since 1971 with the most recent modification in 2016.  29 C.F.R. §§§ 1910.1000; 1910.1053; 1915.1053; 1926.1153.  Under this same code section, the Federal Government imposes workplace exposure limits on the metals the underlying plaintiffs were allegedly exposed to.  29 C.F.R. §§ 1910.1000 Table Z-1; 1910.1018; 1910.1026; 1910.1028. Moreover, California adopted the Federal OSHA regulations in 2016.  California regulates occupational exposure to respirable crystalline silica through Title 8, § 5204, of the California Code of Regulations.  Prior to §5204, CCR § 1530.1 controlled exposure to silica resulting from the use of powered tools or equipment on concrete or masonry materials.  CCR § 1530.1 regulates certain metals and California further regulates occupational exposure to these metals through CCR § 5155.

Finally, Cambria was aware of the dangers of silica and metals, as Cambria highlighted in its Additional Statement of Uncontroverted Facts: "The underlying failure-to-warn claims in the Bodily Injury Lawsuits include allegations that Cambria's products 'were defective, because they lacked warnings or contained warnings that were inadequate to apprise Plaintiff of their toxic hazards and their serious effects upon the human body,' with specific reliance on alleged deficiencies in Cambria's January 5, 2001 Material Safety Data Sheet and its section on 'Precautions for Safe Handling.'" (*See* ASUF No. 45.)  Mr. Grzeskowiak further testified to just how aware and to what extent Cambria takes extensive precautions in this regard in its facilities in an effort to prevent silicosis.  (JSUF No. 26.)

Cambria cites *National Foam, Inc. v. Zurich Amer. Ins. Co.,* 768 F. Supp. 3d 1009, 1017 (N.D. Cal. 2025) for the proposition that "when plaintiffs are allegedly harmed by direct exposure

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

to the insured's product, the pollution exclusion doesn't apply." In *National Foam,* firefighters were allegedly injured as a result of exposure to National Foam's *finished product*, PFAS-containing foam. The court therefore found that the mechanism of harm was not "pollution," for the injuries sustained by the firefighters was caused by exposure to PFAS in National Foam's product during the course of their work using the product as intended to extinguish fires. *Id.* It therefore declined to apply the TPE to these exposures.

By contrast, the court in *National Foam* found that the TPE *did* apply to bar coverage for claims wherein the underlying plaintiffs alleged exposure to PFAS via contaminated water because of the use of National Foam's product. *Id.* at 1020. Here, the underlying plaintiffs in the Silica Lawsuits allege injuries resulting from industrial operations involving the cutting and fabricating of Cambria's product, not injuries resulting from direct exposure to Cambria's finished product, such as by simply touching or transporting a finished slab or countertop. Cambria's reliance on *National Foam* is thus misplaced given the significant factual differences in the mechanism of harm involved.

### 3.    *Cambria's Contention That "Products/Completed Operations" Coverage Applies to Any and All Claims is Wrong*

Cambria contends that the inclusion of a "products/completed operation" limit in the PIIC Policies reflects that PIIC intended to cover all of Cambria's "products/completed operations" risks. Cambria overlooks that a policy of insurance must be read in its entirety, and Cambria cannot cherry-pick policy language to suit Cambria's needs, while ignoring others. *Buss v. Superior Court*, 16 Cal. 4th 35, 45 (1997) ("To yield their meaning, the provisions of a policy must be considered in their full context"). This includes consideration of the TPEs in the PIIC Policies. Even though the PIIC Policies may provide "products/completed operations" coverage, they do so subject to all of the terms, condition and exclusions of the PIIC Policies. A reading of the entire PIIC Policies reflects that the PIIC Policies exclude coverage for those claims falling within the TPEs. Simply put, Cambria did not purchase coverage from PIIC for claims falling within the TPEs.

However, such coverage was available to Cambria at the time the PIIC Policies were issued in 2000, and ever since then. Given its awareness of the risks associated with silica dust exposure, Cambria could have purchased pollution legal liability insurance, or similar insurance, which was readily available to cover risks such as those at issue in the Silica Lawsuits, at the time the PIIC Policies were issued. *See* John Hannah, The U.S. Environmental Liability Insurance Market—Reaching    New    Frontiers,    IRMI    (May 1, 2000),    https://www.irmi.com/articles/expert-

37

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

commentary/the-us-environmental-liability-insurance-market-reaching-new-frontiers; *see also, Alco Iron & Metal Co. v. American Int'l Spec. Lines Ins. Co.,* 911 F. Supp. 2d 844 (N.D. Cal. 2012) (insured purchased pollution legal liability insurance policy which provided coverage for "bodily injury"). Cambria failed to purchase such insurance, which was in fact purchased by other countertop manufacturers named in some of the same Silica Lawsuits as Cambria. (JSUF No. 27.)

