Linda Bondi Morrison, Esq., (SBN 210264)
lmorrison@tresslerllp.com
Erfan Samsam Shariat, Esq. (SBN 320330)
eshariat@tresslerllp.com
TRESSLER LLP
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone: (949) 336-1200
Facsimile: (949) 752-0645

Attorneys for Defendant,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CAMBRIA COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY.<br><br>Defendant. | Case No.: 2:24-cv-01913- MEMF-MRW<br>Assigned to:<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT PHILADELPHIA INDEMNITY COMPANY'S MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE, DEFENDANT'S REQUEST FOR INTERLOCUTORY CERTIFICATION OF THE ORDER PURSUANT TO 28 U.S.C. § 1292(b) (AND STAY) OR, IN THE FURTHER ALTERNATIVE, FOR PARTIAL FINAL JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b) (AND STAY)**<br><br>**Date:      May 14, 2026**<br>**Time:      10:00 a.m.**<br>**Dept:      Courtroom 8B, 8th Floor**<br><br>[Filed Concurrently with [Proposed] Order] |

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 14, 2026, at 10:00 a.m. or as soon thereafter as may be heard by the Honorable Maame Ewusi-Mensah Frimpong in Courtroom 8B of the above-entitled Court located at 350 West First Street, 8th Floor, Los Angeles, California 90012, Defendant Philadelphia Indemnity Insurance Company ("PIIC") will and hereby respectfully moves the Court, pursuant to L.R. 7-18, for reconsideration of its Order of March 17, 2026 Denying Defendant's Motion for Summary Judgment, and Granting in Part Plaintiff's Motion for Summary Judgment ("Order") (Dkt. No. 94).  This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 24, 2026, during which PIIC and Cambria Company LLC were not able to reach an agreement.

In the alternative, PIIC seeks that this Court grant interlocutory certification of the Order pursuant to 28 U.S.C. § 1292(b) (and stay) or, in the further alternative, for partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) (and stay).

Respectfully submitted,

Dated: March 31, 2026        **TRESSLER LLP**

By: */s/ Linda Bondi Morrison*
    Linda Bondi Morrison
    Erfan Samsam Shariat
    *Attorneys for Defendant*
    *Philadelphia Indemnity Insurance Company*

i

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE
COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE
INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.     STATEMENT OF FACTS ............................................................................3

III.     LEGAL STANDARD....................................................................................4

IV.     ARGUMENT ................................................................................................5

      A.      The Order Relies on Facts Not in the Record ......................................5

      B.      The Order Overlooks Facts Regarding Minnesota-Specific Policy Provisions Beyond Automobile Insurance Provisions.........................7

      C.      The Choice-of-Law Analysis Must Focus on the Insurance Contracts Between PIIC and Cambria – Not the Underlying Tort Actions........10

      D.      The Order Overlooks Material Facts and Authority Regarding the Nature and Scope of the Pollution Exclusion in the Policies .............11

      E.      *Villa Los Alamos* Is Controlling Authority Applying a TPE and Was Not Addressed in the Order ..............................................................12

      F.      In the Alternative, PIIC Requests That the Court Certify the Choice of Law and TPE Questions for Immediate Appellate Review Pursuant to 28 U.S.C. § 1292(b) ........................................................13

           1.      The Issues Presented Are Controlling Questions of Law.........14

           2.      Substantial Grounds Exist For Difference of Opinion Regarding the Issues Presented for Certification ......................................17

           3.      An Immediate Appeal Will Materially Advance the Underlying Litigation...............................................................................19

      G.      In the Further Alternative, PIIC Requests That This Court Enter Partial Final Judgment on the Duty to Defend Under FRCP 54(b)....21

      H.      The Court Should Stay the Litigation During the Appeal ...................23

V.     CONCLUSION.........................................................................................24

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

# TABLE OF AUTHORITIES

## CASES

*ALPS Prop. & Cas. Ins. Co. v. Merdes & Merdes*, PC,
2015 WL 13386893 (D. Alaska Apr. 27, 2015) ..................................................23

*Arno v. Club Med Inc.*,
22 F.3d 1464 (9th Cir. 1994)...............................................................................17

*Association of Irritated Residents v. Fred Schakel Dairy*,
634 F. Supp. 2d 1081 (E.D. Cal. 2008)................................................................19

*Atel Fin. Corp. v. Quaker Coal Co.*,
321 F.3d 924 (9th Cir. 2003).............................................................................14

*Atkins, Kroll (Guam), Ltd. v. Cabrera*,
277 F.2d 922 (9th Cir. 1960)............................................................................22

*Biederman v. FCA US LLC*,
No. 23-cv-06640-JSC, 2025 WL 1266907 (N.D. Cal. May 1, 2025)...................20

*Casas v. Victoria's Secret Stores, LLC*,
No. CV 14-6412-GW(VBKX), 2015 WL 13446989 (C.D. Cal. Apr. 9, 2015)16, 21

*Cold Metal Process Co. v. United Eng'g & Foundry Co.*,
351 U.S. 445, 452, 76 S.Ct. 904, 100 L.Ed. 1311 (1956)....................................22

*Collins v. Promark Products, Inc.*,
956 F.2d 383 (2d Cir. 1992)..............................................................................15

*Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*,
819 F.2d 1519 (9th Cir. 1987).............................................................................21

*Continental Ins. Co. v. Del Astra Indus., Inc.*,
811 F. Supp. 1410 (N.D. Cal. 1993) ...................................................................23

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)..............................................................................17

*Falco v. Nissan N. Am. Inc.*,
108 F. Supp. 3d 889 (C.D. Cal. 2015) .................................................................17

*Flack v. Nutribullet, L.L.C.*,
No. 218CV05829DDPSSX, 2019 WL 2568393 (C.D. Cal. June 21, 2019) ..16, 20

*Frontier Oil Corp. v. RLI Ins. Co.*,
153 Cal. App. 4th 1436 (2007) ..........................................................................18

*Galilea, LLC v. AGCS Marine Ins. Co.*,
No. CV 15-84-BLG-SPW, 2016 WL 1328920 (D. Mont. Apr. 5, 2016)............16

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

*Garamendi v. Golden Eagle Ins. Co.,*
   127 Cal. App. 4th 480 (2005) ...........................................................2, 3, 12, 13, 18

*Gunderson v. Fire Ins. Exchange,*
   37 Cal. App. 4th 1106 (1995) ...............................................................................6

*Helman v. Alcoa Global Fasteners Inc.,*
   2009 WL 2058541 (C.D. Cal. June 16, 2009) .....................................................14

*Helman v. Alcoa Global Fasteners Inc.,*
   637 F.3d 986 (9th Cir. 2011).................................................................................14

*Hoffman v. Citibank (South Dakota), N.A.,*
   546 F.3d 1078 (9th Cir. 2008).................................................................................15

*Hudson Ins. Co. v. Miller,*
   2016 WL 8709994 (D. Nev. Dec. 16, 2016).........................................................23