Moreover, even if Cambria did not purchase specialty pollution coverage at the time the PIIC Policies were issued, it could have later purchased "claims made" coverage which would have provided coverage for the Silica Lawsuits. Under a claims-made insurance policy, the description of the risk covered includes the requirement that claims be made and reported within the policy period. *Countryside Coop. v. Harry A. Koch Co.,* 280 Neb. 795, 886 (2010) (addressing application of claims-made pollution legal liability policy); *AIG Specialty Ins. Co. v. Stoller Ent., Inc.,* 2017 WL 541533, No. 4:16-cv-26 (S.D. Tex. Feb. 7, 2017) (involving application of claims-made Commercial General Liability and Pollution Legal Liability Policy). Unlike the "occurrence"-based policies that require "bodily injury" to occur during the policy period, "claims made" coverage focuses on when the claim is made against the insured.

Cambria did not purchase insurance to protect it from the claims at issue in the Silica Lawsuits, and it should not be rewarded for failing to do so. Similarly, PIIC should not be punished for Cambria's failure. Although Cambria casts itself as a private, family-owned business, in fact, it is a sophisticated insured headquartered in Minnesota. As set forth in Cambria's Opposition, when it applied for the PIIC Policies, it represented its gross sales as $10 million. (ASUF No. 11.) Its current annual revenue is reported to be $550 million. *See Cambria Company Profile, The Business Journals,* https://www.bizjournals.com/profile/company/org_ch_ba85ef9faf39841b7c0654e9d90e04f4 (last visited July 15, 2025). Cambria had the sophistication, means and opportunity to purchase sufficient insurance coverage for its silica-related liabilities. However, it chose not to.

### 4.    *Widespread Dissemination of Silica Dust is not Required*

Cambria contends that dissemination of silica dust must be widespread in order for the TPE to apply, and disputes that the releases of silica dust at issue in the Silica Lawsuits would be considered widespread. The fact that dissemination of silica dust beyond the immediate area of effect was prevented is not dispositive of whether the release is "commonly thought of as environmental pollution." *American Cas. Co. of Reading, PA v. Miller*, 159 Cal. App. 4th 501, 516 (2008). "The test in *MacKinnon* is not based upon the extent of injury, but upon the type of pollutant and how it is released into the environment." *Id.*; *see also, Los Alamos*, 198 Cal. App.

38

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

4th at 540, 542 (2011) (concluding that "the *release* of asbestos fibers into the air" in a single condominium building, although not "widely dispersed," "constituted environmental pollution within the meaning of the pollution exclusion") (emphasis in original).  This is especially the case where, such as here, "there is no safe level of exposure."  *Id.* at 540.  The court concluded, "The release of asbestos in this case constituted environmental pollution within the meaning of the pollution exclusion."  *Id*. at 542.  Like here, the release in *Los Alamos* was an indoor release – involving a release of asbestos fibers from scraping popcorn ceilings.  It was contained and not "widespread," yet the TPE applied.  *Id.* at 539.

As in *Los Alamos*, the Silica Lawsuits allege the ongoing "release" of silica and silica-related dust into the air from fabricating Cambria's stone products.  (JSUF No. 12.)  They allege not a single act of ordinary negligence resulting in the release of a "pollutant," such as at issue in *MacKinnon,* but that such releases included "large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."  *Id.*  These allegations of releases of large amounts of respirable crystalline silica are akin to the underlying claimants' allegations in *Garamendi* that silica-containing dust generated from sandblasting operations "is suspended in air and travels over a large distance, subjecting many workers in the area to an unreasonable risk of harm."  *Garamendi*, 127 Cal. App. 4th at 483.

Cambria's Opposition cites to *Santaluz, LLC v. American Home Assur. Co.,* No. 09CV2033 JAH(POR), 2010 WL 11509307, *6 (S.D. Cal. Aug. 6, 2010), as having rejected the application of the TPE to a release of sewer gas into homes because the dispersal of sewer gas was not widespread enough.  *Santaluz* is easily distinguishable, where there, the court found that coverage for an incident of sewer gas leakage into two homes located two doors apart, from negligently installed sewer lines was not barred by the TPE.  *Santaluz* does not involve the routine release of large amounts of silica dust in commercial operations over many years.  Other cases cited in Cambria's Opposition can be distinguished on the same grounds.  *See, Great American Assur. Co. v. MS Indus. Sheet Metal, Inc.,* No. SACV 11-754-JST (MLGx), 2012 WL 13018550 (C.D. Cal. Jan. 31, 2012) (involving the negligent installation and maintenance of a commercial printer by failing to install proper ventilation system); *EFK Investments, LLC. v. Peerless Ins. Co.,* No. 13-CV-5910 YGR, 2014 WL 4802920 (N.D. Cal. Sept. 26, 2014) (involving an isolated act of alleged negligence when dust and debris from painting preparation resulted in damage to inventory of high-end audio equipment).  These cases involve allegations vastly different than those at issue in

39

the Silica Lawsuits and therefore, the Court should disregard them in evaluating application of the TPEs in the PIIC Policies.