*Hurley Constr. Co. v. State Farm Fire & Cas. Co.,*
   10 Cal. App. 4th 533 (1992) ...................................................................................6

*In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1982)....................................................................13, 14, 20

*Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.,*
   441 F. Supp. 3d 1016 (S.D. Cal. 2020).......................................................12, 13, 25

*Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.,*
   727 F. Supp. 2d 887 (E.D. Cal. 2010)....................................................................23

*MacKinnon v. Truck Insurance Exchange,*
   73 P.3d 1205 (Cal. 2003) ...........................................................2, 3, 11, 12, 13, 25

*Mauia v. Petrochem Insulation, Inc.,*
   No. 18-cv-01815-THE, 2020 WL 1031911 (N.D. Cal. Mar. 3, 2020)..................20

*McFarlin v. Conseco Servs., LLC,*
   381 F.3d 1251 (11th Cir. 2004)..............................................................................16

*Montrose Chem. Corp. v. Admiral Ins. Co.,*
   10 Cal. 4th 645 (1995) ...........................................................................................20

*Mull v. Motion Picture Indus. Health Plan,* LA CV 12-06693-VBF,
   2019 WL 6655389 (C.D. Cal. July 12, 2019).........................................................5

*Pakootas v. Teck Cominco Metals, Ltd.,*
   905 F.3d 565 (9th Cir. 2018)...................................................................................22

*Reese v. BP Expl. (Alaska) Inc.,*
   643 F.3d 681 (9th Cir. 2011)............................................................................17, 19

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE
COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE
INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

*Rollins v. Dignity Health*,
 No. 13-cv-01450-THE, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014 .........17, 20

*Roth v. Foris Ventures, LLC*,
 No. 21-cv-04288-YGR, 2022 WL 21777087 (N.D. Cal. Aug. 19, 2022)............20

*Schoenberg v. Exportadora de Sal, S.A. de C.V.*,
 930 F.2d 777 (9th Cir. 1991)................................................................................15

*SEC v. Mercury Interactive, LLC*,
 No. 07–CV–JF, 2011 U.S. Dist. LEXIS 38127 (N.D. Cal. Apr. 7, 2011)............21

*Sheehan v. Atlanta Int'l Ins. Co.*,
 812 F.2d 465 (9th Cir. 1987)................................................................................22

*State of New Mexico v. Aamodt*,
 537 F.2d 1102 (10th Cir. 1976).............................................................................15

*Steering Comm. v. United States*,
 6 F.3d 572 (9th Cir. 1993)...............................................................................14, 16

*Stein v. Farmers Ins. Co. of Arizona*,
 734 F. Supp. 3d 1021 (S.D. Cal. 2024)..................................................................18

*Texaco, Inc. v. Ponsoldt*,
 939 F.2d 794 (9th Cir. 1991).............................................................................21, 22

*The Pep Boys Manny Moe & Jack of California v. Old Republic Insurance Company*,
 98 Cal. App. 5th 329 (2023) .................................................................................18

*United States v. Adam Bros. Farming, Inc.,*
 369 F. Supp. 2d 1180 (C.D. Cal. 2004) ...............................................................24

*Villa Los Alamos Homeowners Ass'n. v. State Farm,*
 198 Cal. App. 4th 522 (2011) ..................................................2, 3, 12, 13, 18, 25

*Wood v. GCC Bend, LLC*,
 422 F.3d 873 (9th Cir. 2005)................................................................................22

*Zenith Ins. Co. v. Newell*,
 No. CV 20-3878, 2023 WL 8773635 (E.D. Pa. Dec. 19, 2023).........................23

*Zurich Ins. Co. v. Smart & Final Inc.*,
 996 F. Supp. 979 (C.D. Cal. 1998) ......................................................................22

**S<small>TATUTES</small>**

Cal. Civ. Code § 1646............................................................1, 3, 13, 14, 15, 17, 18

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

**RULES**

C.D. Cal. L.R. 7-18 (2024) ................................................................................. 1, 5

Fed. R. Civ. P., Rule 54(b) ....................................................... 3, 21, 22, 23, 25

Fed. R. Civ. P., Rule 59 ................................................................................... 4, 5

Fed. R. Civ. P., Rule 59(e) ................................................................................... 5

Fed. R. Civ. P., Rule 60 ................................................................................... 4, 5

Fed. R. Civ. P., Rule 60(b) ................................................................................... 5

# MOTION FOR RECONSIDERATION

## I. INTRODUCTION

On March 17, 2026, this Court issued an Order denying Philadelphia Indemnity Insurance Company's ("PIIC") Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.  The Court based its decision primarily on two findings.  First, the Court applied the governmental interest choice-of-law test rather than California Civil Code section 1646, concluding that "California has a stronger interest in application of its laws," and PIIC had not established a factual record of the parties' expectations that "another jurisdiction's laws would control."  Second, the Court determined that PIIC "has not met its burden to establish that the Total Pollution Exclusion completely bars coverage," reasoning that whether something is "traditional environmental pollution" may depend on case-specific facts.

PIIC now brings this Motion for Reconsideration under Local Rule 7-18 (c) because the Court's Order denying PIIC's Motion for Summary Judgment (Dkt. No. 94, Mar. 17, 2026) (the "Order") relied on the assumption of facts not in evidence, overlooked material facts in the record, and did not address controlling California authority cited by PIIC that is relevant to the overlooked material facts.  The Order's choice-of-law and duty-to-defend rulings rest on assumptions that (a) Cambria Company LLC's ("Cambria") "products appear to have been sold [in California]," (b) Cambria's "conduct" occurred in California, and (c) Cambria's "contracts" were not confined to Minnesota, leading the Court to conclude that "the state in which the particular risk is involved is California." Order at 13–15.  However, Cambria did not allege and presented no evidence whatsoever to support that its products were actually sold in California, that it had entered any contracts for sale of its products in California, or that it entered into contracts with any entities outside of the state of Minnesota, let alone California, prior to or during the policy periods.  To the contrary, it is undisputed that Cambria did not register to do business in California

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

until 2011, nine years after the expiration of the PIIC policies.  Joint Statement of Uncontroverted Facts ("JSUF") ¶ 9.

As such, the Court's conclusions regarding Cambria's purported California contracts, sales, and conduct are speculative and unsupported by the record, and these factual errors materially influenced both the Court's choice-of-law analysis and the duty-to-defend ruling.  The Order also overlooks numerous Minnesota-specific policy provisions beyond those related to automobile insurance coverage that directly bear on the parties' expectations as to the place of performance.  Finally, the Order also does not address the fact that PIIC's policies' broader pollution exclusion, the Total Pollution Exclusion ("TPE"), is distinct from the Absolute Pollution Exclusion ("APE") at issue in *MacKinnon v. Truck Insurance Exchange*, 73 P.3d 1205, 1210 (Cal. 2003).