### C.    The TPE Clearly Applies to Bar Coverage Under Minnesota Law

As set forth more fully in PIIC's Motion, the TPE clearly applies to bar a duty to defend and indemnify Cambria in connection with the Silica Lawsuits under Minnesota law.  Cambria has failed to provide any Minnesota law to the contrary in its Opposition and all but concedes that the TPE applies under Minnesota law.  Minnesota courts have rejected the notion that pollution exclusions apply only to "situations involving traditional environmental pollution."  *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 637 (Minn. 2013).  Courts applying Minnesota law have repeatedly and consistently applied pollution exclusions to bar coverage for injuries resulting from a multitude of different substances including carbon monoxide caused by emissions from terrazzo floor grinders; and hydrogen-sulfide emissions, particulate matter, flies and other insects emanating from a dairy operation.  *See Continental Cas. Co. v. Advance Terrazzo & Tile Co*., 462 F.3d 1002 (8th Cir. 2006); *Brouse v. Nationwide Agribusiness Ins. Co.,* No. A-14-1729, 2015 WL 4507996 (Minn. App. July 27, 2015).  Similarly here, to the extent this court finds a conflict between the laws of California and Minnesota and that Minnesota law applies, the TPEs in the PIIC Policies should be found to bar coverage for the Silica Lawsuits.

## XI.    CAMBRIA'S SUR-REPLY – ARGUMENT

### A.    The Bodily Injury Lawsuits Satisfy PIIC's Insuring Agreement.

Cambria has shown that the Bodily Injury Lawsuits trigger PIIC's Insuring Agreement because they allege bodily injury, caused by an occurrence taking place during PIIC's policy periods. (Pg. 20.) PIIC does not dispute this. Prima facie coverage is, therefore, established.

### B.    California Law Applies to the Pollution Exclusion.

#### 1.    *Choice of Law Precedes the Merits.*[13]

PIIC argues that Cambria "misstates the choice-of-law principles" by arguing that the Court "must first determine which state's law governs before addressing the merits." (Pg. 30.) But that is exactly what the cases say. *See, e.g.*, *UMG Recordings*, 2004 WL 7340621 at *2 ("Before the Court addresses the merits . . . it must determine which state's law governs the policies.").

Determining the body of state law that applies before analyzing the merits (based on that state law) is only logical. Indeed, California's conflicts-of-law approach requires "determin[ing] whether the relevant law of each of the potentially affected jurisdictions with regard to the

---

[13] In integrating the briefing, Cambria's argument on choice of law and the merits of the pollution exclusion follows PIIC's argument on those issues because the Parties do not agree on the order in which they should be addressed.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

particular issue in question is the same or different." *Pep Boys*, 98 Cal. App. 5th at 346; *Bridge Fund*, 622 F.3d at 1002–04 (conducting choice-of-law analysis as between California and Texas and then applying California law to the merits); *Jones*, 496 F. Supp. 2d at 1084–85 (finding Georgia and California insurance law differed, determining that California law applied, and then applying California law). It is true there is "no [choice of law] problem where the laws of the two states are identical," *Stonewall,* 14 Cal. App. 4th at 642, but that is not the case here.

### 2.      *Pep Boys Guides The Court's Approach.*

PIIC wrongly accuses Cambria of "attempt[ing] to evade long-standing California authority applying…section 1646," in arguing for application of the governmental-interest test. (Pg. 31.)

The role of the Court, sitting in diversity, is to apply California's choice-of-law rules and in so doing, predict how the California Supreme Court would decide the issue "using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Gravquick A/S v. Trimble Navigation Intern.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Vestar Dev. II, LLC v. Gen. Dynamics*, 249 F.3d 958, 960 (9th Cir. 2001). Here, the 2023 *Pep Boys* decision is undisputedly the most recent decision from the intermediate, California appellate courts providing guidance on choice of law in a liability-insurance case.

PIIC instead relies on *Frontier Oil*, 153 Cal. App. 4th 1436, and ignores the *reasoning* in *Pep Boys*, including that the last California Supreme Court case to cite § 1646 was from 1956, and that, in the 2019 *Chen* decision, the California Supreme Court recognized that California choice-of-law rules have been formulated "*by courts through judicial* decisions…rather than by the legislature." 444 P.3d at 730. PIIC cannot rely on *Frontier Oil* as if *Pep Boys* does not exist. Notably, PIIC does not contest *Pep Boys'* recognition that *Frontier Oil's* discussion of choice of law was likely *dicta*. 98 Cal. App. 5th at 347. *Pep Boys'* reasoning must inform the Court's approach here.