These factual assumptions and oversights materially affected the Court's analysis, which did not address *Villa Los Alamos Homeowners Ass'n. v. State Farm,* 198 Cal. App. 4th 522, 539 (2011), and did not address the fact that *Garamendi v. Golden Eagle Ins. Co.,* 127 Cal. App. 4th 480 (2005) concluded that the TPE, the form of the pollution exclusion contained in the PIIC Policies, was a much broader exclusion than the APE.  Both decisions applied the broader TPE at issue here to bar coverage for, respectively, silica-containing dust and asbestos-containing dust.  Moreover, *Villa Los Alamos* applied the TPE to bar coverage for "pollutants" dispersed in a confined localized space and did not require a "widespread dissemination" of the asbestos-containing dust.

Local Rule 7-18(c) authorizes reconsideration upon "a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." That standard is met here.  PIIC respectfully requests that the Court: (1) vacate and reconsider all portions of the Order premised on assumed facts not supported by the record, including unsupported inferences regarding Cambria's sales, contracts, and conduct in California, and the conclusion that "the state in

which the particular risk is involved is California"; and (2) re-evaluate the choice-of-law and duty-to-defend analyses on the existing record, including the provisions in the PIIC policies that clearly support that Minnesota is the state with the paramount interest in having its own law applied to this dispute, and the application of the TPE, as distinguished from the APE addressed in *MacKinnon*, and in light of the controlling authority in *Garamendi* and *Villa Los Alamos*.[1]

In the alternative, PIIC respectfully requests that the Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Certification is warranted because the choice of law and TPE issues present controlling questions of law on which substantial grounds for difference of opinion exist, and an immediate appeal will materially advance resolution of this case.  In the further alternative, PIIC requests that the Court enter partial final judgment on the duty to defend under Federal Rule of Civil Procedure 54(b) ("FRCP 54(b)"), enabling appellate review of these foundational questions.

Interlocutory appeal is particularly appropriate here. This case presents difficult legal questions that – if reversed on appeal – would substantially narrow or eliminate this litigation, so there is no just reason for delay.  The Order rests on purely legal questions that other courts have resolved differently.  Because the remaining issues in the case will likely be stayed pending resolution of the underlying litigation, an appeal now will expedite resolution rather than delay it. PIIC also respectfully requests a stay of this action pending appeal.

## II.    <u>STATEMENT OF FACTS</u>

At the time it applied for the PIIC policies, and during the policy periods, Cambria was based in Minnesota.  (JSUF ¶¶ 1-2, 8-9, 18, 19, 20-23; Declaration of

---

[1] By addressing the material facts to be considered in the performance of a governmental interest test to determine choice of law, PIIC does not concede that the governmental interest test is the appropriate test to determine choice of law under California law, and does not waive and expressly reserves its right to argue that a Section 1646 analysis is the proper test.  PIIC seeks reconsideration of the Court's Order based on facts material to a governmental interest test, as this Court has determined to apply that test.

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

Ann Conroy in Support of Defendant PIIC's Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ¶ 4) ("Conroy Transfer Decl."). Cambria was not registered to do business in California until 2011, nine years after PIIC's policies expired. (Order at 14-15; JSUF ¶¶ 1, 8-9). PIIC issued to Cambria two primary CGL policies effective 11/20/2000–11/01/2001 and 11/01/2001–11/01/2002 (the "Policies"), and two Commercial Excess Liability policies effective 11/20/2000–11/01/2001 and 11/01/2001–11/01/2002. (Order at 6; JSUF ¶¶ 1–5). The Policies contain a TPE that bars coverage for bodily injury that "would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants" at any time." (Order at 6-7; JSUF ¶¶ 4–5, 21–22). "Pollutants" means "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste…" (Order at 7; JSUF ¶ 5).

The Policies list only Minnesota addresses and premises, and include numerous "Minnesota Changes" endorsements and other Minnesota-specific provisions beyond those of only automobile insurance coverage. (Order at 15; JSUF ¶ 1).

The JSUF and the Joint Additional Statement of Uncontroverted Facts ("ASUF") contain no evidence that Cambria conducted sales, entered into contracts, or engaged in any business conduct in California at the time of formation or during PIIC's 2000–2002 policy periods. (JSUF; ASUF). Cambria alleges only that the slabs it presently manufactures are shipped "around the country." (Order at 6; ASUF ¶ 3).

## III.   LEGAL STANDARD

Motions for Reconsideration are generally governed by Rules 59 and/or 60 of the Federal Rules of Civil Procedure. Rule 59, which allows a party to alter or amend a judgment, states in pertinent part that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed.

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

R. Civ. P. 59(e). Rule 60, which allows a party to seek relief from a judgment or order, provides in pertinent part that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons" which include, but are not limited to, "mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; fraud; and/or any other reason that justifies relief. Fed. R. Civ. P. 60(b).

In this District specifically, Motions for Reconsideration are governed by Local Rule 7-18. Local Rule 7-18 is narrower than the standards for reconsideration under Rule 59 or 60. *Mull v. Motion Picture Indus. Health Plan*, LA CV 12-06693-VBF, 2019 WL 6655389, at *2 (C.D. Cal. July 12, 2019). The local rule provides in pertinent part that a "motion for reconsideration of the decision on any motion may be made *only* on the grounds of:

(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the moving party for reconsideration at the time of such decision, or

(b) the emergence of new material facts or a change of law occurring after the time of such decision, or

(c) a manifest showing of a failure to consider material facts presented to the Court before such decision. L.R. 7-18 .

## IV.   ARGUMENT

Reconsideration of the Court's March 17, 2026 Order is warranted because it relies on facts not supported by the record and overlooks material facts presented by PIIC. L.R. 7-18 (c) .

### A.   The Order Relies on Facts Not in the Record

Cambria did not allege and presented no evidence whatsoever to support that its products were actually sold in California, that it had entered any contracts for sale of its products in California, or that it entered into contracts with any entities outside

5

of the state of Minnesota, let alone California, prior to or during the policy periods. Notwithstanding, the Order's "particular risk" analysis relies on the Court's prior order denying PIIC's Motion to Transfer, in which the Court stated it "appear[ed]" that "the state in which the particular risk is involved is California, as that is where the defective product was sold…." Transfer Order at 13; Order at 15. That observation, however, was not supported by any facts and cannot displace the requirement of admissible evidence to support summary judgment.

The Order further reasons that it "does not logically follow" that Cambria's contracts would be confined to Minnesota. Order at 15. This reasoning again rests on an evidentiary gap, as the record contains no evidence of any contracts in any state prior to or during the 2000 to 2002 policy periods, let alone in California. Neither the JSUF nor the ASUF includes contracts, invoices, customer information, or any other proof that Cambria conducted business in California or with California entities prior to or during the policy periods. The undisputed record instead establishes that Cambria did not register to do business in California until 2011. JSUF ¶ 9. That is Cambria's only connection to California set forth in the factual record on summary judgment. This Court should not overlook the fact that Cambria presented no evidence whatsoever that connected it or the sale of its products to the state of California in or about the timeframe the PIIC policies were issued.