Finally, PIIC is wrong regarding the holding in *Pep Boys*. The court in *Pep Boys* ultimately concluded that the governmental-interest test was the right test. *Id.* at 348. The court simply found on the record that the insurer had failed to carry its burden under the governmental-interest test to alter the default rule that California law applied. The same is true here.

### 3.      *California Law Applies Under Either Test.*

PIIC's reply does not substantively engage with application of California's governmental-interest test as argued for by Cambria. (Pgs. 21–23, 31-33.) PIIC instead argues only regarding the "the

41

---

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

place of performance" of PIIC's policies under § 1646. Thus, PIIC effectively concedes that California law applies under the governmental-interest test. Or, at a minimum, PIIC has not shown that the default application of California law should be altered. *Pep Boys*, 98 Cal. 5th at 348–49.

But even if § 1646 applied (it does not), PIIC is wrong about the place of performance of PIIC's insurance contracts. PIIC argues Minnesota is the place of performance, again relying on certain references to Minnesota in its policies, including the Minnesota address where a few vehicles were garaged. But this case is not about the auto insurance in PIIC's "Commercial Lines" policies. Nor were PIIC's insurance policies somehow "tailored to Minnesota law."[14] (Pg. 32.) PIIC issued its insurance on its standard CGL forms, as it did for thousands of insureds. And though PIIC easily could have included a choice-of-law clause in its policies, it chose not to. Given that the heart of PIIC's business is to sell contracts, which PIIC alone drafted, PIIC can hardly complain about the application of California law.

PIIC argues that California law cannot apply because Cambria did not have a physical presence in California between 2000–2002. What matters, however, is that PIIC promised Cambria products/completed operations coverage *for products-liability risks after Cambria's products left Cambria's possession, in any location in the United States*. PIIC's nationwide products-liability insurance—the coverage actually at issue—is far more probative than PIIC's different insurance for real estate and vehicles that were located in Minnesota. The very products-liability risks for which PIIC accepted Cambria's premiums have eventuated, with California workers claiming bodily injuries from the fabrication of Cambria's products in California between 2000–2002 and based on alleged deficiencies in Cambria's 2001 Material Data Safety Sheet. (ASUF ¶ 45.)

In focusing on Minnesota, PIIC fails to respond to the fact that the fundamental threshold duty of PIIC as a liability insurer is to defend its insured. The place where PIIC must perform its contractual promise to defend Cambria is *in California*, the location of the Bodily Injury Lawsuits.[15] California cases recognize this. *Frontier Oil*, 153 Cal. App. 4th at 1461; *James River*, 290 F. Supp. 3d at 964–66. Thus, the terms of § 1646 require the application of California law.

---

[14] PIIC has not produced, or put in the record, a shred of underwriting evidence. PIIC does not actually show that its contracts were "made" anywhere other than Pennsylvania. Even Ann Conroy, the witness whose declaration PIIC now relies on in its reply, is not an underwriter. Ms. Conroy did not begin working for PIIC until *2014*, more than *ten years* after the PIIC policies were issued. (ECF No. 24, Ex. C.) Ms. Conroy has no personal knowledge regarding the policies. She has no evidentiary foundation for her testimony.

[15] PIIC points out that there are a small number of underlying cases brought against Cambria in other jurisdictions, which are not a part of the Bodily Injury Lawsuits at issue. Those cases are, thus, not relevant here. As Cambria has explained to Philadelphia, most of those cases are already being defended by a different insurer. Removing those few underlying cases from the scope of this case simplifies the analysis.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Finally, PIIC accuses Cambria of "seek[ing] to mislead this Court into believing that counsel for PIIC, in an exchange of correspondence with counsel for Cambria, acknowledged that California law should apply…." (Pg. 33.) Simply put, in addressing the very pollution-exclusion at issue here, PIIC's coverage counsel affirmatively cited California caselaw (*Garamendi*) for the proposition that silica was a "pollutant" and characterized cases from New York, Nevada, and Connecticut as "irrelevant to the application of…well-established [California] authority." (ASUF ¶ 51; ECF No. 22-1, Ex. F.) PIIC, thus, represented that California law controlled the pollution-exclusion analysis. PIIC nowhere stated that Minnesota law applies or cited a single Minnesota case. This is hardly "misleading." (Pg. 33.) PIIC's pre-litigation conduct is highly relevant. *Emps. Reins. Co. v. Superior Court*, 161 Cal. App. 4th 906, 921 (2008) ("[t]he conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions."). The Court should rule that California law applies.