Cambria alleges only that, after its raw quartz stone slabs are manufactured, the slabs are shipped to distributors and fabricators "around the country." ASUF ¶ 3. That allegation, however, does not establish sales, contracts, or business conduct in any specific state, let alone California. A duty to defend may not be triggered by speculation of extrinsic facts, it must be grounded in facts actually alleged or known. *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995); *Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992). As such, the Order's findings that Cambria made sales, formed contracts, or engaged in conduct in California during the policy periods rest on speculation and reflect an

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

unsupported conclusion not grounded in the factual record.  Based on the factual record, it is Minnesota, and not California, which has the paramount interest in having its own laws applied to its own citizens and contracts entered into in its state.

**B.    <u>The Order Overlooks Facts Regarding Minnesota-Specific Policy Provisions Beyond Automobile Insurance Provisions</u>**

In footnote 5 of the Order, the Court appeared to have dismissed many of the Minnesota-specific provisions in the Policies by stating that "many… were in reference to automobile insurance coverage that PIIC provided." Order at 15 n.5. However, the Policies contain numerous Minnesota-specific provisions wholly unrelated to automobile coverage that support not only that Cambria could not have reasonably expected any other state's law to apply to interpret the provisions of the Policies, that the insured risks were in Minnesota, and that Minnesota and not California has the more compelling argument that its law should be applied.  Those provisions include the Declarations page with Cambria's Minnesota headquarters' address, the locations of additional insureds, Minnesota Changes forms, Cancellation and Nonrenewal provisions, Midterm Changes forms, and CGL endorsements. JSUF ¶ 1-2.  These provisions are material to the parties' reasonable expectations and to the place-of-performance analysis, yet it is not clear that the Court considered all of these provisions in rendering its Order.

The chart below shows the Minnesota-specific policy provisions and references to Minnesota in the primary Policies.  (Declaration of Ann Conroy ("Conroy Decl.") Exhibits; JSUF ¶ 1)

| # | Title/Description | Where Shown in Record |
|---|---|---|
| 1 | **PIIC Commercial Lines Policy Common Policy Declarations** <br> Policy No. PHPG124578 <br> Policy Period: 11/20/2000 to 11/01/2001 <br> • Minnesota Named Insured Mailing Address: <br> CAMBRIA COMPANY/FABSHOP BY CAMBRIA DAVIS FAMILY LLC <br> 620 NORTH MAIN STREET <br> LE SUEUR, MN 56058 | Conroy Decl. Ex. 1 at PIICMSJ0002 |

7

| 2 | **Locations Schedule** Policy No. PHPG124578 • 31496 CAMBRIA AVENUE, LE SUEUR, MN 56058 • 101 NORTH FRONT STREET ST PETER, MN 56082 | Conroy Decl. Ex. 1 at PIICMSJ0005 |
|---|---|---|
| 3 | **Additional Insured – Managers or Lessors of Premises** – Form: CG 20 11 01 96 • 31496 CAMBRIA AVENUE, LE SUEUR, MN 56058 • DAVIS FAMILY LLC (Incorporated in Minnesota) | Conroy Decl. Ex. 1 at PIICMSJ0024 |
| 4 | **MINNESOTA CHANGES** Form: CG2605 07 98 | Conroy Decl. Ex. 2 at PIICMSJ0061 |
| 5 | **MINNESOTA CHANGES** Form: CA0138 08 97 | Conroy Decl. Ex. 2 at PIICMSJ0104-105 |
| 6 | **MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL** Form: CA0218 06 98 | Conroy Decl. Ex. 2 at PIICMSJ0106-0108 |
| 7 | **MINNESOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE** Form: CA 21 24 09 97 | Conroy Decl. Ex. 1 at PIICMS0030-0034 |
| 8 | **MINNESOTA PERSONAL INJURY PROTECTION** Form: Commercial Auto CA 22 25 04 98 | Conroy Decl. Ex. 1 at PIICMS0035-0041 |
| 9 | **Midterm Change Document** Policy No. PHPG124578 • Minnesota Named Insured Mailing Address: CAMBRIA COMPANY/FABSHOP BY CAMBRIA DAVIS FAMILY LLC 620 NORTH MAIN STREET LE SUEUR, MN 56058 | Conroy Decl. Ex. 1 at PIICMS0042-0047 |
| 10 | **PIIC Commercial Lines Policy Common Policy Declarations** Policy No. PHPK014656 Policy Period: 11/01/2001 to 11/01/2002 • Minnesota Named Insured Mailing Address: CAMBRIA COMPANY/FABSHOP BY CAMBRIA DAVIS FAMILY LLC 620 NORTH MAIN STREET LE SUEUR, MN 56058 | Conroy Decl. Ex. 2 at PIICMSJ0049 |
| 11 | Locations Schedule Policy No. PHPK014656 Policy Period: 11/01/2001 to 11/01/2002 | Conroy Decl. Ex. 2 at PIICMSJ0051 |

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

| | | |
|---|---|---|
| | • 31496 CAMBRIA AVENUE, LE SUEUR, MN 56058<br>• 101 NORTH FRONT STREET ST PETER, MN 56082<br>• 11000 W. 78TH STREET, SUITE 220 EDEN PRAIRIE, MN 55343 | |
| 12 | **Additional Insured – Managers or Lessors of Premises**<br>Form: CG 20 11 01 96<br>• 31496 CAMBRIA AVENUE, LE SUEUR, MN 56058<br>• DAVIS FAMILY LLC (Incorporated in Minnesota) | Conroy Decl. Ex. 1 at PIICMSJ0024 |
| 13 | **MINNESOTA CHANGES - CANCELLATION AND NONRENEWAL**<br>Form: IL 02 45 08 00 | Conroy Decl. Ex. 2 at PIICMSJ0056-0058 |
| 14 | **MINNESOTA CHANGES**<br>Form: CG 26 05 07 98 | Conroy Decl. Ex. 2 at PIICMSJ0080 |
| 15 | MINNESOTA CHANGES<br>Form: CA0138 08 97 | Conroy Decl. Ex. 2 at PIICMSJ0092 |
| 16 | **MINNESOTA CHANGES – CANCELLATION AND NONRENEWAL**<br>Form: CA0218 06 98 | Conroy Decl. Ex. 2 at PIICMSJ0092 |
| 17 | **MINNESOTA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE**<br>Form: CA2124 09 97 | Conroy Decl. Ex. 2 at PIICMSJ0109 |
| 18 | **MINNESOTA PERSONAL INJURY PROTECTION**<br>Form: Commercial Auto CA 22 25 04 98 | Conroy Decl. Ex. 2 at PIICMSJ0114-120 |
| 19 | **MIDTERM CHANGE DOCUMENT**<br>ADDED ADDITIONAL INSURED/LOSS PAYEE:<br>• RIVER VALLEY TRUCK RENTAL & LEASING, 2120 THIRD AVENUE, SUITE 100, MANKATO, MN 56001<br>• RIVER VALLEY TRUCK RENTAL & LEASING, INC. P.O. BOX 758 MANKATO, MN 56002<br>• HERTHAUS HOMES, INC. 36512 271ST AVENUE LE SUEUR, MN 56058 | Conroy Decl. Ex. 2 at PIICMSJ0122-124, PIICMSJ0131 |

The Minnesota-specific provisions identified are illustrative of the numerous policy terms tying the parties' relationship and performance to Minnesota. Taken

9

together, and in contrast to the absence of any comparable references to operations, contracts, sales, or conduct in any other state during the policy periods, the Policies and the evidence permit no reasonable inference other than that the "performance of the contract" occurred in Minnesota and that Minnesota has the paramount interest in having its own laws applied.  In the absence of any demonstrated California-based conduct or interests by Cambria during the Policies' periods, it cannot be disputed that Minnesota has a greater interest in the application of its law to the Policies.