### C.     PIIC's Pollution Exclusion Does Not Eliminate Its Duty to Defend.

#### 1.     *MacKinnnon Applies to PIIC's Total Pollution Exclusion.*

PIIC "acknowledges the California Supreme Court's interpretation of the Absolute Pollution Exclusion in *MacKinnon*," but nevertheless suggests that *MacKinnon* does not apply to its "Total Pollution Exclusion." (Pg. 34.) PIIC further argues that "Cambria's Opposition ignores this distinction [between "Absolute" and "Total"] entirely, and instead tries to analogize cases involving entirely different pollution exclusions." (*Id.*)

None of this is true. As Cambria explained in footnote 9 (pg. 25), "*MacKinnon* applies to the Total Pollution Exclusion," as held in *Great Am.*, 2012 WL 13018550, *3, and *EFK Invs.*, 2014 WL 4802920, *5. "*MacKinnon* and its progeny controls" because the exclusions use the same terms and are "materially identical." *Great Am.*, 2012 WL 13018550, *3. PIIC does not cite a single case to support the argument that *MacKinnon's* traditional-environmental-pollution standard does not apply to PIIC's exclusion. Even PIIC's oft-cited case, *Garamendi*, applied *MacKinnon's* standards to the "Total Pollution Exclusion." 127 Cal. App. 4th at 485. So did *American Zurich*, 2014 WL 11430928, at *6. And so did *National Foam*, 768 F. Supp. 3d at 1017–18.

PIIC's attempts to avoid *MacKinnon* strain all credibility. *MacKinnon* supplies the controlling legal standards governing application of PIIC's pollution exclusion.

#### 2.     *The Mechanism of Harm At Issue In the Underlying Bodily Injury Lawsuits Is Not Traditional Environmental Pollution.*

Cambria argued in its opening brief that the mechanism of harm alleged in the Bodily Injury Lawsuits—direct exposure through the fabrication and installation of Cambria's countertop

43

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

products—is not traditional environmental pollution, relying on *MacKinnon* and *National Foam*. (Pgs. 2-3, 26-27.) PIIC's only response is that in *National Foam*, "firefighters were allegedly injured as a result of exposure to National Foam's *finished product*, PFAS-containing foam." (Pg. 37 (emphasis in original).) But that is no difference. When Cambria's quartz slabs leave Cambria's possession and are shipped to third parties around the country, they *are* Cambria's finished product; that is what PIIC's completed-operations coverage refers to. Moreover, when Cambria manufactures and distributes the quartz slabs, they are sold with silica and other ingredients fully confined therein. The fabrication and installation of Cambria's product is necessary to its intended and beneficial end use as a countertop, like the fire-fighting foam in *National Foam* and the use of pesticide to kill bees in *MacKinnon*.

> ### 3. PIIC Cannot Establish Widespread Dispersion, and the Confined Exposures to Silica, Metals and/or VOCs Are Not Traditional Environmental Pollution.

PIIC first argues that "widespread dissemination of silica dust is not required" for the underlying exposures to be traditional environmental pollution. (Pg. 38.) PIIC is wrong on the law. *MacKinnon* explained that the exclusion, in context, should be interpreted to mean the wide spread of pollution, rather than confined exposures. 31 Cal. 4th at 651 (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178 (6th Cir. 1999) and agreeing that pollution exclusions should not apply to "localized toxic injury occurring in the vicinity of intended use").

Contrary to PIIC's arguments, courts applying *MacKinnon* routinely consider whether the underlying litigation is about alleged "widespread" environmental pollution. *See Cold Creek Compost, Inc. v. State Farm & Fire Cas.*, 156 Cal. App. 4th 1469, 1480 (2008) (odors which "spread a mile and a half to the plaintiffs' homes" were a "'substantial dissemination'…ordinarily understood as a 'dispersal of pollutants' into the environment"); *Villa Los Alamos,* 198 Cal. App. 4th at 540 (applying pollution exclusion to widespread release of asbestos throughout three-story apartment complex, its exterior grounds, and adjacent streets); *American Zurich*, 2014 WL 11430928, at *5 (distinguishing *Garamendi* based on "widespread dissemination of silica" and holding "confined releases" in the demolition-business context were not environmental pollution).

PIIC cites *American Casualty Co. of Reading, PA v. Miller*, 159 Cal. App. 4th 501 (2008), for its argument that the nature and degree of dispersion is immaterial. But *Miller* holds no such thing. In *Miller*, the court found that the insured's "release of methylene chloride *into the public sewer system* [was] an event commonly thought of as environmental pollution," rejecting the argument that dispersion of methylene chloride was confined because the sewer was allegedly

44

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

sealed. *Id.* at 516 (emphasis added). The facts in *Miller* are nothing like the facts in this case, involving occupational exposure in a confined workplace. PIIC's reliance on *Miller* is misplaced.