### C. The Choice-of-Law Analysis Must Focus on the Insurance Contracts Between PIIC and Cambria – Not the Underlying Tort Actions

In reconsidering its choice-of-law analysis, the Court should consider that the dispute before the Court is not a tort action between fabricators seeking redress for their alleged bodily injury claims and Cambria.  Rather, the dispute before the Court is a contract-interpretation dispute between PIIC and its former insured, Cambria.  Accordingly, the choice-of-law analysis, even under a governmental interest test, must focus on the insurer-insured relationship as it existed between 2000 and 2002 when the Policies were in effect rather than on claims brought twenty years after the Policies were issued.

Specifically, when choice of law is examined based upon insurance contracts, the Policies and record before this Court demonstrate that:

- Cambria's principal place of business at the time of underwriting was in Minnesota and PIIC evaluated and priced the Policies based on Cambria's Minnesota-centered operations. JSUF ¶¶ 1-2, 8-9, 18, 19, 20-23; Conroy Decl. Ex. 1 at PIICMSJ0002; Conroy Transfer Decl. ¶ 4;

- All Cambria-specific locations identified in the Policies are Minnesota locations. Order at 15; JSUF ¶ 1;

- The Policies contain multiple Minnesota-specific endorsements and forms. Order at 15; JSUF ¶ 1; and

- The Policies were issued through a Minnesota based insurance agent. Conroy Transfer Decl. ¶¶ 5-6.

Based on the above and lack of any connection whatsoever between the Policies and the State of California, along with no evidence of Cambria having done business in other states let alone in California at the time the Policies were issued, there is no factual basis for this Court finding that the location of any "particular risk" under the Policies was in California. The "particular risk" being insured in 2000 to 2002 was in Minnesota. Reconsideration of the Court's choice-of-law findings is therefore appropriate.

### D.    The Order Overlooks Material Facts and Authority Regarding the Nature and Scope of the Pollution Exclusion in the Policies

The Court's analysis of PIIC's pollution exclusion relied heavily on authority addressing an APE, which is a materially different pollution exclusion with a different analytical framework. In doing so, the Court overlooked the fact that a TPE is much broader in scope in comparison to an APE, as well as controlling California decisions applying the broader TPE. As such, the Court's analysis and findings regarding whether PIIC met its burden on summary judgement were affected.

The pollution exclusion at issue in *MacKinnon* was an APE, and it was applied in the context of residential pesticide spraying. The *MacKinnon* court focused on whether a reasonable policyholder would consider the negligent spraying of pesticides in an apartment to eradicate yellow jackets to be "traditional environmental pollution," and it analyzed the APE narrowly in that context. By contrast, PIIC's policy contains a TPE, which excludes coverage for bodily injury that "would not have occurred in whole or in part *but for*" the "discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The TPE is broader in scope and effect than the APE discussed in *MacKinnon*, both in its language and in the categories of risks it is designed to address. The distinction

11

between these two exclusions directly bears on how courts assess whether coverage is potentially available.

The Order did not address these material differences and instead employed *MacKinnon*'s APE-specific analysis to the evaluation of a TPE, without examining whether California courts have applied different analyses when interpreting the broader TPE.

**E.   *Villa Los Alamos* Is Controlling Authority Applying a TPE and Was Not Addressed in the Order**

The Order does not address *Villa Los Alamos, supra,* which applies the TPE at issue here.  In *Villa Los Alamos*, the Court of Appeal held that asbestos fibers released during the localized scraping of acoustical "popcorn" ceilings in a condominium building constituted environmental pollution, even though the release of the fibers began indoors, and the TPE applied to bar coverage. 198 Cal. App. 4th at 542.

*Villa Los Alamos* is significant for several reasons relevant here.  First, it confirms that pollution exclusions are not limited to classic outdoor or industrial pollution, and that a release originating indoors may still qualify as environmental pollution.  Second, although the facts of that case involve dispersal of asbestos into the surrounding environment, the court rejected the argument that pollution exclusions apply only when contaminants are "widely dispersed." *Id.* at 540.  There need not be a wholesale environmental degradation to constitute pollution.  *Id.* at 533.

Because *Villa Los Alamos* and *Garamendi* interpret and apply the proper exclusion at play here in contexts materially distinct from *MacKinnon*, they directly articulate the proper analysis and application of PIIC's pollution exclusion to the silica-related bodily injury claims at issue.  *See also, Kingsley Mgmt. Corp. v. Occidental Fire & Cas. Co.*, 441 F. Supp. 3d 1016 (S.D. Cal. 2020) (like *Garamendi*, distinguishing between the TPE and one similar to that at issue in

*MacKinnon* on the grounds that the "but for" language in the TPE should be read more broadly).  The Court's Order did not address the fact that the Policies contain TPEs, while the authority relied upon by this Court to limit application of the TPEs involved the more narrow APEs.

By analyzing the TPE through the lens of *MacKinnon*, not addressing *Villa Los Alamos* and not fully accounting for the fact that *Garamendi* and *Kingsley Mgmt. Corp.,* differentiate between the APE and the much broader TPE*,* the Order's evaluation of the TPE at issue here is incomplete.  The Order overlooked material differences in the policy language, scope, and purpose of the different pollution exclusions along with controlling authority.  Reconsideration is therefore warranted to address these distinctions.

**F.** **In the Alternative, PIIC Requests That the Court Certify the Choice of Law and TPE Questions for Immediate Appellate Review Pursuant to 28 U.S.C. § 1292(b)**

Under 28 U.S.C. § 1292(b), a party may petition a district court to amend an interlocutory order and certify such order for immediate appeal under certain conditions.  Specifically, a district court may certify an order for interlocutory appeal if: (1) the "order involves a controlling question of law"; (2) there is "substantial ground for difference of opinion"; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).  As discussed in the sections below, the Order meets all the elements necessary for section 1292(b) certification.