Here, PIIC cannot meet its burden to establish widespread dispersion of silica, metals, and/or VOCs. Widespread dispersion of silica, metals, and/or VOCs is *not* alleged in the underlying complaints. (ASUF ¶ 46.) PIIC makes no showing of this. To the contrary, the underlying Bodily Injury Lawsuits allege that stone fabrication is performed by "[l]ocal workers, mostly immigrants, typically working in small shops." (ASUF ¶ 42.) In response, PIIC characterizes these references as "background into the industry as to common work environments." (ASUF ¶ 42.) But PIIC is not the arbiter of which allegations are relevant to its duty to defend and which allegations can be cast aside as insignificant "background." It is no inferential leap to interpret the complaints as alleging that the underlying plaintiffs themselves fabricated stone and were injured in the same settings that were, in the words of PIIC, "common work environments" in the industry. In context, it is obvious that plaintiffs have included these allegations to support their claims of lung injuries in the course of their fabrication work in confined spaces.

In addition to allegations of fabrication work in small shops, the complaints allege that the plaintiffs sustained bodily injuries in the course of installing the countertops, a fact PIIC concedes. (Pg. 34.) The underlying Bodily Injury Lawsuits clearly allege that the installation work took place in the residential bathrooms and homes of kitchens. (ASUF ¶ 42.) These too are confined and isolated spaces which do not comport with exposure via environmental pollution.

Ultimately, the controlling standards governing PIIC's duty to defend require the Court to analyze the underlying complaints for whether there is a *possibility of coverage*, with reasonable inferences drawn in favor of coverage. *Pulte Home Co., LLC v. HDI Glob. Specialty SE*, No. CV 24-2191-JFW(PDX), 2025 WL 2074556, *4 (C.D. Cal. July 1, 2025) ("In determining if a duty to defend is triggered, the allegations of the complaint in the underlying action are broadly construed in favor of coverage."); *Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc.*, 207 Cal. App. 4th 969, 978 (2012) ("The underlying claims may trigger a duty to defend if the conduct for which the policies provide coverage is charged by implication…."). PIIC's attempts to dismiss the complaints' allegations of injury in small, confined shops and residential spaces must be rejected.

Finally, even if there were ambiguity in the underlying pleadings, it is then PIIC's burden to establish conclusively, with undisputed evidence, that there was, *in fact*, widespread dispersion. *Itzhaki*, 536 F. Supp. 3d at 655. Here, PIIC has not introduced any factual evidence from the underlying Bodily Injury Lawsuits regarding widespread dispersion of the three alleged pollutants (silica, metals, and VOCs). PIIC cannot meet its burden to establish that its pollution exclusion

45

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

conclusively eliminates coverage. *Horace Mann*, 846 P.2d at 797 (duty to defend is "established" where fact issues preclude summary judgment for the insurer).

### 4.     Silica Is Not a Pollutant Under Environmental Law.

PIIC argues that silica, metals, and VOCs are each traditional environmental pollutants based on certain OSHA regulations. (Pg. 36.) PIIC's argument fails.

*First*, the laws and regulations *MacKinnon* focused on were environmental, "anti-pollution laws," including "the Clean Air Act," "CERCLA," and the laws enacted between 1966 and 1980, which led to an "'explosion' in *environmental* litigation." 31 Cal. 4th at 643, 645, 653 (emphasis in original). The insurance industry did not create the pollution exclusion in response to OSHA rules. It was created to bar coverage for traditional environmental pollution.

Anti-pollution laws and OSHA rules are different. OSHA regulates a broad number of workplace hazards and issues, including things like fall hazards, 29 CFR § 1926.501, control of rodents and insects, *id.* § 1910.141(a)(5), availability of lavatories, *id.* § 1910.141(d)(2), drinkable water, *id.* § 1910.141(b)(1), and much more. There is nothing in *MacKinnon* to suggest that OSHA regulation is relevant, or controlling. Indeed, the nature of federal and state workplace-safety regulation is so wide-ranging that using it to try to categorize a potential hazard as a "pollutant" is irreconcilable with *MacKinnon's* fundamental rejection of the argument that anything that causes harm can be a "pollutant." 31 Cal. 4th at 652–53, 655.

*Second*, PIIC is wrong on the law, in suggesting that OSHA regulation of a substance makes it a pollutant.[16] While the question of whether a substance is regulated by environmental, anti-pollution laws is a relevant factor in the analysis, PIIC's framing of the analysis as a function of OSHA regulation goes too far. Under *MacKinnon*, California courts analyze the mechanism of harm at issue and ask whether a layperson would consider it to be traditional environmental pollution. *See National Foam*, 768 F. Supp. 3d at 1017("[I]t does not follow that all harms caused by PFAS are a type of pollution"); *Garamendi*, 127 Cal. App. 4th at 486 ("the mere fact that silica, like almost anything else, may be an irritant…under some circumstances is not dispositive").