PIIC therefore respectfully requests that the Court certify the following controlling questions of law for immediate appeal under 28 U.S.C. § 1292(b):

1.    On the issue of the interpretation of an insurance policy, is the correct choice-of-law framework under California law California Civil Code section 1646 or the governmental interest test?

2.  Does California Civil Code section 1646 dictate application of Minnesota law where the policies were issued and delivered to Cambria at Cambria's headquarters in Minnesota and contain numerous references to Minnesota in the policy (and no references to California)?

3.  Does the governmental interest test dictate application of California law when: (a) the policies were issued and delivered in Minnesota to a Minnesota-based insured; (b) there is no evidence in the record that Cambria ever sold products or entered contracts in California (or did any business at all in California) during the policy periods or nine years after the policies expired; (c) the only evidence in the record of Cambria contracts involves Minnesota contracts; and (d) the policies plainly contemplate application of Minnesota law, referencing the state numerous times (and never referencing California)?

4.  Does the TPE in the policies mandate a finding of no duty to defend or indemnify the insured?

### 1.    The Issues Presented Are Controlling Questions of Law

The two overarching issues (choice of law and the TPE) both involve controlling questions of law whose resolution "could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.* "Under California law, the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003). The "controlling question of law" factor is most easily satisfied by a "pure legal question." *Steering Comm. v. United States*, 6 F.3d 572, 575-76 (9th Cir. 1993); *see also Helman v. Alcoa Global Fasteners Inc.*, 2009 WL 2058541, at *5 (C.D. Cal. June 16, 2009) (interlocutory appeal is "especially appropriate" for questions of law), aff'd, 637 F.3d 986 (9th Cir. 2011).

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

PIIC seeks certification of controlling questions of law.  On choice of law, the Court declined to apply California Civil Code section 1646.  Section 1646 dictates application of Minnesota law because the policies demonstrate that the parties' expectation was that Minnesota was the place of performance based on the numerous references to Minnesota in the policy and the policy was issued and delivered in Minnesota.  Instead, the Court applied the governmental interest test and concluded that California has a greater interest in this dispute – despite the policy being issued in Minnesota to a Minnesota company and despite that there was no evidence that Cambria's products were actually sold in California, no evidence that it had entered any contracts for sale of its products in California, and no evidence that it had entered into contracts with any entities outside of Minnesota prior to the policy periods.

The Court then found that whether the TPE applies depends on whether California or Minnesota law applies.  Although PIIC maintains that the ultimate result should be the same under both states' laws, the Order makes clear that had the Court applied Minnesota law, it would have enforced the TPE to bar coverage.  Cambria does not dispute this – it cited no contrary Minnesota authority.

Therefore, choice of law – the correct test to apply and the correct application of that test – impacts the entirety of the case and is a controlling question of law.  Courts often certify choice of law decisions for appeal pursuant to Section 1292(b).  *See*, *e.g.*, *Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1080 (9th Cir. 2008) (merits ruling on consumer contract choice-of-law provision following permission to appeal); *Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991) (reviewing choice of law decision on section 1292(b) certification); *Collins v. Promark Products, Inc.*, 956 F.2d 383, 386 (2d Cir. 1992) (determining whether New York or New Jersey law applied to a dispute concerning the submerged portion of Ellis Island was controlling question of law); *State of New Mexico v. Aamodt*, 537 F.2d 1102 (10th Cir. 1976) (determining whether state law

15

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

controlled disputed water rights claimed by tribes was controlling question of law); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *5 (D. Mont. Apr. 5, 2016), *rev'd on other grounds*, 879 F.3d 1052 (9th Cir. 2018) (certifying choice of law question); *Flack v. Nutribullet, L.L.C.*, No. 218CV05829DDPSSX, 2019 WL 2568393, at *1 (C.D. Cal. June 21, 2019) ("[t]here is no dispute" that choice of law poses a controlling question of law, and that an immediate appeal would materially advance the litigation).

Moreover, the choice of law question is a legal issue involving undisputed facts that is particularly well suited to appeal under Section 1292(b). *See, e.g.*, *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (finding 1292(b) particularly conducive to "situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); *see also Steering Comm.*, 6 F.3d 572 at 575–76 (accepting order on interlocutory appeal while stating "the presence of a pure legal question permits the court to resolve all questions material to the order"); *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2015 WL 13446989, at *2 (C.D. Cal. Apr. 9, 2015) ( "In addition to materially affecting the outcome of the litigation, courts also consider whether the questions raised are purely legal").

The TPE issue is equally a controlling question of law. The Court's ruling on this exclusion dictates the outcome on the duty to defend and directly impacts the duty to indemnify, which remains unresolved. If the Ninth Circuit reverses this Court's TPE finding, this case ends. If affirmed, the ruling governs the remaining issues.

The practical stakes underscore why these issues are controlling. The Court's ruling requires PIIC to defend Cambria in at least 69 underlying lawsuits pending in California courts – a substantial and ongoing defense obligation. Resolution of these threshold questions will materially affect both parties.

16

Both the choice of law and TPE issues are controlling issues of law, and thus the first element of a section 1292(b) certification is met as to both issues.

### 2. Substantial Grounds Exist For Difference of Opinion Regarding the Issues Presented for Certification

Substantial grounds for difference of opinion exist where "novel and difficult questions of first impression are presented" or "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). To determine whether "substantial ground for difference of opinion" exists under § 1292(b), courts "examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point . . . or if novel and difficult questions of first impression are presented." *Falco v. Nissan N. Am. Inc.*, 108 F. Supp. 3d 889, 892 (C.D. Cal. 2015) (citations omitted). "One of the best indications that there are substantial grounds for disagreement on a question of law is that other courts have, in fact, disagreed." *Rollins v. Dignity Health*, No. 13-cv-01450-THE, 2014 WL 6693891, at *3 (N.D. Cal. Nov. 26, 2014).

Substantial grounds for difference of opinion exist on the threshold question of which choice of law framework applies under California law. The Court's Order expressly acknowledges that jurists have disagreed about the appropriate test and that controlling law is unclear. *See* Order at p. 8:15-17 ("As the Ninth Circuit has recognized, '[t]here appears to be some difference of opinion as to whether California's choice of law rule for contracts is the governmental interest test . . . or the test of Cal. Civ. Code § 1646.' *Arno v. Club Med Inc.*, 22 F.3d 1464, 1469 n.6 (9th Cir. 1994)."). This Court also recognizes that the California Supreme Court has not resolved this issue. Order at 6:7-8.

/ / /

---

17

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

This Court's Order points out that there is a line of cases in California that has suggested that section 1646 is "the choice-of-law rule that determines the law governing the interpretation of a contract" (*e.g.*, *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436 (2007)), while another line suggests that section 1646 would not apply and, instead, the governmental interest test may apply (*e.g.*, *The Pep Boys Manny Moe & Jack of California v. Old Republic Insurance Company*, 98 Cal. App. 5th 329 (2023)). Recently, the Southern District of California came to a different conclusion than this Court on the correct choice of law framework: "the Court adopts *Frontier Oil*'s determination that the statutory analysis test applies to questions of contract interpretation and the governmental interest test applies to all other choice of law issues." *Stein v. Farmers Ins. Co. of Arizona*, 734 F. Supp. 3d 1021, 1028 (S.D. Cal. 2024). Because the issue here is the interpretation of a contract, section 1646 controls. At the very least, this is a complex question over which reasonable jurists have disagreed, so it is appropriate for certification.