### 5.     PIIC's Caselaw Does Not Establish that Silica, Metals, and VOCs Are Environmental Pollutants.

PIIC continues to double down on *Garamendi* in support of its position that the underlying plaintiffs' alleged exposure to silica constitutes harm from environmental pollution. But PIIC has

---

[16] PIIC's OSHA citations are not compelling. PIIC's citation to a 2016 Cal/OSHA regulation is misplaced given that PIIC's policies were issued 15 years earlier. PIIC's reference to an earlier Cal/OSHA regulation regarding use of tools on concrete or masonry is irrelevant too. PIIC cites nothing on point regarding all of the metals and VOCs alleged to have caused harm. (*See, e.g.*, RJN, Ex. 70 ¶¶ 93 (listing metals), 94 (listing VOCs).)

46

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

no answer for why *Garamendi's* coverage ruling should apply when *Garamendi* applied an abuse-of-discretion standard which gave substantial deference to the liquidation trustee's claim decisions and left the court with a "limited scope of inquiry into the liquidation trustees' grounds for rejecting claims…." 127 Cal. App. 4th at 484. PIIC does not even try to contest that the standard of review in *Garamendi* is the *opposite* of the duty-to-defend standards that apply here, under which any doubts about the existence of the duty to defend must be construed in Cambria's favor.

PIIC also has no answer for *American Zurich*, which faithfully applied *MacKinnon* to conclude that confined releases of silica dust in the context of demolition work at a Boeing facility did not constitute traditional environmental pollution. 2014 WL 11430928, *5. *American Zurich* rightly held that *Garamendi* dealt with "widespread dissemination of silica dust" and, thus, was "materially different because [its] facts reflect[ed] a situation where dust clouds from construction-related activities could be thought of as traditional pollution." *Id.* The underlying allegations at issue in this case are much closer to *American Zurich* than *Garamendi*.

PIIC relies on two traditional environmental pollution cases, *Ortega Rock Quarry v. Golden Eagle Ins.*, 141 Cal. App. 4th 969, 985 (2006), and *Monarch Greenback, LLC v. Monticello Ins. Co.*, 118 F. Supp. 2d 1068 (D. Idaho 1999), for the proposition that metals constitute pollutants. But both cases are easily distinguishable from the facts of this case. *Ortega* was about whether a quarry operator's insurance covered an order issued by the Environmental Protection Agency (EPA) after the operator discharged fill material into Lucas Canyon Creek in violation of the Clean Water Act. 141 Cal. App. 4th at 974, 981 ("dirt and rocks are pollutants within the meaning of the Clean Water Act when placed in waters of the United States"). Similarly, in *Monarch*, a mining company sought coverage for an EPA action under CERCLA based on the failure of an impoundment and the release of a large volume of mining waste onto land owned by the U.S. Forest Service. 118 F. Supp. 2d at 1070. *Monarch* too involved traditional environmental pollution. *Id.* at 1080 (finding that mining waste was a "hazardous substance[]" under CERCLA). *Monarch* also applied Idaho law, which does not use *MacKinnon's* traditional-environmental-standard. The alleged injuries at issue here are not injuries in connection with traditional environmental pollution like that in *Ortega* and *Monarch*.

The only case PIIC cites for the proposition that VOCs are excluded pollutants is *American Coatings Assn., Inc. v. South Coast Air Quality District*, 54 Cal. 4th 446 (2012). (Pg. 35.) But *American Coatings* is not even an insurance case, much less a pollution-exclusion case. *American Coatings* is an administrative-law case about the rule-making authority of the South Coast Air Quality Management District. *American Coatings* is far afield and does nothing to support PIIC's

47

unsupported contention that the alleged injuries from VOCs in the confined, indoor context of stone-fabrication workplace constitute harm from environmental pollution.

Ultimately, to obtain summary judgment on the duty to defend, PIIC would have to establish that *all three* categories alleged to have caused bodily injuries (silica, metals, VOCs) are what a layperson would consider to be traditional environmental pollutants. *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) ("California courts have repeatedly found that remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty"); *Health Net*, 206 Cal. App. 4th at 263. PIIC fails to do so here.

### 6.    PIIC's Products-Completed Operations Coverage Is Highly Relevant.

PIIC argues that its promise of "Products/Completed Operations" coverage is irrelevant to the Court's interpretation of the pollution exclusion. (Pg. 37.) This is not correct.