Even under the governmental interest test, substantial grounds for difference of opinion remain. The policies were issued to a Minnesota company that – during the policy periods and for nine years after they expired – had no connection to California whatsoever. The only evidence in the record shows Cambria's contracts were in Minnesota, there is no evidence that Cambria ever sold products or had contracts in California during the relevant period, and the policies contain numerous references to Minnesota law. Therefore, there are substantial grounds for difference of opinion as to whether California law should apply even under a governmental interest test.

Substantial grounds for difference of opinion also exist on application of the TPE. The Court relied on *MacKinnon* – a case involving an absolute pollution exclusion and materially different facts – rather than following *Garamendi v. Golden Eagle Insurance Co.*, 127 Cal. App. 4th 480 (2005) and *Villa Los Alamos Homeowners Ass'n v. State Farm*, 198 Cal. App. 4th 522 (2011) – cases with TPEs

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

and similar facts. Which line of cases applies here, and whether the TPE applies in the same way as an APE and requires "widespread dissemination" to apply, presents a substantial ground for disagreement.

Application of the TPE is, moreover, an issue that is present in several other cases pending in the Central District of California. *See Regent Ins. Co. et al. v. Stone Source LLC*, No. 2:25-CV-06702 (C.D. Cal., filed July 2, 2025); *Hanover Am. Ins. Co. v. Francini Inc., et al.*, No. 2:23-CV-10047 (C.D. Cal., filed Nov. 29, 2023); *Sompo Am. Ins. Co. v. LX Hausys Am., Inc.*, No. 2:25-CV-02832 (C.D. Cal., filed Apr. 1, 2025); and *Pacific Shore Stones, LLC, et al. v. Allied Prop. & Cas. Co., et al.,* No. 2:25-cv-04370 (C.D. Cal., filed in Super. Ct. Los Angeles Cnty. Apr. 11, 2025 and removed). Notably, *Regent* involves policies issued to Cambria by other insurers in years post-dating PIIC's Policies. Some of those policies contain the same TPE at issue here. Guidance by the Court of Appeal would therefore help ensure consistent application of that policy language and reduce the risk of inconsistent rulings.

There are substantial grounds for difference of opinion as to the line of cases that should be followed on both the choice of law and TPE issues, making certification appropriate.

### 3.    An Immediate Appeal Will Materially Advance the Underlying Litigation

To show that an appeal will materially advance the underlying litigation, Section 1292(b) does not require "that the interlocutory appeal have a final, dispositive effect on the litigation." *Reese*, 643 F.3d at 688; *see also Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("[T]he Ninth Circuit has not limited 1292(b) motions to actions where the question is dispositive of the entire action"). Instead, it is sufficient that an immediate appeal "may materially advance the litigation." *Reese*, 643 F.3d at 688 (internal citation and quotations omitted). This prong is closely "linked to" and

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

"overlap[s] significantly with" whether an issue of law is "controlling." *Mauia v. Petrochem Insulation, Inc*., No. 18-cv-01815-THE, 2020 WL 1031911, at *4 (N.D. Cal. Mar. 3, 2020); *Rollins*, 2014 WL 6693891, at *4.  "The ultimate question is whether permitting an interlocutory appeal would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Roth v. Foris Ventures, LLC*, No. 21-cv-04288-YGR, 2022 WL 21777087, at *2 (N.D. Cal. Aug. 19, 2022) (citations omitted); *see also Biederman v. FCA US LLC*, No. 23-cv-06640-JSC, 2025 WL 1266907, at *5 (N.D. Cal. May 1, 2025) (element satisfied if "the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings.").

An appeal on these two questions of law will materially advance termination of this litigation by resolving threshold legal issues.  Reversal would likely moot the need for further proceedings entirely: if the Court of Appeals disagrees with this Court's resolution of either the choice of law question or the pollution exclusion, and reverses partial summary judgment on that basis, the coverage dispute ends as a matter of law, eliminating significant costs for the court and all parties.  *See In re Cement Antitrust Litig.*, 673 F.2d at 1026 (interlocutory appeal appropriate to avoid protracted and expensive litigation); *Flack*, 2019 WL 2568393 at *1 ("[t]here is no dispute" that choice of law question poses a controlling question of law and immediate appeal would materially advance litigation).

Even if the Ninth Circuit affirms, an appellate ruling would settle the legal framework, eliminate ongoing challenges to threshold legal questions, and allow the remaining duty to indemnify claim to proceed at the appropriate time under clear, settled law.

The timing is also favorable. Now that the duty to defend issue is resolved, this case will likely be stayed pending resolution of the underlying lawsuits. *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 660 n.9 (1995) ("The

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

obligation to indemnify, on the other hand, arises when the insured's underlying liability is established.").  An appeal now – while the underlying lawsuits proceed – allows the parties to resolve these foundational choice of law and coverage issues without delaying the litigation.

Reversal may also materially advance settlement negotiations – a factor courts recognize weighs in favor of Section 1292(b) certification. *See Casas*, 2015 WL 13446989 at *3, n.6 ("an appeal may be much more likely to materially advance a case's ultimate resolution where the issue to be decided is central to the Plaintiffs' case"); *SEC v. Mercury Interactive, LLC*, No. 07–CV–JF, 2011 U.S. Dist. LEXIS 38127, at *8 (N.D. Cal. Apr. 7, 2011).

All three section 1292(b) requirements are satisfied, and PIIC respectfully requests that the Court certify the above-stated issues for immediate appeal.

### G.    In the Further Alternative, PIIC Requests That This Court Enter Partial Final Judgment on the Duty to Defend Under FRCP 54(b)

Interlocutory orders are directly appealable when entered as a partial final judgment on a particular claim pursuant to FRCP 54(b), which provides:

> When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Rule 54(b) certification is proper if it will aid 'expeditious decision' of the case." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) (citation omitted). In addition, "Rule 54(b) claims do not have to be separate from and independent of the remaining claims." *Id.*; *see also Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525 (9th Cir. 1987) (ordering Rule 54(b) certification even though "the partial summary judgments below eliminated none of the parties and left

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

open potentially full recovery in both of Continental's ultimate areas of loss . . . .").

The Ninth Circuit has explained that a claim does not need to be completely separate from remaining claims in the case to justify entry of partial final judgment under Rule 54(b):

> [A] challenger "cannot successfully attack the court's finding of multiple claims merely by showing that some facts are common to all of its theories of recovery." *Purdy Mobile Homes*, 594 F.2d at 1316 (internal quotation marks omitted). Claims with partially "overlapping facts" are not "foreclosed from being separate for purposes of Rule 54(b)." *Wood v. GCC Bend, LLC*, 422 F.3d 873, 881 (9th Cir. 2005). Instead, a district court can enter final judgment on a claim even if it is not "separate from and independent of the remaining claims." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797 (9th Cir. 1991) (quoting *Sheehan v. Atlanta Int'l Ins. Co.*, 812 F.2d 465, 468 (9th Cir. 1987)). And such a judgment is permissible even if the claim "arises out of the same transaction and occurrence as pending claims." *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 100 L.Ed. 1311 (1956).

*Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 575 (9th Cir. 2018)

The district court must find "no just reason for delay" and expressly direct entry of judgment on one or more of the claims. *See Atkins, Kroll (Guam), Ltd. v. Cabrera*, 277 F.2d 922, 923 (9th Cir. 1960). There is no just reason for delay. The Court has ruled on threshold choice of law and TPE issues. And because the duty to defend has been resolved, the case will likely be stayed pending resolution of the underlying lawsuits. Immediate appeal is appropriate. Also, partial final judgment can be entered on the duty to defend issue for immediate appeal of that issue, as the duty to defend issue is set forth in two discrete causes of action: Count I - Breach of Contract (Duty to Defend) and Count II - Declaratory Judgment (Duty to Defend). *See* Document 59 (First Amended Complaint).

Courts have entered partial final judgment on the duty to defend issue to allow for immediate appeal, even when duty to indemnify issues remain pending. *See*, *e.g.*, *Zurich Ins. Co. v. Smart & Final Inc.*, 996 F. Supp. 979, 989 (C.D. Cal. 1998) (granting summary adjudication on the duty to defend and "pursuant to Fed.R.Civ.P. 54(b), the Court finds there is no just reason for delay and judgment shall be entered

22

accordingly."); *Continental Ins. Co. v. Del Astra Indus., Inc*., 811 F. Supp. 1410, 1411 (N.D. Cal. 1993), rev'd, 35 F.3d 570 (9th Cir. 1994) ("In this case, the issue being appealed, Continental's duty to defend Del Astra, is separable from the claims remaining in the lawsuit. . . . Moreover, there is no just reason to delay. To the contrary, judicial economy is served by immediate appeal of the Court's grant of partial summary judgment.  An appellate court ruling that Continental has no duty to defend would significantly reduce the scope of issues for trial and would conserve judicial and party resources."); *see also Zenith Ins. Co. v. Newell*, No. CV 20-3878, 2023 WL 8773635, at *4 (E.D. Pa. Dec. 19, 2023), aff'd, No. 24-1035, 2024 WL 4986938 (3d Cir. Dec. 5, 2024) (granting Rule 54(b) motion for entry of judgment after MSJ ruling on duty to defend claim, even though duty to indemnify claim remained unresolved); *Hudson Ins. Co. v. Miller*, 2016 WL 8709994, at *2 (D. Nev. Dec. 16, 2016) (granting FRCP 54(b) motion where court found duty to defend but indemnity and bad faith claims pending); *ALPS Prop. & Cas. Ins. Co. v. Merdes & Merdes*, PC, 2015 WL 13386893, at *2 (D. Alaska Apr. 27, 2015) (granting FRCP 54(b) motion where duty to defend had been found but indemnity claim (and underlying suit) pending); *Trammell Crow Res. Co. v. Va. Sur. Co.*, Inc., 643 F. Supp. 2d 844, 861 (N.D. Tex. 2008(granting Rule 54(b) relief after granting summary judgment on insurer's duty to defend).

Judicial economy strongly favors immediate appeal, and PIIC respectfully requests that, if the Court does not grant reconsideration or certify the above issues for immediate appeal pursuant to section 1292(b), that it enter partial final judgment on the duty to defend under Rule 54(b).

### H.    The Court Should Stay the Litigation During the Appeal

Under Section 1292(b), a district court has authority to stay a case pending an appeal.  *See, e.g.*, *Lakeland Vill. Homeowners Ass'n v. Great Am. Ins. Grp.*, 727 F. Supp. 2d 887, 897 (E.D. Cal. 2010) (ordering stay given that resolution of the appellate issue "would alter the direction of the current proceedings"); 28 U.S.C. §

1292(b) ("application for an appeal hereunder shall not stay proceedings in the district court *unless the district judge or the Court of Appeals or a judge thereof shall so order*") (emphasis added). While FRCP 54(b) is silent on stays, this Court has broad discretionary power to control proceedings for sensible, cost-effective litigation. *See Association of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008) ("the district court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'").

A stay pending appellate review will avoid litigation costs that may be rendered moot by appeal and will limit unnecessary trial preparation. Without a stay, the fruits of a successful appeal would be irretrievably lost. The Court should exercise its discretion to stay proceedings - avoiding precisely the "unnecessary trouble and expense" these appellate procedures were designed to prevent. *See, United States v. Adam Bros. Farming, Inc.,* 369 F. Supp. 2d 1180, 1182 (C.D. Cal. 2004)).

## V. CONCLUSION

**WHEREFORE** Defendant PIIC respectfully requests that this Court grant this Motion and:

1. Vacate and reconsider all portions of the Order premised on assumed facts not supported by the record, including the Court's conclusions that Cambria entered contracts, made sales, or engaged in business conduct in California during the PIIC policy periods, and the related finding that "the state in which the particular risk is involved is California." These unsupported factual determinations that Cambria was involved in business operations in California during the policy periods formed the foundation of the Court's choice-of-law analysis, its application of the greater-interest prong of the governmental interest test, and its resulting duty-to-defend ruling; and

/ / /

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)

2.　　Re-evaluate the choice-of-law and the duty-to-defend analyses based on the existing record, including the parties' expectations as to the place of performance of the Minnesota Policies, which permit no reasonable inference other than that the "performance of the contract" occurred in Minnesota, and the application of the broader TPE, as distinguished from the APE addressed in *MacKinnon*, and in light of the controlling authority in *Villa Los Alamos* and *Kingsley Mgmt. Corp.*

　　　In the alternative, PIIC requests that this Court (1) certify the above issues for immediate interlocutory appeal under 28 U.S.C. § 1292(b) and stay proceedings pending appeal; or, in the further alternative, (2) enter partial final judgment on the duty to defend under FRCP 54(b) and stay proceedings pending appeal.

Respectfully submitted,

Dated:  March 31, 2026　　　**TRESSLER LLP**

By: */s/ Linda Bondi Morrison*
　　Linda Bondi Morrison
　　Erfan Samsam Shariat
　　*Attorneys for Defendant*
　　*Philadelphia Indemnity Insurance Company*

DEFENDANT PIIC'S NOTICE OF MOTION AND MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT ORDER [DKT. 94] OR, IN THE ALTERNATIVE INTERLOCUTORY CERTIFICATION OR PARTIAL FINAL JUDGMENT (AND STAY)