It is true that parties may not "cherry-pick policy language." (Pg. 37.) Insurance contracts are interpreted as a whole. Applied here, this means the entire PIIC policy, *including* its products-completed operations coverage, and *including* its coverage for failure-to-warn claims, must be considered in a manner that is consistent with the reasonable expectations of Cambria. As *National Foam* emphasized, for the insurer to avoid coverage, the policy must "conspicuously, plainly, and clearly apprise" the insured that the pollution exclusion applies under the facts. 768 F. Supp. 3d at 1017. Under *MacKinnon*, the Court must "put itself in the position of a layperson and understand how he or she might reasonably interpret the exclusionary language." 31 Cal. 4th at 649.

Here, PIIC fully understood that Cambria manufactured quartz slabs and that it was insuring Cambria for products-liability risks associated with "STONE CUTTING/POLISHING." (ASUF ¶ 11.) PIIC's attempt to apply its pollution exclusion here would effectively eviscerate Cambria's products coverage. *National Foam*, 768 F. Supp. 3d at 1017-1018 ("National Foam purchased insurance policies to cover claims arising from [its] chemical products. Now the carriers effectively argue that all injuries caused by chemicals fall under the exception, raising the question of what, if anything, would be covered by the policy in the carriers' view."). Under the circumstances, no layperson or reasonable insured would interpret PIIC's pollution exclusion as barring coverage for bodily injuries allegedly resulting from allegedly deficient product warnings or exposure to the insured's quartz products when cut and installed for use as a countertop.

### 7.    PIIC's Argument About Other Insurance Is Baseless.

In a new and unsupported argument, PIIC argues that Cambria could have purchased "pollution legal liability insurance, or similar insurance," which would have covered the risks at issue in the underlying Bodily Injury Lawsuits. (Pgs. 37-38.) This argument fails for many reasons.

48

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*First*, Cambria had no reason to purchase different coverage for the products-liability risks at issue in the Bodily Injury Lawsuits. It bought products-completed operations coverage from PIIC, and the pollution exclusion in PIIC's policies does not preclude coverage.

*Second*, the question here is whether *PIIC's policies* require PIIC to defend. Even if PIIC's unsupported argument that additional coverage could have been purchased were substantiated (it is not), that has no bearing on how PIIC's insurance contracts apply under California insurance law.

*Third*, PIIC's argument is completely lacking in valid evidentiary support. Proving the insurance that could have been available to Cambria between 2000–2002 would require an expert to testify to what was available in the market 25 years ago and how such insurance would have applied. PIIC has never disclosed such evidence. PIIC cites to an internet article about environmental insurance. (Pg. 38.) But the unauthenticated article (like the New York complaint allegations PIIC also cites) is obviously hearsay. Even if it were not, the forms of environmental insurance mentioned therein say nothing about silica, metals, and/or VOCs.

*Finally*, PIIC's new argument is waived because it is raised for the first time in PIIC's reply. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

## XII.    PIIC'S CONCLUSION

For the above reasons, PIIC has no duty to defend or indemnify Cambria for the claims at issue in the Silica Lawsuits under the PIIC Policies.  PIIC therefore respectfully requests that this Court grant its Motion for Summary Judgment in its entirety.  In the alternative, PIIC requests that this Court grant it partial summary judgment on any one or more of the issues addressed in this Motion.

## XIII.    CAMBRIA'S CONCLUSION

Cambria respectfully requests that the Court deny PIIC's motion and grant Cambria partial summary judgment on the duty to defend.

## XIV.    PIIC'S OPPOSITION/REPLY CONCLUSION

For the reasons set forth in PIIC's Motion and herein, summary judgment should be entered in its favor.  In the alternative, PIIC requests that this Court grant it partial summary judgment on any one or more of the issues addressed in its Motion and herein.

## XV.    CAMBRIA'S SUR-REPLY - CONCLUSION

Cambria respectfully requests that the Court deny PIIC's motion and grant Cambria partial summary judgment on the duty to defend.

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

Dated:  June 12, 2025                **TRESSLER LLP**

By:*/s/ Linda Bondi Morrison*
Linda Bondi Morrison
Samantha K. Shafer
*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*
Respectfully submitted,

Dated:  July 3, 2025                **MASLON LLP**

By:*/s/ Bryan R. Freeman*
Bryan R. Freeman
Judah A. Druck
*Attorneys for Plaintiff*

Respectfully submitted,

Dated:  July 17, 2025                **TRESSLER LLP**

By:*/s/ Linda Bondi Morrison*
Linda Bondi Morrison
Samantha K. Shafer
*Attorneys for Defendant*
*Philadelphia Indemnity Insurance Company*

Dated:  July 31, 2025                **MASLON LLP**

By:*/s/ Bryan R. Freeman*
Bryan R. Freeman
Judah A. Druck
*Attorneys for Plaintiff*

PHILADELPHIA INDEMNITY INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT